UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) |
| v. | ) No. 2:19-CR-14 |
| | ) |
| XIAORONG YOU | ) |

MEMORANDUM OPINION AND ORDER

On April 24, 2019, United States Magistrate Judge Clifton L. Corker held a detention hearing for defendant Xiaorong You. [Doc. 26]. The Magistrate Judge determined defendant should be detained pending trial pursuant to the Bail Reform Act of 1984, 18 U.S.C. §§ 3141, *et seq*. [Doc. 30]. Thereafter, defendant filed a "Notice of Objections to Order of Detention Pending Trial," [Doc. 31], and the United States has responded, [Doc. 32]. The defendant, through counsel, seeks a reversal of the Magistrate Judge's decision to detain her pending trial. For the reasons that follow, the Court overrules defendant's objections to Magistrate Judge Corker's detention order and defendant shall remain in custody pending trial.

I. **BACKGROUND**

A.

On February 12, 2019, a grand jury returned an indictment in this case charging defendant, alongside a co-defendant, with one count of conspiracy to commit theft of trade secrets in violation of 18 U.S.C. § 1832(a)(5), one count of wire fraud in violation of 18 U.S.C. § 1343, and seven counts of theft of trade secrets in violation of 18 U.S.C. § 1832(a)(3). [Doc. 3].

1

Consistent with the Court's local practice, the Magistrate Judge presided over defendant's initial appearance, arraignment, and detention hearing. The Magistrate Judge determined detention was required in this case, and imposed detention pending trial. [Doc. 30].

**B.**

In his April 25, 2019 detention order, [Doc. 30], the Magistrate Judge discussed defendant's risk of flight. The findings in the detention order were based on testimony of the defense witness, Linda Xu, defendant's adult daughter, and the government's witness, Agent William Leckrone, an investigator with the FBI Knoxville field office. [Doc. 27]. Defendant also submitted two character affidavits in support of her position. [Docs. 20-1, 20-2]. Based on this evidence, the Magistrate Judge found that defendant was a flight risk.

The Magistrate Judge held that the factors set forth in 18 U.S.C. § 3142(g) leaned in favor of detention. [Doc. 30 at 7]. The Magistrate Judge found defendant's charges of conspiracy to commit theft of trade secrets, wire fraud, and theft of trade secrets supported detention. Specifically, the Magistrate Judge determined that the underlying facts of the charges included a substantial connection with a foreign government and a foreign national, which weighed in favor of detention. [*Id.* at 2-5].

The Magistrate Judge also determined that § 3142(g)(2) supported detention prior to trial. He discussed how the weight of the evidence regarding defendant's risk of flight was substantial, including defendant's extensive connections to China, financial means to travel internationally, and defendant's possession of a bag that contained various foreign currencies, her passport, her diploma, naturalization papers, and bank statements from a bank in China. [*Id.* at 4-5].

Similarly, the Magistrate Judge determined that defendant's history and characteristics under § 3142(g)(3) favored detention. Defendant has no familial or community ties to East

Tennessee, but has substantial connections to China. Further, the Magistrate Judge determined that defendant's financial ties to China, and her development of connections within the Chinese government through being awarded prestigious grant-like awards weighed in favor of pretrial detention. The Magistrate Judge noted that detention is further supported by the fact that defendant's contacts are with China, a country that does not have an extradition treaty with the United States. [*Id.* at 6].

Ultimately, the Magistrate Judge concluded: "[t]he Court finds that no conditions of release or combination of conditions, including considering the proposed conditions suggested by Defendant, would reasonably assure her appearance as required. Accordingly, the Court finds that she should be detained pending trial." [*Id.* at 7]. Defendant, through counsel, seeks review of the Magistrate Judge order, [*Id.*], and the Court considers the matter *de novo*.

**II.     ANALYSIS**

Review of a detention order governed by 18 U.S.C. § 3145(b), which states:

> If a person is ordered detained by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly.

18 U.S.C. § 3145(b). This Court conducts a *de novo* review of a Magistrate Judge's detention order. *See United States v. Villegas*, No. 3:11–CR–28, 2011 WL 1135018, at *4 (E.D. Tenn. Mar. 25, 2011); *see also United States v. Romans*, No. 00–5456, 2000 WL 658042, at *1 (6th Cir. May 9, 2000).

