UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 2:19-CR-14 |
| | ) | |
| XIAORONG YOU | ) | |

<u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is the government's April 14, 2020 emergency motion to stay this Court's order pending appeal. [Doc. 125]. The government seeks to stay this Court's April 10, 2020 order releasing Defendant pretrial on bond pending an appellate ruling on the motion from the Sixth Circuit Court of Appeals. [*Id.*]. Defendant has replied in opposition to a stay. [Doc. 130]. The matter is now ripe for review.

**I.     Background**

On February 12, 2019, a grand jury returned an indictment in this case charging defendant, alongside a co-defendant, with one count of conspiracy to commit theft of trade secrets in violation of 18 U.S.C. § 1832(a)(5), one count of wire fraud in violation of 18 U.S.C. § 1343, and seven counts of theft of trade secrets in violation of 18 U.S.C. § 1832(a)(3). [Doc. 3].

Consistent with the Court's local practice, the Magistrate Judge presided over defendant's initial appearance, arraignment, and detention hearing. The Magistrate Judge determined detention was required in this case, and imposed detention pending trial in a comprehensive April 25, 2019 detention order. [Doc. 30]. Thereafter, this Court overruled Defendant's objections to the Magistrate Judge order and ordered Defendant to remain in custody pending trial. [Doc. 34].

In March, 2020, Defendant moved this Court to consider pretrial bail once again. [Doc. 104]. This Court issued an initial order granting bail, [Doc. 108], but later vacated the order after learning from the United States Probation Office statements in counsel's motion and memorandum were inaccurate, [Doc. 111]. The statements were subsequently corrected in a supplement on the record. [Doc. 115].

The Court scheduled the motion for an in-person and video conference CARES Act hearing on April 8, 2020. [Doc. 114]. From the bench, the Court issued a preliminary ruling granting pretrial release, and subsequently issued an April 10, 2020 memorandum opinion and order memorializing the oral ruling. [Doc. 120]. During the hearing, the government asked for a stay on the Defendant's pretrial release to seek authorization from the Solicitor General to appeal; the Court granted the government's request and issued a 96 hour stay on the order and Defendant's pretrial release. [*Id.* at 8].

On April 14, 2020, the government filed a notice of appeal informing the Court that it was seeking appeal on the order granting pretrial release. [Doc. 124]. That same day the government filed a motion to stay the order pending appeal. [Doc. 125].

**II.     Standard of Review**

When determining whether a stay should be issued pending appeal pursuant to Federal Rule of Appellate Procedure 8(a), a trial court should apply "the same four factors that are traditionally considered in evaluating the granting of a preliminary injunction." *Mich. Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991); *Family Trust Found. of Ky., Inc. v. Ky. Judicial Conduct Comm'n*, 388 F.3d 224, 227 (6th Cir. 2004). Those factors are: "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *Griepentrog*, 945 F.2d at 153 (citing *Ohio ex rel. Celebrezze v. Nuclear Regulatory Comm'n*, 812 F.2d 288, 290 (6th Cir. 1987)). Rather than prerequisites that must be met before granting a stay, these factors represent "interrelated considerations that must be balanced together." *Id.*

The Sixth Circuit has recognized that in the case of a motion for a stay pending appeal, the district court has fully considered the merits of the underlying action and issued judgment, and therefore, a movant seeking a stay will have greater difficulty establishing a likelihood of success on the merits of their appeal. *Id.*

> To justify granting a stay, however, a movant need not always establish a high probability of success on the merits. The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiffs will suffer absent the stay. Simply stated, more of one excuses less of the other. This relationship, however, is not without its limits; the movant is always required to demonstrate more than the mere 'possibility' of success on the merits. For example, even if a movant demonstrates irreparable harm that decidedly outweighs any potential harm to the defendant if a stay is granted, he is still required to show, at a minimum, 'serious questions going to the merits.'

