UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:19-CR-14 |
| | ) | |
| | ) | District Judge Greer |
| XIAORONG YOU | ) | |
|    a/k/a SHANNON YOU | ) | |

## TRIAL BRIEF OF THE UNITED STATES

COMES NOW, the United States of America, by and through the United States Attorney for the Eastern District of Tennessee, for the purpose of avoiding unnecessary surprise and preserving the parties' and the Court's time and resources, to notice the defendant and the Court as set forth below. The United States is *not* seeking a ruling from the Court on any of the below issues at this time, but provides this notice to assist the Court in ruling during trial on evidentiary issues that may be contested.

1. Notice of Intent to Offer Self-Authenticating Records

2. Notice of Miscellaneous Items

3. Notice of Intent to Offer Audio-Video Recordings of Interview of the Defendant that Occurred on February 14, 2019

4. Notice of Intent to Offer Transcript of Interview of the Defendant that Occurred on February 14, 2019

5. Notice of Intent to Offer Fed. R. Evid. 1006 Summary Chart Depicting Translated WeChat Audio and Text Messages Sent to and from the Defendant

6. Notice of Intent to Offer Fed. R. Evid. 1006 Summary Charts Depicting Locations and Time Stamps of More than One Hundred Trade Secret and Confidential Files Found on Electronic Devices Belonging to the Defendant

7. Notice of Intent to Use Summary Timeline During Opening Statement and

1

    Witness Testimony and to Admit as Substantive Evidence

8.  Notice of Intent to Use Demonstrative Aids During Opening Statement and Witness Testimony

9.  Notice of Intent to Offer Dual Fact-Expert Witness Testimony

## NOTICES

**1.  Notice of Intent to Offer Self-Authenticating Records**

Pursuant to F.R.E. 902(11), (13), and (14), the United States hereby notifies the defendant of the government's intent to offer the following records as evidence at trial, copies of which have already been furnished to the defendant:

- Account information, emails, and other records from the defendant's xiy2@yahoo.com account with Oath Holdings Inc. (formerly Yahoo Holdings, Inc.). A copy of the F.R.E. 902(11) certificate authenticating these records has already been provided to the defendant, but is attached again for convenience as Exhibit 1.

- Account information, stored files, access logs, and other records the defendant's X30080 account with Google LLC. Copies of the certificates authenticating these records have already been provided to the defendant, but are attached again for convenience as Exhibits 2, 3, and 4.

- Certified data copies and forensic images from numerous electronic devices, storage media, or files belonging to or used by the defendant. Copies of the certificates authenticating these records have already been provided to the defendant, but are attached again for convenience as Exhibits 5, 6, and 7.[1]

**2.  Notice of Miscellaneous Items**

In light of the fact that this case presents a number of unique challenges, the United States provides the following additional notices to ensure that the Court is apprised that the government is taking all reasonable measures to prepare for trial. For example, without limitation, on June 19, the United States provided the defense with a draft copy of the

---

[1] The copy of Exhibit 5 attached to this filing has been partially redacted to remove the names of private parties. An un-redacted copy has been provided to the defendant.

2

government's complete trial exhibit list. On June 19, the United States also provided the defense with draft copies of nearly all of its trial exhibits (arranged by trial exhibit number), excluding material deemed "highly confidential" pursuant to the amended protective order. This "highly confidential" material has been and remains available to the defense, and has been inspected by the defense, for more than one year. On June 22, the United States sent proposed stipulations to the defense to identify uncontested evidentiary issues with the goal of shortening the trial, but has received no response. In March, April, May, and June, the government made extensive efforts to accommodate the defendant's many requests to modify the discovery protective order.

