UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | 2:19-CR-14 |
| | ) | |
| vs. | ) | |
| | ) | |
| XIAORONG YOU, | ) | |
| | ) | |
| Defendant | ) | |

**ORDER**

Defendant filed a *Daubert* Motion to Preclude Expert Testimony [Doc. 142] of Robert S. Spalding, III ("Gen. Spalding"). The United States filed a response opposing Defendant's motion [Doc. 145]. This matter is before the Court pursuant to 28 U.S.C. § 636 and the standing orders of the District Court. A *Daubert* hearing was held before the undersigned on June 25, 2020. Present before the Court were Defendant and her counsel, Thomas C. Jessee and Corey B. Shipley, Esqs., and Assistant United States Attorneys Matthew R. Walczewski, Nicholas O. Hunter, and Timothy Curtis Harker. The matter is now ripe for resolution.

I.  **Relevant Background and Procedural History**

On February 12, 2019, a federal grand jury returned an indictment against Defendant for one count of Conspiracy to Commit Theft of Trade Secrets in violation of 18 U.S.C. § 1832(a)(5), six counts of Theft of Trade Secrets in violation of 18 U.S.C. § 1832(a)(3), and one count of Wire Fraud in violation of 18 U.S.C. § 1343.

The United States disclosed retired Brigadier General Robert S. Spalding, III as an expert witness expected to testify at Defendant's trial on these charges. According to the disclosure it

filed, the government intends to have Gen. Spalding testify regarding "the Chinese Communist Party's strategy for acquiring technology from foreign sources, including U.S. sources, and the role that Chinese businesses and other entities play in that strategy…the role that the 'Thousand Talents Program' and related provincial-level talent programs play in that strategy…that the Chinese Communist Party incentivizes Thousand Talents Program participants to benefit personally while also benefiting China…[and] that certain exhibits otherwise introduced at trial are consistent with the defendant's participation in one or more Chinese talent programs." [Doc. 151-1, p. 1]. Defendant argues that Gen. Spalding's testimony should be precluded on three separate grounds.

First, Defendant asserts that Gen. Spalding's proffered testimony is inadmissible under Federal Rule of Evidence 702 as it does not meet the standards of reliability of expert testimony set forth by *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589-94. Additionally, Defendant argues that Gen. Spalding's testimony is not relevant to the elements of the offenses with which Defendant is charged or Defendant's intent to cause pecuniary harm to the victim companies as alleged in the indictment and is therefore inadmissible under Rule 401 of the Federal Rules of Evidence. Finally, Defendant alleges that even if the proffered testimony meets the standards of Rules 401 and 702 and *Daubert*, it is still inadmissible under Federal Rule of Evidence 403 because any probative value of the testimony is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and wasting time.

In the United States response in opposition to Defendant's motion [Doc. 145], the government argues that Gen. Spalding is qualified to testify as an expert on Chinese talent programs, technology-acquisition programs, and other topics. The government also contends that Defendant's Motion does not claim Gen. Spalding is unqualified to testify as an expert witness

[Doc. 145, p. 1]. The United States further contends that both Defendant's positions that Gen. Spalding's expert opinions are inadmissible because they are based on hearsay and that the probative value of his testimony would be substantially outweighed by its prejudicial effect are incorrect and without merit.

## II.     Legal Standard

All evidence to be introduced, including expert testimony, must be relevant under Fed. R. Evid. 401. Specifically, evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Additionally, the admissibility of testimony by expert witnesses is subjected to additional scrutiny under Fed. R. Evid. 702. Rule 702 provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court stated that evidence proffered under Rule 702 must be relevant *and* reliable, considering "whether the reasoning or methodology underlying the testimony is scientifically valid." 509 U.S. 579, 593-94 (1993). *Kumho Tire Co. v. Carmichael* clarified that the "gatekeeping" criteria set out in *Daubert* applies to all expert testimony, whether it be scientific, technical, or other specialized knowledge. 526 U.S. 137, 147 (1999).

