UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 2:19-CR-14 |
| | ) | |
| XIAORONG YOU | ) | |

<u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is the defendant's motion to exclude expert testimony of Dr. Barry Naughton, [Doc. 252]. The government has responded in opposition, [Doc. 270]. The Court held an April 15, 2021 *Daubert* hearing. The matter is now ripe for a decision.

**I. BACKGROUND**

On August 4, 2020, a federal grand jury returned an eleven-count superseding indictment charging Defendant with conspiracy to commit theft of trade secrets, possession of stolen trade secrets, wire fraud, conspiracy to commit economic espionage, and economic espionage. [Doc. 217].

The charges in the indictment stem from allegations that defendant, a chemical engineer by education and training, orchestrated the theft of trade secret information from her former employers to use in her applications to two prestigious Chinese government-backed grant-like award programs, the Thousand Talents Program and the local provincial Yishi-Yiyi Program. [*Id.*]. The indictment generally alleges that defendant's 2017 applications for these award programs were completely based on the stolen information. [*Id.*].

Defendant filed an earlier motion *in limine* to exclude testimony of the government's proposed expert witness, retired Brigadier General Robert S. Spalding, III. [Doc. 142]. In its Federal Rule of Criminal Procedure 16 disclosure, the government offered Gen. Spalding as an expert on the Chinese Communist Party's ("CCP") methods for acquiring technology from foreign sources, and the role that Chinese businesses and the Thousand Talents and the Yishi-Yiyi Programs play in that strategy, as well as

1

the CCP's awareness that these talent programs induce theft of foreign technology and economic damage to the victims of such theft including to the United States and foreign corporations. [Doc. 151-1]. The Magistrate Judge and the undersigned found that Gen. Spalding was qualified as an expert but did not meet the other requirements under the Federal Rules of Evidence to present the testimony detailed in the government's pretrial disclosure. [Docs. 193, 248]. However, this Court explicitly stated that its memorandum opinion was not intended to be a final opinion but rather the Court stated its concerns about reliability, relevance and potential unfair prejudice of Gen. Spalding's proposed testimony on the record. [Doc. 248]. The memorandum opinion further stated that the Court would entertain the government's proffer of more limited testimony of another expert witness, but only after a more detailed disclosure, and a non-jury hearing during which the Court would hear the expert's testimony and argument. [*Id.* at 21-22].

Thereafter, the government withdrew Gen. Spalding as its expert witness and provided a notice of expert testimony that it intended to call Dr. Barry Naughton, a university professor of economics with an academic specialization of the economy of the People's Republic of China ("PRC"), to testify about the Chinese government's efforts to obtain foreign technology, the Thousand Talents Program and related local talent programs, and the Chinese government's structure and the extent to which the national-level government exerts direction and control over local governments. [Doc. 249-1 at 2-15].

Subsequently, the defendant moved to exclude Dr. Naughton's testimony, [Doc. 252]. The government filed a response, [Doc. 270]. A multi-week jury trial commenced on April 6, 2021 in Greeneville, Tennessee before the undersigned. After hearing eighteen government witnesses, the Court held an April 15, 2021 *Daubert* hearing outside the presence of the jury to determine if Dr. Naughton's testimony was admissible. During the hearing, the government proffered the testimony, and the Court heard argument. The Court ruled from the bench, and this memorandum opinion memorializes that ruling.

II. ANALYSIS

The defendant moves to exclude Dr. Naughton's testimony under Federal Rules of Evidence 702, 401, 402, 403. [Doc. 252].