A defendant should be detained without bond pending trial if a "judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1).

3

Generally, in order to be detained, the government must establish a risk of flight by a preponderance of the evidence or dangerousness to any other person or the community by clear and convincing evidence[1]. *United States v. Hinton*, 113 Fed. App'x 76, 77 (6th Cir. 2004). *See* 18 U.S.C. § 3142(f)(2)(b). "Pretrial detention can be ordered based on a judicial finding of either substantial danger to the community or risk of flight; only one is required." *United States v. Hernandez*, No. 1:02–CR–006, 2002 WL 1377911, at *3 (E.D. Tenn. Feb. 27, 2002) (citing *United States v. Portes*, 786 F.2d 758, 765 (7th Cir. 1985)). The Sixth Circuit has stated it is "the government's ultimate burden is to prove that no conditions of release can assure that the defendant will appear and to assure the safety of the community." *United States v. Stone*, 608 F.3d 939, 946 (6th Cir. 2010).

Here, the Magistrate Judge rested his detention order on risk of flight, and thereby, it is the only issue discussed herein. In making a detention determination, the judicial officer must consider the following factors: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g)(1)-(4). The weight of the evidence factor goes to the weight of the evidence of flight risk, not the weigh of the evidence of the defendant's guilt. *Stone*, 608 F.3d at 948. The Court will address the factors in turn.

**A. Nature and circumstances of the offense**

The defendant was charged with conspiracy to commit theft of trade secrets; wire fraud; and theft of trade secrets. [Doc. 3].

---

[1] The Magistrate Judge found and the parties do not dispute that the § 3142(e) presumption in favor of detention does not apply in this case. [Doc. 30 at 1].

According to the government, defendant and her co-defendant, Liu Xiangchen, are at the center of a multi-million-dollar trade secret theft scheme. The Indictment alleges the defendant conspired to steal $119,600,000 worth of trade secret information from her former employers and five other companies, and defendant received over 12 million Chinese Yuan as part of her role in the scheme. [Doc. 3 at 1]. Defendant and Xiangchen orchestrated stealing trade secret information to use in applying for two prestigious Chinese grant-like award programs. [*Id.* at 8].

Defendant's 2017 applications for these award programs were allegedly completely based on the stolen information. [*Id.* at 8]. The foreign-government-backed award participants are selected to move to China to use his or her expertise to promote China's economic and technological development. [*Id.* at 5-6]. Specifically, the awards are designed to entice western educated, experienced, and trained individuals to return to China to help the country meet specific technological and economic goals. [Doc. 33 at 38]. The prestigious awards require a competitive and stringent application process, and offer lucrative financial rewards. [*Id.*].

Unbeknownst to her American employer, defendant applied for the Chinese awards with support from Xiangchen and a Chinese company. [*Id.* at 6-7, 69]. Defendant won both the awards. [*Id.* at 69]. From the award compensation, defendant and Xiangchen planned to form a new Chinese company that would own the stolen trade secret information. [*Id.* 6-7].

The federal trade secrets theft and wire fraud charges, which implicate devastating loss amounts upwards of a hundred million dollars, are indeed serious. Moreover, defendant is not just alleged to be a participant, but is a principal figure in this scheme. Along with her co-defendant, defendant sought to steal trade secret information to establish a Chinese company to manufacture and profit from products developed using the trade secret information under the guise of being selected as the winner of the highly selective annual award programs.

The facts in the indictment suggest that the underlying facts surrounding defendant's charges are related to defendant's extensive connections with China, specifically with Chinese businesses and the government. Further, the allegations set forth in the Indictment indicate that before defendant's arrest, defendant was willing and planning to permanently relocate to China as the winner of these awards. [*Id.* at 69]. Moreover, the record shows defendant signed an employment contract with a Chinese company to lead a research and development team to develop a product based off of the trade secret information, and had already begun receiving a salary from company. [*Id.* at 67, 72-73, 79]. After signing the employment agreement, defendant began to browse beach front property in Weihai, China. [*Id.* at 73]. The executed employment contract and defendant's following real estate inquiries indicate that defendant had begun to make concrete plans and had taken concrete steps to relocate from the United States to China.