*Id.* at 153-54 (citations omitted). Earlier Sixth Circuit precedent suggests that, rather than demonstrating the likelihood of success on the merits, it would be enough for a movant to raise "questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation." *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985) (quoting *Brandeis Machinery & Supply Co. v. Barber-Greene Co.*, 503 F.2d 503, 505 (6th Cir. 1974)). "The apparent disparity in the wording of the standard merely reflects the circumstance that no single factor is determinative as to the appropriateness of equitable relief." *Id.* (quoting *Metro. Detroit Plumbing & Mech. Contracts Ass'n v. Dep't of Health, Educ. and Welfare*, 418 F. Supp. 585, 586 (E.D. Mich. 1976)).

In demonstrating irreparable harm, a movant must allege harm that is both certain and immediate, rather than speculative or theoretical. *Griepentrog*, 945 F.2d at 154.

> The key word is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

*Sampson v. Murray*, 415 U.S. 61, 90 (1974) (quoting *Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958)).

A district court generally has broad discretion to stay proceedings "as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).

### III. Analysis

To assist the Court in adequately balancing the factors listed above, "the party seeking a stay must address each of the factors regardless of its strength," and provide sufficient facts upon which the Court can make a determination. *Ohio ex. rel. Celebrezze*, 812 F.2d at 290. The Court will discuss each factor in turn below.

#### 1. Likelihood of Government's Success on Appeal

As discussed above, a movant may not always have to demonstrate a high likelihood of success on the merits of their appeal, so long as the party seeking a stay can raise serious questions as to the merits. *Griepentrog*, 945 F.2d at 154.

The government argues that "[b]oth the magistrate judge and this Court, after extensive proceedings, found that no conditions or combination of conditions was sufficient to reasonably assure her presence at trial if released," but now had reached the opposite conclusion only after imposing significant conditions upon her release. [Doc. 125 at 2]. As such, the government argues that this case presents at least a close question regarding pretrial release. [*Id.*].

The Defendant contends the government is not likely to succeed on the merits. [Doc. 130 at 2-3]. More particularly, the Defendant argues that the government has not demonstrated the likelihood of an abuse of discretion by this Court after releasing Defendant on pretrial bond on various conditions. [*Id.*].

For reasons fully explained in the Court's memorandum opinion and order granting Defendant's motion for pretrial release, [Doc. 120], the Court disagrees that the government can demonstrate "a high likelihood" of success on the merits of their appeal. After a hearing on the pretrial release motion, this Court concluded the weight of the evidence against defendant no longer favors detention. [Doc. 120]. *See* 18 U.S.C. § 3142(g)(2). In the accompanying memorandum opinion, the Court noted the changed circumstances in light of the global COVD-19 pandemic and worldwide response of imposing strict travel restrictions and quarantine mandates drastically changed Defendant's risk of flight. [*See generally id.*]. At the hearing, this Court acknowledged that this case was a close case; however, the Court imposed a combination of bond conditions restrictive enough to reasonably assure Defendant's appearance at trial. Notably, the

4

combination of home detention with electronic monitoring, multiple daily phone calls to the probation officer from the landline telephone in Defendant's residence, an appearance bond secured in part by a cash deposit and a deed of trust of property, together are sufficient to deter flight and assure Defendant's appearance.

The government argues that Defendant is likely to flee pending trial, because she has substantial financial resources, extensive foreign ties, and faces a lengthy prison sentence if convicted. [Doc. 125 at 2]. The Court is not persuaded by these arguments. The Court is aware of Defendant's financial position, and as part of the bond conditions, has required she sign an appearance bond of $500,000, partially secured by a $100,000 cash deposit with the Clerk of the Court, and partially secured by a deed of trust of property. Next, the Court found that Defendant's extensive ties to China remained the same, but that in light of the present global circumstances, her connections to China did not carry as much weight in the risk of flight analysis. [*Id.*]. Finally, while Defendant it is true that faces a lengthy sentence if convicted, Defendant may face a more threatening ordeal if she flees. Travel would exponentially increase her chance of contracting the COVID-19 virus, which could likely jeopardize her health resulting in possible intensive medical care.

The Court does not find the government can raise serious questions as to the merits. *Griepentrog*, 945 F.2d at 154. Accordingly, this factor weighs in the Defendant's favor.

### 2. The Likelihood That the Government Will be Irreparably Harmed Absent a Stay

The government argues that if Defendant "were to flee, no ruling from the Sixth Circuit could undo that damage – especially if Defendant were to flee to China, where she has extensive connections, financial resources, and business opportunities, and from which the United States cannot extradite her." [Doc. 125 at 2].