### 3. Notice of Intent to Offer Audio-Video Recordings of Interview of the Defendant that Occurred on February 14, 2019

The United States intends to offer into evidence an audio-video recording of an interview of the defendant conducted on February 14, 2019 by two FBI agents. This audio-video recording was provided to the defense more than one year ago. The recording is approximately two hours long and contains numerous admissions by the defendant regarding the scope of the conspiracy and its participants. To preserve the Court's and the parties' time and resources, and to facilitate comprehension and review by the jury, the United States has created approximately 45 short segments from the audio-video recording, ranging from approximately 30 seconds' to a few minutes' duration. One of these 45 short video clips is a 53-second composite of different portions of the interview. The remaining 44 short video clips are uninterrupted snippets. These 45 clips have been produced to the defense. The United States also intends to offer these 45 video clips as evidence at trial.

The video is clear and the audio is intelligible throughout substantially all of the approximately two-hour interview. It appears as though no substantive comments are unintelligible. The United States has received no indication from the defendant inconsistent with

3

Case 2:19-cr-00014-JRG-CRW   Document 185   Filed 07/07/20   Page 3 of 19   PageID #: 2270

the conclusion that the audio-video recording is intelligible and sufficiently comprehensible. At any rate, any dispute regarding the intelligibility of the audio-video recording should be adjudicated prior to trial so as to avoid a lengthy *Robinson* hearing regarding a two-hour interview *during* trial, which would waste judicial resources and the jury's time.

"It is well settled that the admission of tape recordings at trial rests within the sound discretion of the trial court." *United States v. Robinson*, 707 F.2d 872, 876 (6th Cir. 1983). It is a prerequisite to admission that the tapes be authentic, accurate and trustworthy. *Id.* To admit a recording the court must first determine whether the tapes are "audible and sufficiently comprehensible for the jury to consider the contents." *Id.* at 876. A recording may be admissible even if some portions of it are unintelligible. *Id.* at 781. Recordings will be deemed inadmissible only if the "unintelligible portions are so substantial as to render the recording as a whole untrustworthy." *United States v. Scaife*, 749 F.2d 338, 345 (6th Cir.1984).

Fed. R. Evid. 901 provides that "authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Physical evidence is admissible when the possibilities of alteration or misidentification "are eliminated, not absolutely, but as matter of reasonable probability." *United States v. McFadden*, 458 F.2d 440, 441 (6th Cir. 1972). The burden for the admission of the tapes rests with the proponent. *See, e.g., United States v. Alvarez,* 860 F.2d 801, 807 (7th Cir. 1988) (government offering tapes must establish that they are true, accurate and authentic). In so doing, proof must be presented that the item is what it purports to be to satisfy the requirements of Fed. R. Evid. 901(a). See, *United States v. Lance*, 853 F.2d 1177 (5th Cir. 1988); *United States v. Sarro*, 742 F.2d 1286, 1293 (11th Cir. 1984).

Generally speaking this proof includes identifying the speakers and verifying the

4

accuracy of the recording, i.e. that the recording accurately reflects the conversation. It is not necessary for a participant of the conversation to testify to the authenticity of the recordings as long as the accuracy of the recording is otherwise established. *United States v. Lively*, 803 F.2d 1124, 1129 (11th Cir. 1986); *United States v. Bright*, 630 F.2d 804, 819 (5th Cir. 1980); *United States v. Fuentes*, 563 F.2d 527, 532 (2nd Cir. 1977); *United States v. McMillan*, 508 F.2d 101, 104 (8th Cir. 1974).

Admitting the 44 excerpted video clips presents no additional evidentiary challenges. "The admissibility of recordings of . . . or parts there is a matter committed to the sound discretion of the trial court." *United States v. Denton*, 556 F.2d 811, 815 (6th Cir. 1977) (quoting *Gorin v. United States*, 313 F.2d 641, 652 (1st Cir. 1963).) Similarly, using the 1 composite video clip is acceptable in part because it will "save[] the Court much time and inconvenience. *Denton*, 552 F.2d at 816

Here, the Government intends to call one of the FBI Agents who conducted the interview with the defendant. He will be able to testify that the original video recording is authentic and that he has reviewed (although did not prepare) the 44 excerpted video clips and one composite video clip and that they fairly and accurately depict portions of the original video recording.[2]

    **4.**    **Notice of Intent to Offer Transcript of Interview of the Defendant that Occurred on February 14, 2019**

Concurrently with this trial motion, the United States has filed a motion for judicial determination of the accuracy of the transcript of the recorded interview of the defendant that occurred on February 14, 2019. The United States intends to offer this transcript as evidence at

---

[2] It is permissible for an eye witness to testify to the contents of a conversation even though a recording of the conversation has already been played for the jury. *United States v. Branham*, 97 F.3d 835 (6th Cir. 1996).

trial or, in the alternative, to use it as a demonstrative aid.