Finally, even if the evidence is both relevant and proper under Rules 401 and 702, the Court must conduct a balancing test pursuant to Fed. R. Evid. 403 to determine whether

otherwise admissible but potentially prejudicial evidence must be excluded. The admission of otherwise relevant and admissible expert testimony is subject to exclusion "if its probative value is substantially outweighed by a danger of…unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; *see also United States v. Glover*, 846 F.2d 339, 343 (6th Cir. 1988).

### III. Analysis

#### a. Qualifications and Expected Testimony

Gen. Spalding is an author, speaker, entrepreneur, and national security policy strategist with 26 years of military experience. [Doc. 151-1, p. 2]. Prior to retiring from the military, Gen. Spalding served in positions related to strategy and diplomacy within the State and Defense Departments. *Id.* He also holds a doctorate degree in economics and mathematics from the University of Missouri, Kansas City. *Id.* He authored a book, *Stealth War: How China Took Over While America's Elite Slept*, which is described as "an executive summary of his almost decade-long work countering Chinese Communist Party influence." *Id.* Gen. Spalding's CV states that his academic papers and editorial work are "frequently published and cited," but no details are provided as to the topics of these writings or the publications in which they have appeared aside from noting that an article on America's Two Air Forces was published in the *Air Power Journal*. Gen. Spalding's CV further notes that he served as a China strategist for the chairman of the Joint Chiefs of Staff and the Joint Staff at the Pentagon and served as a senior defense official and defense attaché in Beijing. *Id.* Gen. Spalding is also fluent in Chinese Mandarin. *Id.*

The United States filed a Notice in Connection with Anticipated Trial Testimony [Doc. 146], in which it states Gen. Spalding served on the Joint Staff within the Department of Defense and on the National Security Council between 2014 and 2018 and during this time "briefed

officials on matters related to Chinese talent programs." [Doc. 146, p. 1]. The Notice further states Gen. Spalding informed the government that he wrote briefing materials related to the Thousand Talents Program for the Joint Staff and NSC. *Id.* The United States candidly admits it does not possess a copy of the materials, has not reviewed them, and has not provided them to Defendant. The government further states that it is unaware of the specific contents of the materials and takes the position that the government is not obligated to provide information regarding the content to Defendant or produce the materials. *Id.*

Gen. Spalding was not deposed prior to trial nor was a sworn statement provided as part of the government's expert disclosures or this proceeding; therefore, the Court's analysis of Gen. Spalding's proffered testimony is limited to the contents of the summary of probable testimony provided by the United States as part of its expert disclosures. According to this summary, Gen. Spalding will testify regarding the Chinese Communist Party's ("CCP") strategy for acquiring technology from foreign sources, including the United States, and the role that the Thousand Talents program and other provincial-level talent programs play in that strategy. [Doc. 151-1, p. 1]. Based upon his "professional experience studying the Chinese Communist Party and its approaches to technology acquisition," Gen. Spalding is expected to opine that the CCP and Chinese government officials confer financial and reputational benefits upon talent program participants and incentivize participants to benefit personally while also benefiting the CCP and China. *Id.* It is also Gen. Spalding's opinion that the CCP and Chinese government use the Thousand Talents and other talent programs to obtain technology with awareness that such use induces theft and causes economic damages to foreign entities. *Id.* The government also intends for Gen. Spalding to testify that "certain exhibits otherwise introduced at trial are consistent with the defendant's participation in one or more Chinese talent programs." *Id.*

### b. **Whether Qualifications Permit Testimony and Assessment of Reliability**

The first issue is whether Gen. Spalding is qualified to offer expert testimony under Rule 702. An expert witness is one who is qualified as such based upon "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. "The fields of knowledge which may be drawn upon are not limited merely to the 'scientific' and 'technical' but extends to all 'specialized' knowledge." Fed. R. Evid. 702 Adv. Comm. Notes; *see also Kumho Tire*, 526 U.S. at 151. In deciding the qualification of an expert witness, "the court is to examine not the qualifications of the witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." *Morales v. Am. Honda Motor Co., Inc.*, 151 F.3d 500, 521 (6th Cir. 1998) (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994)). Here, it appears that the primary question Gen. Spalding would be testifying to is whether the Thousand Talents and related talent-acquisition programs are tools of the CCP and Chinese government to acquire foreign technology through theft of trade secrets. *See* [Doc. 151-1, p. 1].