A. Federal Rule of Evidence 702

2

The Supreme Court in *Daubert* held that Federal Rule of Evidence 702 requires that trial courts perform a "gate-keeping role" when determining the admissibility of expert testimony. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). A witness is qualified to testify as an expert in the form of an opinion if, as Rule 702 provides:

> a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case

Fed. R. Evid. 702. Rule 702 applies equally to scientific testimony and other types of expert testimony based on technical or specialized knowledge. *Kumho Tire Co., LTD. v. Carmichael*, 526 U.S. 137, 147-49 (1999). Defendant does not contest that Dr. Naughton is a qualified expert. Instead, defendant takes issue with the second step of the analysis, that the expert's "specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. More specifically, the defendant avers that the expert testimony is not necessary, and that the jury can determine the talent program application process and the purpose of the talent program applications through materials already admitted into evidence. [Doc. 252 at 5]. Further, the defendant maintains that Dr. Naughton's proposed testimony is unreliable and speculative, and that his knowledge is based on hearsay. [*Id.*].

As noted above, Rule 702 further requires that expert evidence or testimony "help the trier of fact to understand the evidence or to determine a fact in issue." "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. 579, 591 (citation omitted).

During trial, as part of the government's case-in-chief, translated versions of defendant's Thousand Talent Program application and PowerPoint presentation related to the application were authenticated by linguist James Churchill and admitted into evidence as exhibits 8-b, and 8-c and published to the jury. [*See* Doc. 278]. The translated Yishi-Yiyi Talent Program application was authenticated by FBI agent Pasquale Rinaldi and admitted into evidence as exhibit 8-d. [*See* Doc. 282].

3

While the actual talent program applications will be useful in determining the factual circumstances of this case, they are otherwise of little utility to a lay jury without any context. Without any expert testimony, the jury will lack a complete understanding of the talent programs' significance within China, and the talent programs' role and purpose in the PRC's greater goal of cutting-edge technology acquisition. Furthermore, an American jury, while very familiar with our structure of government, might not be as familiar with the inner workings of a modern day one-party Socialist republic, like the PRC, and will find Dr. Naughton's proposed testimony helpful to understand the dynamic between the national governing body and local provincial authorities in the PRC's governmental system. Dr. Naughton's testimony delves into a subject beyond a typical lay witness's knowledge and will assist the jury in determining whether the Thousand Talents and Yishi-Yiyi Talent Programs were conduits for the Chinese government to acquire foreign technology. Further, the testimony will help the jury determine if the defendant acted with the intent to benefit a foreign government, instrumentality, or agent. *See* 18 U.S.C. § 1831.

Next, defendant argues that Dr. Naughton "has no first-hand knowledge regarding PRC's use of talent programs to acquire foreign technology. Instead, his knowledge is based upon hearsay." [Doc. 252 at 5]. Defendant contends Dr. Naughton's statements that over the years that he has studied China he has heard of many cases of technology theft carried out by Chinese companies and actors, and that in several cases, he has heard from credible individuals who have personally been victims of such actions, are` "broad generalizations that the People' Republic of China use these programs to steal foreign technology is speculative and extremely prejudicial to Dr. You." [*Id.* at 6].

This Court observes that an "expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703; *see also* Advisory committee notes to Fed. R. Evid. 703 (observing that experts may "attend the trial and hear the testimony establishing the facts" upon which he or she bases an opinion). Moreover, in forming his opinion, Dr. Naughton may rely on hearsay or otherwise inadmissible evidence if other experts in that field would reasonably rely on that kind of evidence. *See* Fed. R. Evid. 703 ("If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be

4

admitted."). If the witness does rely on such inadmissible evidence, however, the inadmissible evidence may be disclosed "to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." *Id.* Dr. Naughton's observations and opinions are partly based on hearsay as part of his forty-year career studying Chinese industrial and technology policy. [*See* Doc. 249-1 at 2]. The hearsay itself is inadmissible; however, under the Federal Rules of Evidence, Dr. Naughton's opinions based on his reasonable reliance on hearsay, interviews with individuals involved in situations involving unauthorized attempts of Chinese foreign technology acquisition, are admissible.