If convicted, defendant will face lengthy sentence. The government stated defendant's potential sentence Guideline range is 210 to 262 months' imprisonment. Defendant faces a maximum ten-year prison sentence for each of the trade secret offenses, and a maximum twenty-year imprisonment sentence for the wire fraud charge. Defendant's lengthy sentence provides a motive to flee internationally. *See United States v. Sabhnani*, 493 F.3d 63, 66-67, 76 (2d Cir. 2007) (noting defendants had a strong motive to flee in part because they were charged with a serious crime and, if convicted, they would likely face a lengthy sentence of incarceration—a statutory maximum of 40 years imprisonment and a Guidelines range of 210 to 262 months); *see also United States v. Khusanov*, 731 Fed. App'x 19, 21 (2d Cir. 2018) ("[A] district court does not clearly err in concluding that a defendant facing a potentially lengthy prison sentence possesses a strong motive to flee."); *United States v. Khraizat*, No. 00-2128, 2000 WL 17669637, at *2 (6th Cir. Nov. 17, 2000) (the panel considered defendant's "length[y] sentence if convicted").

Having reviewed the indictment, the Court finds that the nature and circumstances of the charged offenses support pretrial detention in this case.

**B. Weight of the evidence against defendant**

This factor relates to the weight of a defendant's risk of flight, not to the weight of evidence of her guilt. *Stone*, 608 F.3d at 948. The evidence against defendant is overwhelming and considerable.

Defendant has traveled to China frequently. Between August 2017 and November 2018, defendant traveled to China on four separate occasions. [Doc. 33 at 75]. During her May, 2018 trip, defendant withheld the trip's true purpose from her American employer, and then remained in the country weeks longer than her eight-day approved leave. [*Id.* at 23, 75]. Instead of working with her employer's Shanghai branch, defendant met with a Chinese company to sign an employment contract. [*Id.* at 23-24]. Further, the record indicates that defendant has expressed interest in returning permanently to China, and would like to retire there. [*Id.* at 71-72].

The Court cannot ignore defendant's continuing significant foreign ties to her country of origin, including potential access to funds located in a bank in China, which raises a significant concern about her serious risk of flight. Should defendant flee to China, the United States cannot procure her return because there is no extradition treaty with China.

During the search of defendant's apartment at the time of her arrest, law enforcement officers found a briefcase containing her passport, diplomas, naturalization papers, American and Chinese bank statements, and thousands of dollars in various currencies including United States Dollars, Euros, Chinese Yuan, and British Pounds. [*Id.* at 83, 85-86; Doc. 30-1]. The testifying agent referred to the briefcase as a "go bag," a bag which contains documents that one would need and "are ready to go at a moment's notice.' [Docs. 30-1, 33 at 85].

7

Further, the documentary evidence of defendant's alleged theft of trade secrets and conspiracy to steal trade secrets presented on the issue of detention alone early in the criminal process of this indictment, is very substantial. The government produced five different affidavits or declarations from various companies that have identified trade secret information in defendant's possession. While the Court recognizes that the law presumes defendant is innocent of all charges, the Court finds that the second § 3142(g) factor strongly favors the government because conviction is likely, because it provides her with a motive and incentive to flee to a country without extradition to the United States.

Though there are some mitigating factors, overall the weight of the evidence of defendant's risk of flight is substantial. Namely, defendant has immediate family in the United States, including a daughter in Northern California and her husband in Boston, Massachusetts. Defendant also owns a condo in Johnson City, Tennessee. However, the mitigating factors do not do not outweigh the evidence that defendant poses a serious risk of flight. Accordingly, the Court concludes the weight of the evidence against defendant favors detention.

**C. History and characteristics of defendant**

In considering the history and characteristics of the defendant, a court should consider the following:

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law.

8

18 U.S.C. § 3142(g)(3). The Court finds that the following evidence regarding defendant's history and characteristics weigh in favor of detention.

Defendant is 56 years of age, a successful engineer and an international traveler. She became a naturalized United States citizen after renouncing her Chinese citizenship in 1999. With college and doctoral degrees in polymer science engineering, defendant was employed as a chemist for the Coca-Cola Company and later for Eastman Chemical Company. [Doc. 33 at 15-16].

With respect to family ties, defense counsel argues defendant's familial connections to China are limited to her elderly mother and a sister. [Doc. 31 at 3]. Defense counsel reiterates her husband, adult daughter, and sister all reside in the United States. [*Id.* at 3]. Defendant's husband and sister provided the Court with affidavits, emphasizing defendant's support system in the United States. [Docs. 20-1, 20-2].