As discussed above, the irreparable harm alleged "should be evaluated in terms of its substantiality, the likelihood of its occurrence, and the proof provided by the movant." *Griepentrog*, 945 F.2d at 155 (citing *Cuomo v. United States Nuclear Regulatory Comm'n*, 772 F.2d 972, 977 (D.C. Cir. 1985)). The movant must have evidence that the harm alleged is "certain and immediate," not "speculative or

theoretical." *Id.* at 154. The Court finds that this factor weighs heavily against the government. The government's argument is only premised on the scenario that Defendant will flee immediately after release on bond and before the Sixth Circuit's ruling on the government's appeal. The Court does not find the government's described scenario as "certain and immediate," but as speculative and unlikely in light of the restrictive bond conditions. The Court has found that the bond conditions as a whole are sufficient to deter flight and assure Defendant's appearance at trial. The government also notes that Defendant "was making plans to permanently relocate to China when arrested in this case." [*Id.*]. As previously discussed at length in the memorandum opinion, the likelihood that Defendant would be able to permanently relocate to China during a global crisis of this magnitude is extremely slim. [*See* Doc. 120].

Absent a stay, the government will not be irreparably injured and, ultimately, this factor does not weigh in the government's favor.

**3. Whether Stay would substantially harm the defendant**

The government concedes this factor "weighs in defendant's favor," but maintains that it is not as substantial as the factor's weighing in the government's favor. [Doc. 125 at 3].

A stay would substantially harm the Defendant. With a stay in place, the Defendant would remain in custody at Washington County Detention Center. Although that particular facility, as of the date of this order, has no known COVID-19 cases, the Court cannot discount the effects of a highly contagious virus on incarcerated individuals, given the fact that conditions frequently present in correctional and detention facilities, increase the risk of transmission. *See United States v. Kennedy*, No. 18-20315, 2020 WL 1493481, at *2 (E.D. Mich. Mar. 27, 2020). Moreover, if the Court were to impose a stay, the probability of Defendant contracting COVID-19 would be greater than if she were in home detention under quarantine conditions.

Further, the Court has acknowledged that the current protective order in place, [Doc.44], has made it difficult to prepare a defense. The Court anticipates that Defendant's pretrial release will help facilitate the technical review of the protected documents, which will overall assist the preparation of a defense, thus

expediating a final resolution of the case. With a stay in place, the Defendant's ability to effectively assist counsel in preparation of her defense would be limited. Overall, this factor favors the Defendant.

### 4. The Public Interest

Finally, the Court examines the public interest. *Griepentrog*, 945 F.2d at 153. The government argues that the public interest "would unquestionably be harmed if defendant were to flee once released." [Doc. 125 at 3]. The Defendant argues that she does not "have the ability or incentive to flee." [Doc. 130 at 8]. This Court has discussed the changed circumstances related to Defendant's risk of flight at length in its memorandum opinion. [*See* Doc. 120].

The public does, however, have a well-founded interest in the speedy resolution of disputes, especially in criminal cases. *In re Lott*, 139 F. App'x 658, 662-63 (6th Cir. 2005) (finding "the public interest in resolving this question" was an "important interest"); *Ford v. Federal-Mogul Corp.*, 2015 WL 110340 at *10 (E.D. Mich. Jan. 7, 2015) (stating that a settlement agreement "serves the public interest in judicial economy and in resolving disputes in federal courts with expediency and efficiency[.]"). As the Court noted above, releasing Defendant on bond at this time, under these circumstances, will likely facilitate a final resolution of this case. In addition, the public has a strong interest in protecting accused, but not convicted, defendants from unnecessary exposure to life-threatening illnesses while in the close confines of a jail and in limiting the continued spread of such a disease. The Court finds a stay is not within the public interest.

### IV. Conclusion

For the foregoing reasons, the Court finds that the balance of the four factors weigh in Defendant's favor and, as such, a stay is not warranted. It is HEREBY ORDERED the government's emergency motion to stay pending appeal is DENIED. [Doc. 125].

So ordered.

ENTER:

s/J. RONNIE GREER

UNITED STATES DISTRICT JUDGE