The Court has discretion to admit a transcript as substantive evidence. *United States v. Gallagher*, 57 Fed.Appx. 622, 625 (6th Cir. 2003) ("The decision to admit into evidence the transcript of taped recordings is within the discretion of the court ..."). The Court also has the discretion to allow the use of a transcript as a demonstrative aid. *United States v. Jacob*, 377 F.3d 573, 581 (6th Cir. 2004). If the Court permits the use of a transcript as a demonstrative aid, it is also permissible to allow the jury to use the transcript during deliberations. In particular, "[a]s long as the trial court instructs the jury that the tapes and not the transcripts are evidence it is not error to allow a jury to have transcripts in deliberations, even if the transcripts were not admitted into evidence." *United States v. Scarborough*, 43 F.3d 1021, 1024-25 (6th Cir. 1994) (quoting *United States v. Puerta Restrepo*, 814 F.2d 1236, 1242 (7th Cir.1987)). "Use of transcripts not in evidence is permissible where the tape is in evidence, the defendant has not questioned the accuracy of the transcript, and the defendant has shown no prejudice." *Scarborough* 43 F.3d at 1024-25 (quoting *United States v. Taghipour*, 964 F.2d 908, 910 (9th Cir. 1992)). If the defendant objects to the accuracy of the transcript, but does not point to any specific discrepancy or offer an alternative translation, it is not an abuse of discretion to use the transcript. *United States v. Garcia*, 20 F.3d 670, 673 (6th Cir. 1994), *United States v. Liddell*, 64 Fed.Appx. 958, 963 (6th Cir. 2003).

The United States understands that this Court's regular practice is to permit the use of a transcript as a demonstrative aid but to exclude it from evidence. However, this case presents unique facts that require different treatment, for a few reasons. First, the Court should admit the transcript in addition to the audio-video recording of the February 14, 2019 interview because the audio-video recording by itself may constitute a cumbersome item of evidence for the jury to

6

review during deliberations. The audio-video recording is approximately two-hours long (the transcript is approximately 124 pages) and, as will be demonstrated during the trial, replete with dozens of relevant and incriminating admissions by the defendant throughout the duration of the recording. Second, various complex issues are addressed multiple times in noncontiguous fashion throughout the interview, as the interviewing agent and the defendant shift back and forth between topics. But, the audio-video recording does not include any mechanism for locating these highly relevant admissions.[3] Conversely, if the transcript were to be admitted *in addition to* the audio-video recording, the jury will have a substantially easier time locating questions and answers they wish to hear on the audio-video recording. Third, the defendant has a significant accent, and some jurors may have trouble understanding the defendant's spoken words. Reading will facilitate their ability to follow along as the defendant speaks. When reading, it is apparent that the transcript corresponds to the defendant's spoken words.

As described above in Section 4, the United States has prepared approximately 45 video clips that it will seek to admit into evidence along with the entire interview recording. Admitting both the entire recording and clips from that recording will facilitate the jury's understanding of the evidence. Similarly, presenting the transcript to the jury while the video clips are played during trial will facilitate the jury's understanding. However, to avoid the time-consuming and cumbersome process of requiring every juror to turn to the relevant page and line number of the transcript (which is 124 pages long) before the government plays each video clip, the better approach would be to caption each video clip with the verbatim transcript language. This will also minimize the need for the jurors to handle paper exhibits. Each of these video clips (with

---

[3] A portion, but not all, of this difficulty would be remedied by the United States' excerpted clips, if admitted into evidence by the Court.