As a former China strategist for the Joint Chiefs of Staff, a defense official, and an attaché in Beijing, Gen. Spalding has demonstrated extensive knowledge of China, particularly in the areas of economics and defense. Gen. Spalding wrote and provided briefing materials on the Thousand Talents Program to the Joint Staff and National Security Council, although these materials have not been reviewed or disclosed. While Gen. Spalding's biographical information states his academic papers and editorial work are frequently published, it does not state that he has authored any such publications on the Thousand Talents or related talent programs, or on Chinese technology acquisition strategy in general. He has been interviewed about the economy and national security by various media outlets, but there is no mention of any interviews on China's various talent-acquisition programs or how they relate to trade secrets or technology acquisition.

While Gen. Spalding's qualifications are undoubtedly impressive, much of the information that has been provided to the Court is quite vague and generalized. Still, Gen. Spalding's extensive experience working in high-level positions related to China endows him with the specialized knowledge and experience necessary to qualify as an expert on issues related to China and economic strategy pursuant to Rule 702. Having determined that he is so qualified, the Court now turns to whether Gen. Spalding is qualified to provide *reliable* expert opinion testimony regarding not only the Thousand Talents and related talent programs themselves but also how "the Chinese Communist Party and the Chinese government employ the Thousand Talent Program and related programs to obtain technology, even though they are aware that it induces the theft of foreign technology and causes economic damage to the victims of such theft, including to U.S. and other foreign corporations."

To be admitted, qualified expert testimony must also be reliable. *See Daubert*, 509 U.S. at 589. In evaluating reliability, the Court may consider (1) whether a theory or technique can be or has been tested; (2) whether the technique has been subjected to peer review or publication; (3) whether the technique has a known or potential rate of error and the existence of standards in controlling its operation; and (4) whether the theory or technique enjoys general acceptance in a relevant scientific community." *Mike's Train House, Inc. v. Lionel, LLC*, 472 F.3d 398, 407 (6th Cir. 2006) (citing *Daubert*, 509 U.S. at 593-94). These factors are not exhaustive, and each case will require a differently reliability evaluation. *Id.* While experts may rely upon otherwise inadmissible evidence to some degree in formulating their opinions, an expert's opinion "is only as good as the independent evidence that establishes its underlying premise, and expert witnesses may not "act as mere conduits for hearsay." *Williams v. Illinois*, 567 U.S. 50, 80 (2012). Ultimately, the goal is "to make certain that an expert, whether basing testimony upon professional

studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152.

Defendant argues Gen. Spalding's opinion is unreliable and speculative as it is based solely upon hearsay. The government argues that Gen. Spalding's opinion is based upon the same knowledge and information as would be expected in his field; however, no basis of personal knowledge for Gen. Spalding's opinion has been provided. Although an opinion on a foreign government's technology acquisition strategy is not something that can be subjected to scientific testing, it can certainly be published and subjected to peer-review, but the Court has no evidence that Gen. Spalding has published any work on the subject of the CCP's strategy for acquiring foreign technology or the use of talent programs to do so. Additionally, no evidence was provided to show that Gen. Spalding's theory on Chinese talent programs is generally accepted in the relevant community. Finally, it appears that the most relevant knowledge and experience on this topic Gen. Spalding has results from his work providing briefs to the Joint Staff and National Security Council sometime between 2014 and 2018 which were prepared based on reports, articles, and Chinese government statements, the entirety of which is hearsay. *See* [Doc. 145, p. 5].