The defendant finally challenges the reliability of the testimony under Federal Rule of Evidence 702. [Doc. 252]. Specifically, the defendant takes issue with the second reliability *Daubert* factor[1], whether or not the expert's proposed testimony "has been subject to peer review and publication," *Daubert*, 509 U.S. at 593-94, by arguing Dr. Naughton has not published any works regarding the use of Chinese talent programs to steal technology, [Doc. 252 at 4]. The Court has previously ruled the traditional *Daubert* reliability factors are of "limited utility" in the context of this case where the proposed conclusions and reasoning are rooted in a social and not a hard science. *Vinel v. Union Twp.*, No. 1:16-CV-930, 2018 WL 7080037, at *6 (S.D. Ohio Apr. 13, 2018). *See also Gross v. Comm'r*, 272 F.3d 333, 339 (6th Cir. 2001) (The *Daubert* factors "are not dispositive in every case" and should be applied "only where there are reasonable measures of reliability of expert testimony."). Nevertheless, the government in its disclosure, has provided the Court and defense counsel with Dr. Naughton's resume, [Doc. 249-2], which includes an extensive list of publications of both academic textbooks, books, and journal articles. The fact that there is not one article that specifically and explicitly refers to the use of Chinese talent programs in its title is not

---

[1] To determine reliability, district courts focus on "whether the reasoning or methodology underlying the testimony is scientifically valid." *Decker v. GE Healthcare Inc.*, 770 F.3d 378, 391 (6th Cir. 2014). The Supreme Court in *Daubert* set out the following non-exclusive list of factors to assist courts in their determination of whether an expert's testimony is reliable: "(1) whether the theory or technique can be or has been tested; (2) whether it 'has been subjected to peer review and publication'; (3) whether there is a 'known or potential rate of error'; and (4) whether the theory or technique enjoys general acceptance in the relevant scientific community." *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 677 (6th Cir. 2011) (quoting *Daubert*, 509 U.S. at 593-94).

dispositive considering the list of recent relevant publications including a forthcoming textbook set to be published this year. The Court finds Dr. Naughton's testimony reliable.

Overall, the Court holds that Dr. Naughton's testimony is admissible under Rule 702. Accordingly, Dr. Naughton can opine as to the structure of the government of the PRC, the extent to which the national-level government exerts direction and control over local provinces, the PRC's strategies of foreign technology acquisition, and the role official talent programs play in those strategies, all of which encompass specialized international economic and global policy knowledge that is outside the typical American lay juror's experience.

### B. Federal Rules of Evidence 401, 402, 403

As with all evidence, the threshold issue for admissibility of expert testimony is relevance. *See* Fed. R. Evid. 401 and 402. Rule 401 of the Federal Rules of Evidence defines relevant evidence as that "having any tendency to make a fact more or less probable than it would be without the evidence" and "of consequence in determining the action." Generally, relevant evidence is admissible, unless it is not based on some other law or rule. *See* Fed. R. Evid. 402. Expert testimony is relevant under Rule 702 and *Daubert* if it will assist the trier of fact to better understand the evidence or to decide a material fact in issue. *See In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008) (citing Fed. R. Evid. 702). *See also Daubert*, 509 U.S. at 597 (holding that the testimony of an expert witness must be "relevant to the task at hand").

The defendant contends that Dr. Naughton's proposed testimony "is not relevant to the elements of the crimes that Dr. You has been charged with or her intent to cause pecuniary harm to the victim companies as alleged in the Indictment. There is no allegation that the Chinese Company that Dr. You had contact with was owned or controlled by the PRC. Instead, as set forth in Dr. You's Thousand Talents application, the company is a private enterprise." [Doc. 252 at 6-7]. The Court disagrees.

In the superseding indictment, defendant was charged with an economic espionage conspiracy in violation of 18 U.S.C. § 1831(a)(5), and economic espionage in violation of 18 U.S.C. § 1831(a)(3). [Doc. 217]. To convict under 18 U.S.C. § 1831, the government must prove that the alleged offense "benefit[ed]

6

any foreign government, foreign instrumentality, or foreign agent[.]" Dr. Naughton's testimony goes directly to this element of the charge; namely, that consistent with the PRC's governmental structure, a foreign government oversaw the Thousand Talents Program's organization and management. Moreover, Dr. Naughton's expertise on the PRC economy and understanding of the Socialist regime, could provide relevant testimony as to the different structures of enterprises in the PRC and the relationship between the government and the market.