Defendant has family abroad, namely, her mother, a sister, and an aunt. [Doc. 33 at 77]. Defendant has regular contact with her sister and her aunt, and even shares joint bank accounts with them. [*Id.*].

Although defendant's husband resides in the United States, the record reflects that defendant and her husband have been living separately since December 2012. [Doc. 20-1 ¶ 7]. While defendant lived in Atlanta and Johnson City, her husband remained in Boston. [*Id.* ¶¶ 8, Doc. 33 at 76]. Defendant's other family members reside in California. [Doc. 20-2]. Though defendant has family in the United States, defendant does not have strong familial ties in East Tennessee. Further, none of defendant's relatives residing in the United States have articulated plans to move to or regularly visit Tennessee to be closer to defendant during the proceedings. Although defendant's daughter attended the detention hearing, neither defendant's husband nor her sister attended. These are not the sort of family ties from which the Court can infer that

9

defendant is so deeply committed and personally attached that she cannot be driven from it by the threat of a lengthy prison sentence.

Defendant has minimal ties to the community. She has resided in Johnson City, Tennessee from September 2017 to June 2018, during her employment with Eastman Chemical Company. After her termination with Eastman, defendant moved to East Lansing, Michigan and rented out her condo in Tennessee. While not dispositive, this fact is evidence of a risk of flight.

Defendant also has substantial financial means to flee to China. The Pretrial Services Report shows that defendant has an approximate net worth of 1.7 million dollars and no debt. [Doc. 30-1]. She also has $200,000 in a checking and savings account. [*Id.*]. There is some indication on the record that she may have assets overseas. Defendant has six bank accounts in China at different institutions, and approximately $70,000 in liquid assets in China. [Doc. 33 at 79].

Defendant has no prior criminal history, indicating that § 3142(g)(3)(A) & (B) favor release, however, no prior criminal history does not automatically mandate release, as courts have held that this factor alone does not preclude detention. *See U.S. v. Abad*, 350 F.3d 793, 789-99 (8th Cir. 2003).

The Court must look to the totality of the circumstances and of defendant's characteristics, which ultimately demonstrate a risk of flight. All of this evidence, taken together, shows by a clear preponderance of the evidence that defendant has the financial resources, proclivity and incentive to flee rather than risk a lengthy prison sentence.

**D. Nature and seriousness of the danger to the community**

Finally, with respect to the nature and seriousness of the danger that defendant's release would pose to any person or the community, this factor has minimal value as defendant poses a

serious risk of flight. *See United States v. Vo*, 978 F. Supp. 2d 41, 46 (D.D.C. 2013) (finding that where detention is based on risk of flight "[t]his factor . . . has little bearing"). In any event, there is no allegation that the defendant engaged in violence or that she poses any risk of physical danger to another person or the community. *See generally* [Doc. 3].

In light of these concerns, the Court concludes the government has shown by a preponderance of the evidence that defendant poses a serious risk of flight under section 3142(g).

### E. Conditions of Release That Would Reasonably Assure Defendant's Appearance at Trial

The Court finds no conditions of release would reasonably assure defendant's appearance at trial. The crimes charged required intelligence, planning, capital, facility in deception, international communications, and international motives. The crimes carry severe penalties. Defendant has the financial resources, international connections, and incentive to flee, rather than risk a lengthy prison sentence. The government has established by a clear preponderance of the evidence that defendant is a flight risk. Such risks are not easily mitigated, even within the confines of a defendant's home. Although electronic monitoring may alleviate some of the risk of flight, it would not reduce the entire risk and assure her appearance at trial.

### III. CONCLUSION

For the foregoing reasons, the Court concludes the government has demonstrated by a preponderance of the evidence that defendant is a flight risk, and no combination of conditions can reasonably assure defendant's presence at future court proceedings. After a *de novo* review of the record, this Court concludes that the Magistrate Judge's decision should be upheld. Accordingly, Defendant's objections to the Magistrate Judge Order are **OVERRULED**, and defendant is **ORDERED** detained in custody pending trial. [Doc. 31].

So ordered.

ENTER:

                                                                            s/J. RONNIE GREER
                                                         UNITED STATES DISTRICT JUDGE