the captioning) have already been provided to the defense as part of the United States' exhibit production, and two were used successfully during the depositions of the two Italian witnesses on July 3, 2020. A screenshot of one of those video clips with the captioned transcript language is attached hereto as Exhibit 8.[4,5]

> **5.    Notice of Intent to Offer Fed. R. Evid. 1006 Summary Chart Depicting Translated WeChat Audio and Text Messages Sent to and from the Defendant**

The United States intends to offer a Fed. R. Evid. 1006 summary chart containing WeChat audio and text messages substantially in the form set forth in document 158 – the exhibit to the United States' 801(d)(2)(E) notice. This summary chart (the "WeChat Summary Chart") contains approximately 612 messages sent to and from the defendant in furtherance of the conspiracy. All of these messages were extracted from several of the defendant's electronic devices and will be authenticated as such by the testimony of FBI Forensic Analyst Pasquale Rinaldi. Further, all of the messages originally written or spoken in Mandarin were translated by or at the direction of FBI linguist James Churchill, whose testimony is expected to authenticate the translations. The underlying Mandarin text *and* audio files have been made provided to the defense and are available to be offered into evidence. Indeed, the WeChat Summary Chart contains a column depicting the underlying Mandarin text that was translated to English (in the case of written text messages) and the underlying Mandarin audio files are expected to be

---

[4] Under either approach, the entire recorded interview would be admitted into evidence. Using video clips and captioning saves time by avoiding irrelevant portions of the video: for example, the first 9 minutes of the video involve long periods of silence and trivial banter, while the parties wait for the defendant's water to arrive. Similarly, much (but not all) of the last 20 minutes or so of the video involve an irrelevant discussion during which agents (at the defendant's request) attempt to locate the defendant's personal medications.

[5] The copy of Exhibit 8 attached to this filing has been partially redacted to remove the names of private parties. An un-redacted copy has been provided to the defendant.

admitted into evidence. All formal translations of these messages have also been provided to the defense.

The WeChat Summary Chart does not, however, contain *all* messages found on the defendant's electronic devices. The exclusion of messages, however, will not prejudice the defendant. Over 1,000 messages were excluded for one or more reasons. First, the translation process is time consuming and expensive and the United States does not possess the resources to produce verified translations of all of these messages from Mandarin to English or to review all of them were they all to be translated. Second, the United States attempted to identify what the government believes to be the messages most relevant to the charges in the Indictment. These messages were translated and included in the WeChat Summary Chart. To include additional untranslated messages would serve no purpose other than to confuse the jury and waste time. Moreover, the jury has no effective means to review these untranslated messages in Court. Third, the defense has had access to all the underlying messages since shortly after the indictment in this case was returned. In addition, the United States began providing draft copies of the WeChat Summary Chart to the defense months ago. If the defense believes that additional messages are relevant, they are not barred from using those messages provided they otherwise comply with the Federal Rules of Evidence.

Fed. R. Evid. 1006 permits the use of a summary or chart to "prove the content of voluminous writing, recordings, or photographs that cannot be conveniently examined in court." "[T]he established tradition" in the Sixth Circuit is to allow "the introduction of summary evidence to aid the jury in the examination of testimony or documents in evidence." *United States v. Paulino*, 935 F.2d 739, 753 (6th Cir. 1991). To use a summary chart, the proponent must establish first that the summarized underlying documents are voluminous, second that the

9

underlying documents were "available for examination and or copying," third that the underlying documents are admissible in evidence, and fourth that the summary itself is "accurate and non-prejudicial." *United States v. Bray*, 139 F.3d 1104, 1109-10 (6th Cir. 1998).

For the foregoing reasons, the WeChat Summary Chart qualifies as a summary chart under Fed. R. Evid. 1006. This conclusion applies even though the original messages were not in English. "[I]t is proper in cases involving transcript of [foreign] language phone calls for those transcript to be offered into evidence." *United States v. Stover*, 474 F.3d 904, 913 (6th Cir. 2007). *See also United States v. Morales-Madera*, 352 F.3d 1, 8-9 (1st Cir. 2003) ("[P]arties using audio recordings in other languages should ensure that the English transcripts become part of the record by introducing them in evidence. The English transcripts should be marked and admitted in evidence in addition to the [recordings] themselves.");[6] *United States v. Kifwa*, 868 F.3d 55, 60 (1st Cir. 2017) ("Foreign-language recordings, however, are treated differently. For commonsense reasons, playing foreign language tapes endlessly to an uncomprehending jury is not required. . . . In such circumstances, transcripts containing translations of such recordings may be admitted into evidence as long as they are reliable and properly authenticated.") (Internal quotations omitted.)

6. **Notice of Intent to Offer Fed. R. Evid. 1006 Summary Charts Depicting Locations and Time Stamps of More than One Hundred Trade Secret and Confidential Files Found on Electronic Devices Belonging to the Defendant**

The United States will offer as evidence summary charts under Fed. R. Evid. 1006 substantially in the form of the document attached as <u>Exhibits 9, 10, 11, and 12</u>.[7] Exhibit 9 is

---

[6] The First Circuit noted that "the government concede[d] that it committed error in failing to enter the English transcript in the record." *Id.* at 709.

[7] The column containing file names has been partially-redacted to protect the value of these trade secrets and confidential files. An un-redacted copy of Exhibit 9 has been provided to the

10

summary chart prepared by Pasquale Rinaldi, a Senior Digital Forensic Examiner with the FBI, based upon his review of numerous electronic devices (and digital "images" of electronic devices) obtained during the investigation of this case, including laptop computers, external hard drives, iPhones, a Google Drive account, and others. Exhibits 10, 11, and 12 contain subsets of data from Exhibit 9, listing only certain subsets of files and devices with data for those files, for the jury's ease with regard to those files.

All of these electronic devices were owned and/or possessed and used by the defendant during the conspiracy. These charts summarize the dates and times that over one hundred trade secret and confidential files (and other files discovered during the investigation) were first created or modified on the defendant's electronic devices, as determined by Mr. Rinaldi's examination. The underlying records and electronic devices summarized by these charts are clearly identified on the chart, and the defendant has been provided copies of (and/or has had access to) all underlying records and the electronic devices.

These file creation and modification dates are integral to the government's case and to the jury's understanding of the significance of numerous dates and times (down to the minute) during the conspiracy. For example, Exhibits 9 and 10 depict the exact times late in the evening of August 29, 2017, when dozens of trade secret files were copied to the defendant's external hard drive. These facts depicted on the summary charts will help the jury understand a *separate* record from a Coca-Cola witness that shows that the defendant transferred an encrypted file from Coca-Cola's computer network within minutes of the time that confidential files were copied to the defendant's external hard drive, as depicted on the summary charts. Similarly, Exhibits 9

---

defense, and un-redacted copies of Exhibits 10, 11, and 12 will be provided to the defense shortly.

11

and 11 depict the exact time window during which hundreds of confidential Eastman files were copied to the defendant's Google Drive account (during a short interval in the middle of the day on June 21, 2018). Separately, the United States will prove the events that transpired in the minutes leading up to and following this highly-incriminating file transfer, revealing the defendant's motive and intent in the process. The jury's ability to understand the significance of this narrow time window will be assisted by summary charts depicting which files were moved onto which devices and when.

Moreover, the underlying physical electronic devices will be admitted as evidence in the case and have been made available to the defense for inspection. However, as a practical matter (as with the Mandarin audio and text messages described above), these electronic devices cannot be "conveniently examined in court" nor by the jury during deliberations for two reasons. First, examination in open court of these devices would require days of testimony from one witness and would perplex the jury through numerous and repeated references to devices, file names, file locations, and time stamps. Second, even if the jury were able to access the contents of the electronic devices during deliberations, the jury would still be required to spend an inordinate amount of time locating the several hundred relevant files among the tens of thousands of irrelevant computer operating and system files. This is not realistic. The summary charts would avoid both of these problems and would assist the jury in deciding material issues in this case. Lastly, Exhibit 9 has been disclosed to the defense and will be the subject of testimony by the expert witness who prepared it (FBI Senior Forensic Examiner Pasquale Rinaldi); un-redacted copies of Exhibits 10-12 will be disclosed to the defense shortly, and contain only subsets of the information in Exhibit 9. While their contents are not reasonably subject to dispute, the defense will have an ample opportunity cross examine Mr. Rinaldi on the exhibit.

### 7. Notice of Intent to Use Summary Timeline During Opening Statement and Witness Testimony and to Admit as Substantive Evidence

Attached as <u>Exhibit 13</u> is a timeline summarizing many events relevant to this case (the "Summary Timeline").[8] The United States intends to use the Summary Timeline in its opening statement and during the testimony of many witnesses. Each item depicted on the Summary Timeline is expected to be the subject of eye witness testimony and/or of documents or other records expected to be admitted into evidence. For example, to the left of each entry in the Summary Timeline is the exhibit number(s) that proves all or a portion of the point made in the corresponding chronological entry. All of the documents that are identified in the Summary Timeline have been provided to the defense in discovery. Moreover, all of the marked trial exhibits (arranged by trial exhibit number) have been provided to the defense in the past few weeks in preparation for trial. Finally, the Summary Timeline is accurate and non-prejudicial in that it "summarizes the information contained in the underlying documents accurately, correctly, and in a nonmisleading manner." *Bray*, 193 F.3d at 1110.

The Summary Timeline was prepared by numerous people, including attorneys involved in the case. The government will seek to admit it through a Special Agent with the FBI, who has eye-witness or investigative knowledge of each item depicted on the Summary Timeline and who can verify the accuracy of the summary chart. As such, he will be available for cross examination. *See United States v. Scales*, 594 F.2d 558, 563 (6th Cir. 1979) ("In order to authenticate [the composite exhibit] it was necessary only that Agent Tosi had properly catalogued the exhibits previously admitted and had knowledge of the analysis of the union records referred to in the exhibit."). Before the United States seeks to admit the Summary

---

[8] Exhibit 13 attached to this filing is partially redacted to remove the names of the victim and witness companies. An un-redacted copy has been provided to the defense.

13

Timeline, however, it seeks approval to use it in its opening statement and to address one or more of the entries on the Summary Timeline in the testimony of other witnesses who have eye-witness knowledge of parts of it.

The Summary Timeline will aid the jury in its evaluation of the complex evidence in this case. The Summary Timeline will help to explain to the jury the significance of important and complex facts from a variety of different evidentiary sources. Without it, the jury will be confused as to the meaning or relevance of testimony and exhibits expected to be offered into evidence. For example, at 11:32 am on June 21, 2018 the defendant accepted an electronic calendar invitation for an HR meeting scheduled for 1:00 pm the same day. This evidence is significant because in the interim (from 12:26 – 12:40 pm) confidential files belonging to Eastman Chemical were uploaded to the defendant's Google Drive account from the defendant's Eastman-issued laptop. In an interview with the FBI, the defendant admitted that she did this because she "sensed something was wrong," i.e., she sensed she was about to be fired. The jury will more easily understand this series of events – all of which will be proved both by documentary records and by eyewitness testimony – with the aid of the Summary Timeline. The other entries on the Summary Timeline present similar examples.

The Summary Timeline is admissible as a "secondary-evidence summary." The Sixth Circuit has recognized "secondary-evidence summaries" that are a combination of Rules 611 and 1006:

> [T]hey are not prepared entirely in compliance with Rule 1006 and yet are more than mere pedagogical devices designed to simplify and clarify other evidence in the case. These secondary-evidence summaries are admitted in evidence not in lieu of the evidence they summarize but in addition thereto, because in the judgment of the trial court such summaries so accurately and reliably summarize complex or difficult evidence that is received in the case as to materially assist the jurors in better understanding the evidence. In

14

> the unusual instance in which this third form of secondary evidence summary is admitted, the jury should be instructed that the summary is not independent evidence of its subject matter, and is only as valid and reliable as the underlying evidence it summarizes.

*Bray*, 139 F.3d at 1112 (citations omitted). The Summary Timeline is should be admitted where the court "determine[s] that the government's exhibits [are] accurate and reliable depictions of the admitted evidence [the government] sought to synthesize for the jury." *United States v. Kerley*, 784 F.3d 327, 341 (6th Cir. 2015) (secondary-evidence summary properly admissible notwithstanding defendant's contention that it "simply reiterated the government's interpretation of the evidence").

The Summary Timeline may also be admissible as a summary chart. A district court may admit "charts consist[ing] of a compilation of information obtained from telephone records, limousine records, surveillances, and tape recordings". *United States v. Williams*, 952 F.2d 1504, 1519 (6th Cir. 1991) (in affirming admission over defendant's prejudice objection noting that "[i]n essence, the charts were a chronology of the significant events that occurred on each of those days.") It is no bar to admission that each of the constituent parts of the Summary Timeline consist of admitted evidence. The Sixth Circuit explained:

> Insofar as [the exhibit] contained summaries of other exhibits in evidence, appellant contends that Rule 1006 does not apply because each document listed could have been, and was, examined at the time of its admission. There is no requirement in Rule 1006, however, that it be literally impossible to examine the underlying records before a summary or chart may be utilized. All that is required for the rule to apply is that the underlying "writings" be "voluminous" and that in-court examination not be convenient.

*Scales*, 594 F.2d at 562.

### 8. Notice of Intent to Use Demonstrative Aids During Opening Statement and Testimony

Set forth in Exhibit 14 is a "can coating" diagram depicting general categories of ingredients necessary to create a coating for the interior of a beverage can. The United States seeks to use this exhibit as a demonstrative aid in its opening statement and during the testimony of several witnesses. The Indictment alleges that the defendant stole technology from seven independent companies related to the development of BPA-NI can coatings. Accordingly, the United States will have witnesses from each of these companies testify about their respective BPA-NI technology. The can coating diagram will aid the jury in understanding the nature of these witnesses' testimony.

Similarly, the United States seeks to use in its opening statement a video depicting the application of BPA-NI coatings to aluminum beverage cans. This video can be authenticated by a witness familiar with the can-coating application process who observed creation of the video in question. The United States will seek to use this demonstrative video during its opening statement and in the testimony of an authenticating witness to help the jury understand the process by which BPA-NI coatings are applied to aluminum beverage cans.

### 9. Notice of Intent to Offer Dual Fact-Expert Witness Testimony

In an 11-page letter to the defense dated April 20, 2020, the United States provided detailed expert disclosures regarding 12 probable expert witnesses. In that correspondence, the United States explained:

> Many of the probable expert witnesses are expected to provide fact and opinion testimony. See *United States v. Christian*, 673 F.3d 702, 708-9 (6th Cir. 2012) ("A witness can qualify as both a fact and expert witness and an expert may base an opinion on fact or data in the case that the expert has personally observed . . . the Rules do 'not distinguish between expert and lay witnesses, but rather between expert and lay testimony.'") (quoting Fed.R.Evid. 701 advisory

16

> committee's note (2000 amends.)). In order to assist the jury, the United States proposes that the parties agree that the standard Sixth Circuit model jury instruction (7.03A) regarding dual witnesses should be provided as part of the closing jury instructions

In particular, approximately seven probable expert witnesses from the various chemical companies are expected to testify as experts in the manner described above. Most also have personal, first-hand knowledge about facts relevant to this case. Given the technical nature of the alleged trade-secrets, the technical nature of defendant's interactions with the victim companies, and the technical qualifications of the defendant and the witnesses with whom she interacted, many of the facts of this case involve complex, technical subject matter. Indeed, it is precisely because these witnesses were experts in the companies' respective technology that the defendant interacted with them during her employment with Coca-Cola and Eastman, leading to their personal knowledge of facts relevant to the case. *See Christian*, 673 F.3d at 708-9 (6th Cir. 2012). It is therefore difficult to distinguish between "particularized knowledge that the witness has by virtue of his or her position in the business," Fed. R. Evid. 701, Advisory Committee Notes, and technical testimony based on the witnesses' "knowledge, skill, experience, training or education . . . that will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.

Although presenting dual fact-expert witness testimony may cause problems in other cases, the case law indicates that all or nearly all of these problems arise in connection with law enforcement officers testifying in a dual role in the context of narcotics cases. *See e.g. United States v. Lopez-Medina*, 461 F.3d 724, 743 (6th Cir. 2006) ("In past cases we have permitted an officer's dual testimony as a fact and expert witness when an adequate cautionary jury instruction was provided."); *United States v. Ham*, 628 F.3d 801, 805-06 (6th Cir. 2011) (upholding conviction where investigator with the narcotics unit of the Knox County Sheriff's

17

Office testified as dual witness). It may be the case that the concerns regarding dual fact-expert witness are limited to law enforcement officers and investigators testifying in that role. *See United States v. Flores-De-Jesus*, 569 F.3d 8, 22 (1st Cir. 2009) ("The problem is especially acute where the dual roles of expert and fact witness are filled by a law enforcement official, in part because 'the jury may unduly credit the opinion testimony of an investigating officer based on a perception that the expert was privy to facts about the defendant not presented at trial.'") (quoting *United States v. Upton*, 512 F.3d 394, 401 (7th Cir. 2008)); *see also United States v. Thomas*, 74 F.3d 676, 683 (6th Cir. 1996) ("[W]hen a police officer testifies in two different capacities in the same case, there is a significant risk that the jury will be confused by the officer's dual role.")[9]

None of the probable-expert witnesses from the chemical companies is a law enforcement officer. In addition, the jury will not have much difficulty distinguishing between the fact and expert *opinion* testimony from these witnesses. Indeed, the United States expects the expert *opinion* testimony of these witnesses to be limited. For example, testimony regarding the value of the stolen trade secrets to a would-be competitor is clearly opinion testimony. Nor would the jury have trouble distinguishing between lay-fact testimony (e.g., descriptions of the defendant's demands for confidential information and measures taken by the companies to protect their secret information) and expert-fact testimony (e.g., a description of the complex chemistry involved in creating a coating or reverse-engineering a coating).

Lastly, an appropriate jury instruction will eliminate any remaining risk that the defendant would be unfairly prejudiced by the proposed testimony. *See United States v. Barron*,

---

[9] Although such a case may exist, the United States did not locate any involving dual fact-expert witnesses who were not law enforcement officers or operating in an investigative role.

18

940 F.3d 903, 920 (6th Cir. 2019) ("We have recognized two primary ways to assure that the jury is properly informed of the dual roles: (1) by providing an adequate cautionary jury instruction; or (2) clear demarcation between expert and fact witness roles.") (Internal quotations omitted.) Model jury instruction 7.03A is designed for this purpose.

\* \* \* \* \*

Respectfully submitted this the seventh day of July 2020.

                                                                       J. DOUGLAS OVERBEY
UNITED STATES ATTORNEY

By: */s/ Timothy C. Harker*
Timothy C. Harker, NY Bar# 4582177
Assistant United States Attorney
800 Market Street, Suite 211
Knoxville, Tennessee 37902
(865) 545-4167
Email: timothy.harker@usdoj.gov

By: */s/ Nicholas O. Hunter*
Nicholas O. Hunter, DC Bar# 1022355
Trial Attorney, National Security Division
950 Pennsylvania Ave, N.W.
Washington, D.C. 20530
(202) 233-0986
Email: nicholas.hunter@usdoj.gov

By: */s/ Matthew R. Walczewski*
Matthew R. Walczewski (IL Bar #6297873)
Senior Counsel, U.S. Department of Justice
Criminal Division
Computer Crime & Intellectual Property
Section (CCIPS)
John C. Keeney Building, Suite 600
Washington, DC 20530
(202) 514-1983
Email: matthew.walczewski@usdoj.gov