### c. Relevance and Helpfulness to the Jury

Pursuant to Rule 702, a qualified expert may only testify if his specialized knowledge will "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. This goes hand-in-hand with the standard of relevance. "Relevant evidence is defined as that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Daubert*, 509 U.S. at 587 (internal citations omitted). "Relevancy describes the relationship between a proffered item of evidence and a proposition which is provable or

material in a given case. There is no legal test of relevancy and reference must be made to logic or general experience to demonstrate the existence of a relationship and its proximity or remoteness." *United States v. Craft*, 407 F.2d 1065, 1069 (6th Cir. 1969). "The Rule's basic standard of relevance thus is a liberal one." *Daubert*, 509 U.S. at 587. Accordingly, courts routinely admit logically relevant evidence unless a countervailing policy, rule, or consideration prevents its proper admission. *See Craft*, 407 F.2d at 1069.

In determining the relevancy and helpfulness of expert testimony, the Court may consider "whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." *United States v. Rios*, 830 F.3d 403, 413 (6th Cir. 2016). The Court may exclude expert testimony that "mirrors the testimony offered by fact witnesses, or the subject matter of the expert's testimony is not beyond the ken of the average juror." *Id.* (quoting *United States v. Amuso*, 21 F.3d 1251, 1263 (2nd Cir. 1994)).

Defendant argues that Gen. Spalding's testimony is not relevant because it is not related to the elements of the offenses charged or the intent to cause pecuniary harm alleged in the indictment. [Doc. 142, p. 3]. Defendant further argues that there are no allegations against the CCP or Chinese government in the indictment, making any testimony related to the actions or intentions of the CCP or Chinese government irrelevant. The government argues that Gen. Spalding's proffered testimony is relevant because it will assist the jury in understanding the overall context of the Thousand Talents and other talent programs and the involvement and interest of the Chinese government in such programs.

*Charged Offenses*

Count One of the Indictment against Defendant alleges she conspired with co-defendant Liu Xiangchen to commit theft of trade secrets. [Doc. 3]. The description of this offense also references an unindicted co-conspirator ("Co-Conspirator #1), believed to be a relative of Defendant living in China. The elements of conspiracy to commit theft of trade secrets are: (1) intending to convert a trade secret; (2) that is related to a product or service used in or intended for use in interstate or foreign commerce; (3) to the economic benefit of anyone other than the owner thereof; (4) intending or knowing that the offense will injure any owner of that trade secret; and (5) knowingly conspiring with one or more other persons to steal, take, carry away, conceal, copy, duplicate, download, upload, receive, transmit, deliver, buy, send, possess, etc. or attempt any such act to effect the object of the conspiracy. *See* 18 U.S.C. § 1832. The indictment provides a detailed description of the alleged offense, approximately ten pages in length. *See* [Doc. 3]. While this description alleges multiple acts on the part of Defendant, co-defendant Xiangchen, Co-Conspirator #1, and describes the role the Thousand Talents and Yishi-Yiyi programs allegedly played in the conspiracy, it does not contain any references to actions or involvement on the part of the CCP, Chinese government, or officials thereof in the alleged conspiracy.

Counts Two through Eight of the Indictment each allege Defendant committed Theft of Trade Secrets. To prove this offense the government must show that Defendant knowingly received, bought or possessed a trade secret related to a product or service used in or intended for use in interstate or foreign commerce with the intent to convert it to the economic benefit of anyone other than the owner thereof; knew that the trade secret had been stolen or appropriated, obtained or converted without authorization; and intended or knew that such actions would injure

any owner of that trade secret. *See* 18 U.S.C. § 1832(a)(3); [Doc. 3, p. 11]. The indictment alleges Defendant possessed various trade secret information obtained without authorization from victims identified as "TSI Owner #s 1-6" and "Employer #2." Again, the description of the offense included in the indictment makes no mention of acts, inducements, or involvement of the CCP or Chinese government or officials thereof. The offense is alleged to have occurred within the Eastern District of Tennessee and does not allege transmission or travel to China or transmission to any person associated with the CCP or Chinese government. *Id.* at pp. 11-12.

Finally, Count Nine of the Indictment charges Defendant with Wire Fraud. [Doc. 3, p. 12]. Wire fraud is defined as

> having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmit[ting] or caus[ing] to be transmitted by means of wire…communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice.

18 U.S.C. § 1343. The indictment alleges Defendant committed this offense by uploading trade secret information owned by "Employer #2" to her personal Google Drive account, while representing to "Employer #2" that she had not retained copies of such information. [Doc. 3, pp. 12-13]. The indictment contains no allegation that Defendant acted in concert with or at the behest of the CCP or Chinese government or that such entities or officials thereof were involved in this act. Defendant is not alleged to have uploaded or transmitted any information to China. *Id.*

### *Economic Espionage*

Defendant is *not* charged with committing economic espionage; however, given the proffered testimony at issue, the Court finds it necessary to address economic espionage in its determination of the relevance and appropriateness of Gen. Spalding's expert testimony. The

elements of economic espionage are similar to those of theft of trade secrets, with the main difference being that economic espionage requires the intent or knowledge that the offense "will benefit any foreign government, foreign instrumentality, or foreign agent." 18 U.S.C. § 1831(a).

      Gen. Spalding's proffered testimony focuses almost solely on the CCP and Chinese government and has little, if any, direct relation to Defendant. Such testimony would be highly relevant to proving a charge of economic espionage; however, it is difficult to see how expert testimony on the strategy of the CCP for acquiring foreign technology though talent programs and incentivizing theft of trade secrets makes it more or less probable that the Defendant conspired with an individual wholly unrelated to the CCP or Chinese government to steal trade secrets or to herself commit wire fraud by uploading trade secrets to her personal Google drive account. The government contends it is essential for the jury to understand the full context of the talent programs to which Defendant applied because Defendant's motive for committing the charged offenses was to receive an award from one or more Chinese talent programs, which would have afforded her both substantial monetary benefit and "fame" in China. The government contends that Gen. Spalding's testimony will assist the jury in this understanding; however, the United States also plans to introduce Defendant's applications to both the Thousand Talents and Yishi-Yiyi talent programs along with related documents as exhibits at the trial of this cause. Those applications provide ample information regarding the programs and their potential benefits for applicants if they are chosen to participate. *See* [Docs. 174-178]. Gen. Spalding is also expected to testify that exhibits otherwise introduced at trial are consistent with Defendant's participation in talent programs, which the Court can only interpret to mean that Gen. Spalding will testify that Defendant's applications to the Thousand Talent and Yishi-Yiyi Programs are indeed applications to those talent programs.

The Court further notes that at the hearing on the motion at issue, Defendant's counsel represented to the Court that Defendant did not deny either applying to these programs herself and/or having applications submitted on her behalf. Counsel also did not contest the government's assertion that these programs would have afforded Defendant substantial financial benefit and some degree of "fame" in China had she been selected.

Much of the proffered testimony of Gen. Spalding is not relevant for numerous reasons. First, under the Rule 401 relevance standard, it does not make a fact of consequence to the offenses alleged more or less probable than it would be without the testimony. For instance, the strategies and actions of the Chinese government have no bearing on the actions Defendant is alleged to have committed in the Indictment as there is no mention of any CCP or Chinese government official anywhere in the charging document. *See* [Doc. 3]. The exhibits relating to Defendant's application to the Thousand Talents and Yishi-Yiyi talent programs, which will presumably be entered through fact witnesses such as the agents who investigated Defendant, suffice to establish Defendant's potential motive for the crimes with which she is charged. Adding Gen. Spalding's testimony on this topic is merely cumulative.

Additionally, the proffered testimony is not relevant to assist the jury in understanding the evidence or determining a fact in issue under the Rule 702 standard. The proffered testimony will unnecessarily mirror the proof contained in the Thousand Talents and Yishi-Yiyi talent program documents. The application documents provided by the government plainly set forth many of the benefits conferred upon award recipients of the programs at issue, and those documents do not require specialized knowledge to be understood. Similarly, it is not "beyond the ken of the average juror" to deduce that applications to talent programs are, in fact, consistent with participation in such programs.

### d. Danger of Unfair Prejudice and Confusion of the Issues

Finally, the Court turns to Defendant's argument that Gen. Spalding's testimony should be precluded due to risk of unfair prejudice and confusion of the issues. Fed. R. Evid. 403 permits the exclusion of testimony if "its probative value is substantially outweighed by a danger of…unfair prejudice [or] confusing the issues…" As noted above, the majority of Gen. Spalding's expected testimony would focus on the CCP and Chinese government's involvement with the Thousand Talents and related talent programs and their use thereof as a means of incentivizing and encouraging theft of foreign trade secrets, all of which shines a spotlight on the CCP and Chinese government's role in the alleged offenses. As referenced above, there are no allegations contained in the charging documents that Defendant acted in concert with or at the behest of the CCP or Chinese government. To allow Gen. Spalding to testify as to how the CCP and Chinese government have used these programs to steal trade secrets from other countries including the U.S. would necessarily signal to a jury that they also were the driving force behind Defendant's purported actions, when the government has offered no proof that Defendant was motivated to act by any Chinese official.[1] In essence, Gen. Spalding's testimony would allow the government to place both the Defendant and the Chinese government on trial for economic espionage, rather than being put to the task of proving beyond a reasonable doubt that Defendant committed the crimes with which she is actually charged.

The risk of unfair prejudice to Defendant if she is seen as acting on behalf of or in concert with the Chinese government is particularly great in this case because of the timing of trial. In this

---

[1] The government alleges the documents it provided as exhibits in opposition to Defendant's Daubert motion demonstrate that a primary motivator for Defendant's alleged criminal conduct was a desire to benefit the Chinese government; however, in reviewing the government's filing the Court finds those documents instead show that Defendant's primary motivation was to benefit herself financially. It was logical for Defendant to include in her applications and presentations for the talent programs at issue how her plans would benefit not only herself and her company but China as a whole, given that the government funded the programs.

context, unfair prejudice means "an undue tendency to suggest decision on an improper basis, commonly…an emotional one." Fed. R. Evid. 403. Adv. Comm. Comments. The suggestion by a retired U.S. Air Force Officer, who would most likely testify in uniform, that Defendant likely acted in concert with the Chinese government would almost certainly be given great weight by a jury. Gen. Spalding's linking of Defendant to the Chinese government would also be likely to invoke a particularly strong emotional response from many of the jurors in light of the fact that the trial of this cause will take place in the midst of the COVID-19 global pandemic, with the virus having originated in China.

### e. General Spalding as a Potential Expert Witness in Rebuttal

There is a limited circumstance under which the Court would find it to be proper for the government to utilize Gen. Spalding as an expert at the trial of this cause. Should Defendant take the position during trial that she did not apply for the Thousand Talents and Yishi-Yiyi programs or have someone do so on her behalf or take the position that she did not stand to enjoy significant personal and financial benefits as a result, the Court would find it appropriate for Gen. Spalding to share with the jury his knowledge of the benefits of the talent programs to applicants; his knowledge of the application process; and how the documents to be submitted by the government demonstrate that Defendant did in fact apply for these programs. At the same time, it would be improper for Gen. Spalding to intimate that the CCP and Chinese government were a driving force behind Defendant applying for these programs, or for him to testify regarding his belief that China has used these programs to steal trade secrets from the U.S. and other countries, because of the great and unfair prejudice to Defendant which result from such testimony.

## IV. Conclusion

Based upon the information and evidence presented, the Court finds that while Gen. Spalding may be a qualified expert, he cannot provide reliable expert testimony on the Thousand Talents and related Chinese talent programs as a tool of the CCP and Chinese government to acquire foreign technology, and even if the testimony was reliable, it would be irrelevant and present significant risk of confusion for the jury. Further, the Court finds that Gen. Spalding's testimony would be merely cumulative as to the benefits of the talent program to Defendant as the applications themselves reflect the substantial financial benefit Defendant stood to gain. The Court further finds that any probative value of the proffered testimony is substantially outweighed by the risk of prejudice to Defendant.

For all of these reasons, Defendant's Daubert Motion to Preclude Expert Testimony of Dr. Robert S. Spalding, III [Doc. 142] is **GRANTED** unless needed as rebuttal in which it may be provided in the manner outlined above.

SO ORDERED:

s/Cynthia Richardson Wyrick
United States Magistrate Judge