Defendant takes issue with Dr. Naughton's opinion that foreign business trips such as the visit to Metlac with the defendant in late 2018 "could only have occurred if Weihai officials believed they were acting in the spirit of central government policies. Otherwise, a foreign trip without a sanctioned purpose would leave them highly exposed to tripping the 'fire alarm' associated with corrupt activities." [Doc. 249-1 at 14]. Dr. Naughton's testimony is relevant to the economic espionage and conspiracy to commit economic espionage charges. The proposed testimony provides framework as to how and why local CCP officials would be able to leave the country on official business. The defendant submits that the notion that a business visit to Italy would be seen as a "corrupt" activity is extremely prejudicial. The Court reads Dr. Naughton's opinion differently. The Court reads the opinion to state that if a local CCP official left China without an authorized purpose, the trip would be viewed by the centralized government as undermining PRC policy and the individual could potentially be a defector leaking sensitive information about the PRC and CCP abroad. The Court finds Dr. Naughton's testimony about the Weihai officials' trip to Italy and their roles within the PRC and CCP is relevant to the charges in Counts Ten and Eleven.

Finally, the defendant argues that Dr. Naughton's testimony that could be relevant to her conduct is substantially more unfairly prejudicial than probative. [Doc. 252 at 8].

A court may still exclude relevant expert testimony under Federal Rule of Evidence 403 if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." The phrase "unfair prejudice," when used in the context of Rule 403, " does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather, it refers

7

to evidence which tends to suggest decision on an improper basis." *United States v. Ford*, 761 F.3d 641, 648 (6th Cir. 2014) (quoting *United States v. Gibbs*, 182 F.3d 408, 430 (6th Cir. 1999)). *See also Old Chief v. United States*, 519 U.S. 172, 180 (1997) ("Unfair prejudice within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." (quoting Fed. R. Evid. 403 advisory committee's note)). Moreover,

> [a]pplying Rule 403 necessarily contemplates a balance that is weighted in favor of admissibility, with the countervailing forces being the strength of the evidence's legitimate value and the tendency of the evidence's improper purpose(s) to overwhelm it. Evaluation of legitimate probative value requires consideration of the strength of the evidence itself, whether the evidence may be the only available proof of a material point, and whether the focus of the proof is genuinely in issue, among other things.

*United States v. Duval*, 865 F. Supp. 2d 803, 809 (E.D. Mich. 2012). The test is strongly weighted toward admission. *United States v. Asher*, 910 F.3d 854, 860 (6th Cir. 2018). A district court has broad discretion in determining whether the danger of admitting evidence substantially outweighs that evidence's probative value. *Id.*

Dr. Naughton's testimony goes directly to the element that the alleged offenses "benefit[ed] any foreign government, foreign instrumentality, or foreign agent[,]" 18 U.S.C. § 1831, namely, CCP strategy for acquiring technology from foreign sources, the role that Chinese businesses play in that strategy, and the overall PRC governmental structure. As such, Dr. Naughton's testimony is highly probative. Under Rule 403, this Court must balance the evidence's probative value against it's potential for unfair prejudice. Dr. Naughton's testimony is, of course, prejudicial to Defendant. However, virtually all evidence is prejudicial or it is not material; the prejudice must be "unfair." *Gibbs*, 182 F.3d at 430. The Defendant has not pinpointed any specific instances of how Dr. Naughton's proposed testimony is unfairly prejudicial and how it would have "an undue tendency to suggest decision on an improper [emotional] basis." Fed. R. Evid. 403 (advisory committee notes). The Court cannot find that the opinions and the proposed testimony's probative value is outweighed by the danger of unfair prejudice.

### III. CONCLUSION

For the reasons stated above in the memorandum opinion, after a review of the record and a *Daubert* hearing, the defendant's motion to exclude Dr. Naughton's expert testimony is **DENIED**. [Doc. 252].

So ordered.

ENTER:

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE