1           UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF TENNESSEE
2                    GREENEVILLE

3
   UNITED STATES OF AMERICA,   .  DOCKET NO. CR-2-19-14
4                               .
           GOVERNMENT,          .
5                               .
             VS.                .  GREENEVILLE, TN
6                               .  MAY 9, 2022
   XIAORONG YOU,                .  9:00 A.M.
7                               .
           DEFENDANT.           .
8                               .
   .   .   .   .   .   .   .   .   .
9

10

11              TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE J. RONNIE GREER
12              UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1   APPEARANCES:

 2   FOR THE GOVERNMENT:      U.S. DEPARTMENT OF JUSTICE
                              OFFICE OF U.S. ATTORNEY
 3                           MAC D. HEAVENER, III, AUSA
                             220 WEST DEPOT STREET, SUITE 423
 4                           GREENEVILLE, TN 37743

 5                           U.S. DEPARTMENT OF JUSTICE
                             COMPUTER CRIME AND INTELLECTUAL
 6                           PROPERTY SECTION
                             MATTHEW R. WALCZEWSKI, AUSA
 7                           950 PENNSYLVANIA AVENUE N.W.
                             ROOM 3509
 8                           WASHINGTON, D.C. 20530.

 9                           NICHOLAS O. HUNTER
                             U.S. DEPARTMENT OF JUSTICE
10                           (NATIONAL SECUIRTY)
                             NATIONAL SECUIRTY DIVISION,
11                           COUNTERTERRORISM SECTION
                             950 PENNSYLVANIA AVENUE N.W.
12                           WASHINGTON, DC 20530

13   FOR THE DEFENDANT:      COLLINS SHIPLEY, PLLC
                             COREY B. SHIPLEY, ESQ.
14                           MICHAEL CURTIS COLLINS, ESQ.
                             KRISTEN CONNER BLAIR, ESQ.
15                           128 SOUTH MAIN STREET, SUITE 102
                             GREENEVILLE, TN 37743
16

17

18

19

20

21

22   COURT REPORTER:         KAREN J. BRADLEY
                             RPR-RMR
23                           U.S. COURTHOUSE
                             220 WEST DEPOT STREET
24                           GREENEVILLE, TN 37743

25   PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY, TRANSCRIPT
     PRODUCED BY COMPUTER.
```

1              (CALL TO ORDER OF THE COURT AT 9:00 A.M.)

2                    THE COURT:  GOOD MORNING.

3                    ALL RIGHT.  MS. HOPSON, WOULD YOU CALL THE

4      CASE, PLEASE.

5                    THE CLERK:  USA VERSUS XIAORONG YOU, CASE

6      NUMBER 2:19-CR-14.

7                    THE COURT:  ALL RIGHT.  SINCE WE WERE HERE THE

8      LAST TIME THERE HAS BEEN A SECOND ADDENDUM TO THE

9      PRESENTENCE REPORT.  FOR THE RECORD, MR. SHIPLEY, LET ME

10     CONFIRM THAT YOU HAVE RECEIVED AND READ A COPY OF THAT

11     SECOND ADDENDUM?

12                   MR. SHIPLEY:  THAT'S CORRECT, YOUR HONOR.

13                   THE COURT:  AND HAVE YOU REVIEWED IT AND

14     DISCUSSED IT WITH THE DEFENDANT?

15                   MR. SHIPLEY:  YES, YOUR HONOR, I HAVE.

16                   THE COURT:  ALL RIGHT.  THANK YOU.

17                   AND, DR. YOU, HAVE YOU ALSO RECEIVED AND READ A

18     COPY OF THIS SECOND ADDENDUM TO THE PRESENTENCE REPORT?

19                   THE DEFENDANT:  YES, YOUR HONOR.

20                   THE COURT:  AND HAVE YOU REVIEWED IT AND

21     DISCUSSED IT FULLY WITH YOUR ATTORNEY?

22                   THE DEFENDANT:  YES, YOUR HONOR.

23                   THE COURT:  AND HAVE YOU HAD SUFFICIENT TIME TO

24     DO THAT?

25                   THE DEFENDANT:  DO WHAT?

```
 1              THE COURT:  HAVE YOU HAD SUFFICIENT TIME TO DO
 2   THAT?
 3              THE DEFENDANT:  YES.
 4              THE COURT:  ALL RIGHT.  THANK YOU.
 5              ALL RIGHT.  COUNSEL, WHEN WE WERE HERE THE LAST
 6   TIME, WE HEARD ORAL ARGUMENT ON THE PRIMARY OBJECTION TO
 7   THE PRESENTENCE REPORT.  THE COURT HAS NOW FILED AN ORDER
 8   RESOLVING THE LOSS ISSUE, I GUESS OVERRULING THE
 9   GOVERNMENT'S OBJECTION TO THE LOSS CALCULATION IN THE
10   PRESENTENCE REPORT, ESTABLISHING A, AN ENHANCEMENT OF 24
11   LEVELS RATHER THAN 26, RESULTING IN A TOTAL OFFENSE LEVEL
12   BASED ON THAT CHANGE OF 39; AND THERE'S STILL, I THINK,
13   MR. SHIPLEY, AT LEAST ONE GUIDELINE OBJECTION OUT-
14   STANDING, AM I CORRECT ABOUT THAT, THE OBSTRUCTION
15   ENHANCEMENT, OR DID WE DEAL WITH THAT ONE?
16              MR. SHIPLEY:  YES, SIR, I THINK THAT'S
17   CORRECT.
18              THE COURT:  ALL RIGHT.  THEN LET ME HEAR YOU ON
19   THAT OBJECTION.
20              MR. SHIPLEY:  COULD YOU GIVE ME ONE MOMENT,
21   YOUR HONOR?
22              THE COURT:  I'M SORRY?
23              MR. SHIPLEY:  COULD YOU GIVE JUST ONE MOMENT,
24   PLEASE?
25              THE COURT:  YES.
```

1          MR. WALCZEWSKI:  JUDGE, IF I MIGHT, ACCORDING

2     TO MY NOTES, AT LEAST, WHICH MIGHT BE INCORRECT, I THOUGHT

3     WE RESOLVED THE 3C1.1 OBSTRUCTION.

4          THE COURT:  WELL, THE MINUTES DON'T REFLECT IT.

5     I THOUGHT WE DID TOO, ACTUALLY, BUT THE MINUTES DON'T

6     REFLECT THAT WE DID.

7          MR. SHIPLEY:  OKAY.  I RECALL, I AGREE WITH

8     MR. WALCZEWSKI, YOUR HONOR, I WAS LOOKING THROUGH MY NOTES

9     HERE TO MAKE SURE THAT'S THE CASE.

10         THE COURT:  ALL RIGHT.  THEN THE MINUTES WILL

11    REFLECT THAT WE DID.  MY RECOLLECTION WAS THAT I OVERRULED

12    THE OBJECTION AS TO OBSTRUCTION; AND SO IF YOU'RE BOTH IN

13    AGREEMENT THAT'S WHAT WE DID, THEN THE MINUTES OF THIS

14    PROCEEDING CAN REFLECT THAT THAT OBJECTION IS OVERRULED;

15    AND AS I UNDERSTAND IT, MR. SHIPLEY, THAT IS THE ONLY

16    OTHER OBJECTION THAT WOULD IMPACT THE GUIDELINE RANGE;

17    CORRECT?

18         MR. SHIPLEY:  YES, YOUR HONOR.

19         THE COURT:  AND, MR. WALCZEWSKI, THERE ARE NO

20    OTHER GOVERNMENT OBJECTIONS THAT WOULD IMPACT THE

21    GUIDELINE RANGE; CORRECT?

22         MR. WALCZEWSKI:  CORRECT.

23         THE COURT:  ALL RIGHT.  THEN GIVEN THAT, BASED

24    ON THE COURT'S RULING ON THE LOSS AMOUNT, THE COURT WILL

25    ADOPT THE PRESENTENCE REPORT AS AMENDED BY THE COURT'S

1    ORDER AS THE COURT'S FINDINGS IN THIS CASE, I WILL APPLY A

2    TOTAL OFFENSE LEVEL OF 39, A CRIMINAL HISTORY CATEGORY OF

3    I, AND THAT RESULTS, I BELIEVE, IN AN ADVISORY GUIDELINE

4    RANGE OF 262 TO 327 MONTHS OF IMPRISONMENT.

5            MR. WALCZEWSKI:  YOUR HONOR, I THOUGHT I HAD A

6    TOTAL OFFENSE LEVEL OF 41 PURSUANT TO THE PRESENTENCE

7    REPORT, 7 -- BASE OFFENSE LEVEL OF 7, PLUS 24 FOR 31, PLUS

8    2 FOR 33, THAT'S THE RELOCATION OF THEIR JURISDICTION,

9    PLUS 4 FOR 37, PLUS 2 FOR 39, SPECIAL SKILL, PLUS 2 FOR

10   OBSTRUCTION FOR 41 TOTAL, WHICH I BELIEVE WAS REFLECTED IN

11   THE DRAFT PRESENTENCE REPORT DOCUMENT 366.

12           THE COURT:  LET ME GO BACK AND TAKE A LOOK AT

13   IT JUST A MINUTE.

14           I'M SORRY, YOU ARE CORRECT, MR. WALCZEWSKI, THE

15   ORIGINAL, THE GUIDELINE RANGE WAS ENHANCED BY 24 -- EXCUSE

16   ME, TOTAL OFFENSE LEVEL WAS INCREASED BY 24 LEVELS BASED

17   ON LOSS; AND WHILE THE COURT USED A DIFFERENT METHOD TO

18   CALCULATE LOSS, THE RESULTING ENHANCEMENT IS STILL 24

19   LEVELS, I MISSPOKE, SO IT IS A TOTAL OFFENSE LEVEL OF 41,

20   A CRIMINAL HISTORY CATEGORY OF I AND AN ADVISORY GUIDELINE

21   RANGE OF 324 TO 405 MONTHS.  ALL RIGHT.

22           ALL RIGHT THEN, MR. WALCZEWSKI, I'LL HEAR YOU

23   ON THE GOVERNMENT'S POSITION.

24           MR. WALCZEWSKI:  THANK YOU.

25           THE GOVERNMENT'S POSITION IS LAID OUT IN DETAIL

1    IN ITS TWO SENTENCING MEMORANDA, THE FIRST ONE FILED IN

2    ADVANCE OF THE FEBRUARY SENTENCING HEARING AND THEN WE

3    RECENTLY FILED A SUPPLEMENTAL SENTENCING MEMORANDUM ABOUT

4    TWO WEEKS AGO ESSENTIALLY DISTINGUISHING SOME OF THE CASES

5    THAT DEFENSE COUNSEL CITED, SO I WON'T REHASH ALL OF THOSE

6    ARGUMENTS IN DETAIL; BUT GIVEN THAT THE GUIDELINES ARE NOW

7    DETERMINED, I THINK WE'RE JUST CONSIDERING 3553(A) FACTORS

8    AT THIS POINT.

9            TO SUMMARIZE THE ARGUMENTS THAT WE MADE IN OUR

10   MEMORANDA, AS FOR NATURE, THE CIRCUMSTANCES OF THE OFFENSE

11   AND THE DEFENDANT'S CIRCUMSTANCES, HERE WE HAVE A VERY

12   WELL-EDUCATED DEFENDANT.  SHE BETRAYED HER EMPLOYERS, NOT

13   ONLY TO BENEFIT HERSELF, BUT ALSO TO BENEFIT ENTITIES IN

14   THE PEOPLE'S REPUBLIC OF CHINA.  A NUMBER, I BELIEVE FOUR,

15   OF THE VICTIM COMPANIES DID FILE VICTIM IMPACT STATEMENTS

16   OUTLINING HOW THE DEFENDANT'S BETRAYAL HAD HURT THE

17   COMPANIES.  THOSE ARE DOCUMENTS 394 THROUGH 397.

18           THE DEFENDANT HAS NO CRIMINAL HISTORY.  SHE'S

19   CRIMINAL HISTORY CATEGORY I.  BASED ON HER EDUCATION AND

20   HER LIFE EXPERIENCE, SHE SHOULD HAVE KNOWN BETTER AND SHE

21   DID KNOW BETTER, AND WE BELIEVE THAT THOSE FACTORS SUGGEST

22   THAT A SERIOUS SENTENCE IN THIS CASE IS APPROPRIATE.

23           AGAIN, THE GOVERNMENT'S OVERALL RECOMMENDATION

24   IS 240 MONTHS OF IMPRISONMENT; THAT'S A MAXIMUM SENTENCE

25   ON EACH COUNT OF CONVICTION ALL RUNNING CONCURRENTLY.  SO

1    THE GOVERNMENT IS RECOMMENDING TECHNICALLY A DOWNWARD

2    VARIANCE, BUT WE BELIEVE THAT EVEN THOUGH IT'S BELOW THE

3    ADVISORY GUIDELINE RANGE, THE 240 MONTH TOTAL SENTENCE IS

4    SUFFICIENT BUT NOT GREATER THAN NECESSARY TO MEET THE,

5    MEET THE OBJECTIVES OF 3553(A).

6         NEXT IMPORTANT FACTOR REFLECTING THE SERIOUS --

7    A SENTENCE REFLECTING THE SERIOUSNESS OF THE OFFENSE, ONE

8    THAT PROMOTES THE LAW AND JUST PUNISHMENT.  THE HIGH

9    INTENDED LOSS HERE, AS YOU FOUND IN YOUR RECENT OPINION,

10   THAT SHOWS THE SERIOUSNESS OF THE OFFENSE HERE; AND THE

11   GUIDELINES REFLECT THAT THE HIGHER THE LEVEL OF INTENDED

12   LOSS, THE MORE SERIOUS THE CRIME.

13        ALSO, RESPECT FOR THE LAW IS ESSENTIAL HERE FOR

14   TWO REASONS.  THE GOVERNMENT SUBMITS THAT THE MORE

15   IMPORTANT OF THE TWO REASONS IS FOR DETERRENCE, FRANKLY;

16   AND I REALIZE DETERRENCE IS A SEPARATE FACTOR, BUT

17   DETERRENCE IS IMPORTANT HERE.  I'LL GET BACK TO DETERRENCE

18   IN A SECOND; BUT ALSO TO PROMOTE THE DEFENDANT'S RESPECT

19   FOR THE LAW HERE.

20        AT LEAST FOR THE GOVERNMENT, THROUGHOUT THE

21   TRIAL, AND EVEN IN THE POST-TRIAL PROCEEDINGS, THE

22   DEFENDANT HAS EXPRESSED NO REMORSE FOR HER ACTIONS AND HAS

23   TAKEN VERY LITTLE RESPONSIBILITY BEYOND THE JURY'S

24   VERDICT, SO WE BELIEVE THAT A SERIOUS SENTENCE HERE IS

25   REQUIRED TO PROMOTE HER RESPECT FOR THE LAW.

1          NEXT IMPORTANT SEPARATE FACTOR, AGAIN, ADEQUATE

2     DETERRENCE.  AS WE MENTIONED IN OUR ORIGINAL SENTENCING

3     MEMORANDUM IN THIS CASE, THE DEFENDANT WAS AWARE OF PRIOR

4     PROSECUTIONS FOR TRADE SECRET THEFT.  SHE HAD BEEN TRAINED

5     ON THEM IN HER PREVIOUS JOBS, AND THE PARTICULAR PROSE-

6     CUTIONS THAT SHE WAS TRAINED ON HAD RELATIVELY LENIENT

7     SENTENCES, AND IT'S CLEAR THAT THAT EDUCATION HAD NO

8     DETERRENT EFFECT FOR THE DEFENDANT BECAUSE SHE WENT ON TO,

9     TO COMMIT HER CRIME.  SO A MORE SERIOUS SENTENCE IS

10    NECESSARY TO DETER OTHERS WHO ARE ENTRUSTED WITH VALUABLE

11    TRADE SECRETS.

12         AS FOR PROTECTING AGAINST FURTHER CRIMES OF THE

13    DEFENDANT, THE GOVERNMENT BELIEVES THAT THE DEFENDANT IN

14    THIS CASE IS UNLIKELY TO REOFFEND; HOWEVER, IT IS NOT

15    IMPOSSIBLE BECAUSE, AS THE TRIAL EVIDENCE SHOWED, THE

16    GOVERNMENT IS NOT CONFIDENT THAT IT HAS RECOVERED ALL OF

17    THE STOLEN TRADE SECRETS IN THIS CASE.  FORENSIC INVESTI-

18    GATOR RINALDI TESTIFIED THAT IT WAS LIKELY THAT THERE WAS

19    ANOTHER DEVICE OUT THERE AT LEAST THAT CONTAINED THESE

20    TRADE SECRETS; AND THERE'S ALWAYS THE POSSIBILITY THAT

21    THERE ARE OTHER CACHES OF TRADE SECRETS THE GOVERNMENT HAS

22    NOT IDENTIFIED, AND THOSE TRADE SECRETS REMAIN VALUABLE,

23    SO THERE IS SOME NEED TO PROTECT AGAINST FUTURE CRIMES OF

24    THE DEFENDANT.

25         THE COURT:  HOW CONFIDENT IS THE GOVERNMENT

 1  THAT THERE IS ANOTHER COPY OF THESE TRADE SECRETS ON SOME

 2  OTHER DEVICE THAT'S NOT BEEN RECOVERED?

 3          MR. WALCZEWSKI:  SO THE FORENSIC DATA AT TRIAL

 4  SHOWED THAT THERE WAS ANOTHER DEVICE THAT THESE TRADE

 5  SECRETS WERE TRANSFERRED FROM ONTO THE HARD DRIVE THE

 6  GOVERNMENT DID RECOVER.  WE DON'T HAVE ANY IDEA OF THE

 7  SITUATION WITH THAT OTHER DEVICE, WE DON'T KNOW IF IT'S

 8  BEEN WIPED OR THROWN AWAY OR HIDDEN SOMEWHERE, SO IT'S

 9  HARD FOR ME TO QUANTIFY, JUDGE --

10          THE COURT:  BUT YOU ARE CONFIDENT THAT THERE

11  WAS ANOTHER DEVICE ONTO WHICH THESE SECRETS WERE

12  TRANSFERRED?

13          MR. WALCZEWSKI:  THAT'S WHAT THE FORENSIC

14  EVIDENCE AT TRIAL INDICATED, YES.

15          THE FINAL POINT, AND I'LL SPEND A LITTLE BIT

16  MORE TIME ON THIS ONE BECAUSE IT WAS -- DR. YOU SPENT A

17  FAIR AMOUNT OF TIME IN HER SENTENCING MEMORANDA MAKING THE

18  SENTENCING DISPARITY POINT, THE NEED TO AVOID UNWARRANTED

19  SENTENCING DISPARITIES AMONG SIMILARLY SITUATED

20  DEFENDANTS.

21          AGAIN, THE GOVERNMENT FILED ITS SUPPLEMENTAL

22  SENTENCING MEMORANDUM SEVERAL WEEKS AGO, AND SO I THINK

23  THAT WAS DOCUMENT NUMBER 419.  THE FIRST POINT THAT I'LL

24  MAKE IS UNDER SIXTH CIRCUIT LAW WE CITED THE HYMES CASE,

25  H Y M E S, FOR THE COURT TO -- IF THE COURT FOLLOWS,

1   CORRECTLY CALCULATES THE GUIDELINES, THEN THAT IS SUFFI-
2   CIENT TO AVOID DISPARITIES; AND THE COURT HAS ALREADY DONE
3   THAT, IT'S CORRECTLY CALCULATED AND IS CONSIDERING THE
4   GUIDELINE RANGE, SO THAT IN AND OF ITSELF UNDER SIXTH
5   CIRCUIT LAW IS SUFFICIENT TO AVOID UNWARRANTED SENTENCING
6   DISPARITIES; BUT THE POINT THAT THE GOVERNMENT MADE IN ITS
7   MOST RECENT FILING WAS THAT THE CASES THAT THE DEFENDANT
8   CITED, THOSE WERE ALL VIOLATIONS OF 18, U.S.C., 1832,
9   WHICH IS PURELY COMMERCIAL THEFT OF TRADE SECRETS; AND
10  MOST OF THEM, I BELIEVE 9 OUT OF 15, WERE PLEAS.  SO YOU
11  HAVE A LESS SERIOUS OFFENSE AS OPPOSED TO 1831, AND YOU
12  HAVE A MAJORITY OF CASES WHERE THE DEFENDANT ACCEPTED
13  RESPONSIBILITY PRETRIAL, SO IT'S NOT SURPRISING THAT
14  YOU'RE GOING TO HAVE RELATIVELY LOWER SENTENCES FOR THE
15  CASES THAT THE DEFENDANT CITED.  THEY'RE SIMPLY NOT
16  SIMILAR ENOUGH TO THIS CASE IN ORDER TO BE RELEVANT TO THE
17  SENTENCING DISPARITY ARGUMENT.

18          AGAIN, ALL THE COURT NEEDS TO DO IS CALCULATE
19  AND CONSIDER THE GUIDELINES; BUT IF THE COURT DID WANT TO
20  LOOK AT ANALOGOUS CASES, WE SUGGEST THAT THE COURT LOOK AT
21  1831 ECONOMIC ESPIONAGE CASES WHICH WENT TO TRIAL BECAUSE
22  THAT'S RELEVANT TO THE DEFENDANT'S ACCEPTANCE OF RESPONSI-
23  BILITY; AND THE, THE GOVERNMENT LISTED THREE SUCH CASES IN
24  ITS SENTENCING MEMORANDUM.  TWO OF THEM HAD SENTENCES, I
25  BELIEVE THEY WERE BOTH IN EXCESS OF 10 YEARS, ONE IS 15

1    YEARS; SO THAT'S JUST -- THAT JUST SHOWS AGAIN THAT A

2    SERIOUS SENTENCE ALONG THE LINES OF WHAT THE GOVERNMENT IS

3    SUGGESTING HERE WOULD NOT RESULT IN AN UNWARRANTED

4    DISPARITY.

5            SO THAT'S ALL I HAVE ON THE 3553(A) FACTORS.  I

6    DON'T KNOW IF YOU WANT ME TO ADDRESS SUPERVISED RELEASE OR

7    FINE OR RESTITUTION OR FORFEITURE AT THIS POINT.

8            THE COURT:  GO AHEAD AND DO THAT AS WELL.

9            MR. WALCZEWSKI:  OKAY.  AS FOR SUPERVISED

10   RELEASE, THE GOVERNMENT SUBMITS THAT SUPERVISED RELEASE IS

11   APPROPRIATE IN THIS CASE, BUT WE DEFER TO THE COURT AS TO

12   THE LENGTH OF ANY PERIOD OF SUPERVISED RELEASE.

13           SIMILARLY, WITH REGARD TO A FINE, THE PRE-

14   SENTENCE REPORT INDICATED THAT THE DEFENDANT DOES HAVE THE

15   ABILITY TO PAY A FINE.  THE MAXIMUM FINE DUE TO THE 1831

16   CONVICTION IS $5 MILLION.  AGAIN, THE GOVERNMENT SUBMITS

17   THAT A FINE IS APPROPRIATE, BUT DEFERS TO THE COURT AS TO

18   THE AMOUNT, EXACT AMOUNT OF ANY SUCH FINE.

19           AS FOR RESTITUTION, THE COURT MENTIONED THE

20   SECOND ADDENDUM TO THE PRESENTENCE REPORT WHICH CONTAIN

21   ONE OF THE VICTIM COMPANIES' REQUEST FOR RESTITUTION.

22   DEFENDANT -- THAT WAS DOCUMENT 416.  IN DOCUMENT 418 THE

23   DEFENDANT INDICATED THAT SHE DOES NOT OPPOSE THAT REQUEST

24   FOR RESTITUTION, SO THE GOVERNMENT SIMPLY REQUESTS THAT

25   THE COURT INCLUDE THE REQUESTED RESTITUTION AMOUNT IN, IN

1   THE FINAL SENTENCE IN THIS CASE.

2               FINALLY, AS TO FORFEITURE, THERE WAS A PRELIMI-

3   NARY ORDER OF FORFEITURE ENTERED ON NOVEMBER 31ST {SIC} OF

4   2021 AS DOCUMENT 389, AND THE GOVERNMENT NOTICED THAT ON

5   DECEMBER 6TH; THAT WAS DOCUMENT 390.  PURSUANT TO RULE

6   32.2(B)(4)(B) WE WOULD ASK THAT THE COURT ORALLY ANNOUNCE

7   THAT FORFEITURE AT THIS HEARING, AND ALSO TO INCLUDE IT IN

8   THE JUDGMENT IN THIS CASE.  FOLLOWING THE HEARING TODAY,

9   THE GOVERNMENT WILL SUBMIT A FINAL ORDER OF FORFEITURE FOR

10  THE COURT TO ENTER.

11              SO UNLESS THE COURT HAS ANY QUESTIONS, THAT'S

12  ALL I HAVE.

13              THE COURT:  I DON'T BELIEVE SO, MR. WALCZEWSKI.

14  THANK YOU VERY MUCH.

15              MR. WALCZEWSKI:  THANK YOU.

16              THE COURT:  ALL RIGHT, MR. SHIPLEY.

17              MR. SHIPLEY:  THANK YOU, SIR.

18              YOUR HONOR, I HAVE WRESTLED WITH WHERE TO BEGIN

19  THIS MORNING, AND THE FIRST PLACE THAT I'VE DECIDED TO

20  BEGIN WITH IS JUST REALLY RESPONDING TO MR. WALCZEWSKI AND

21  SOME OF THE THINGS THAT HE JUST PRESENTED TO THE COURT;

22  AND I THINK THE MOST ALARMING THING IS -- AND I DO AGREE

23  WITH MR. WALCZEWSKI THAT, YOU KNOW, THEY HAVE CITED

24  CERTAIN CASES IN THEIR SUPPLEMENTAL MEMORANDUM, BUT I DO

25  THINK THAT THE -- I DON'T KNOW IF THE ANALYSIS IS A LITTLE

1    SHORT-SIGHTED OR MISLEADING BECAUSE, YES, SOME OF THE

2    CASES THAT WE CITED IN OUR MEMORANDUM DID NOT INCLUDE THE

3    UNDERLYING ECONOMIC ESPIONAGE CHARGE; BUT AS THE COURT

4    KNOWS AND THE COURT HAS ACTUALLY SEEN IN THIS CASE IN

5    PARTICULAR, YOU KNOW, CHARGING ECONOMIC ESPIONAGE IS A

6    PROSECUTORIAL DECISION.  THIS CASE WAS INDICTED ON THEFT

7    OF TRADE SECRETS, AND NOT ONLY JUST A FEW MONTHS BEFORE

8    TRIAL IS WHEN THE SUPERSEDING INDICTMENT CAME OUT TO ADD

9    ECONOMIC ESPIONAGE; AND I DRAW THAT DISTINCTION, YOUR

10    HONOR, BECAUSE OF THIS, IN ALL THE CASES THAT WE CITED --

11    WELL, I DON'T WANT TO SAY ALL, BUT IN MOST OF THE CASES

12    THAT WE CITED, IT IS OUR POSITION THAT THOSE ARE ARGUABLY

13    FAR MORE EGREGIOUS THAN WHAT'S HAPPENED IN THIS CASE.

14            WITHOUT GOING INTO EACH ONE OF THESE CASES, AND

15    I'M HAPPY TO GO INTO THE CASES IF THE COURT HAS ANY

16    QUESTIONS, BUT IN THOSE CASES, YOUR HONOR, ARGUABLY, BASED

17    ON THE FACTS AND WHAT WAS PRESENTED OR WHAT WAS WITH,

18    FOUND WITHIN THE OPINION, WE HAVE SITUATIONS THAT WE ARE

19    HAVING INDIVIDUALS SET UP OTHER COMPANIES, ACTUALLY TRANS-

20    FER PROPRIETARY, CONFIDENTIAL MATERIAL TO THESE OTHER

21    COMPANIES, AND THEN GET PAID FOR IT.  SO I THINK THERE'S A

22    GOOD DISTINCTION, YOUR HONOR, BECAUSE THOSE CASES ACTUALLY

23    INVOLVED ADDITIONAL STEPS OTHER THAN WHAT DR. YOU IS

24    ALLEGED TO HAVE DONE OR WAS FOUND, WHAT THE JURY FOUND SHE

25    DID IN THIS CASE.

1          WE HAVE INDIVIDUALS THAT STARTED COMPANIES,
2    THAT HAD CLEARLY BENEFITED A FOREIGN ENTITY WITH ACTUAL
3    DOLLARS AND WITH ACTUAL INFORMATION.  SO I THINK BY THE
4    GOVERNMENT'S CITING THAT WE DIDN'T CITE ANY CASES WITH
5    REGARD TO ECONOMIC ESPIONAGE, I THINK THAT'S A LITTLE
6    MISLEADING BECAUSE I THINK WHEN YOU LOOK AT THE FACTS OF
7    THE CASES WE CITED, IF THEY WANTED TO HAVE CHARGED
8    ECONOMIC ESPIONAGE, THEY COULD HAVE BECAUSE IT DID IN FACT
9    IN A LOT OF THESE CASES BENEFIT A FOREIGN INSTRUMENTALITY;
10   AND ONE IN PARTICULAR CASE THAT WE CITED, YOUR HONOR, DID
11   IN FACT CHARGE ECONOMIC ESPIONAGE IN THAT CASE; AND AFTER
12   A JURY TRIAL, THEY FOUND THAT THE INDIVIDUAL WAS ACQUITTED
13   OF THAT CHARGE, BUT THE JUDGE IN THAT CASE, YOUR HONOR,
14   FOUND THAT IT WAS DONE TO BENEFIT A FOREIGN
15   INSTRUMENTALITY.
16          SO I JUST WANTED TO BRING THAT UP BECAUSE I
17   THINK IT'S A GOOD DISTINGUISHING FACTOR WHEN WE SAY THAT
18   THERE -- YOU KNOW, THAT SOMEHOW ECONOMIC ESPIONAGE, THE
19   CHARGE ALONE MAKES THIS CASE FAR MORE EGREGIOUS, I WOULD
20   HAVE TO DISAGREE WITH THAT BECAUSE A LOT OF THESE CASES
21   THAT WE CITED, IT IS OUR OPINION AND WE HAVE PROVIDED TO
22   THE COURT THAT THE FACTS OF THOSE CASES WERE FAR MORE
23   EGREGIOUS, FAR MORE OF THE MATERIAL THAT WAS ACTUALLY
24   TRANSFERRED.  AND I'LL GET BACK TO THE, YOU KNOW -- AND I
25   DON'T WANT TO GO INTO THE INTENDED AND ACTUAL LOSS TOO

MUCH, I DO WANT TO ADDRESS THAT IN A FEW MINUTES, BUT --

THE COURT: ARE YOU SUGGESTING, MR. SHIPLEY,
THAT THIS CASE IS SOMEHOW LESS SERIOUS BECAUSE SHE WAS
ARRESTED BEFORE SHE COULD ACTUALLY, AS FAR AS WE KNOW,
TRANSFER THESE SECRETS TO A CHINESE COMPANY?

MR. SHIPLEY: YOUR HONOR, IF I COULD DISSECT
THAT QUESTION A LITTLE BIT BECAUSE MY ANSWER TO THAT IS,
YES, BECAUSE I THINK WHAT THAT QUESTION IMPLIES FROM THE
COURT IS THAT IN FACT THIS WAS GOING TO HAPPEN, AND I
THINK THAT'S ONE OF THE MAIN UNDERLYING ISSUES THAT WE
HAVE WITH THE OVERALL GUIDELINE RANGE THAT I'M -- WE'LL
TALK ABOUT IN A FEW MINUTES; BUT WITH REGARD TO ALL OF
THIS, WE HAVE TO HAVE -- AND WE'RE ASSUMING, AND EVEN IN
THE COURT'S, IN THE COURT'S MEMORANDUM OPINION, THE COURT
STATES THAT THERE ARE A LOT OF ASSUMPTIONS IN THIS, THERE
ARE A LOT OF ASSUMPTIONS IN LOOKING AT THE INTENDED LOSS,
I BELIEVE THAT'S ON THE SECOND TO LAST PAGE, BUT THERE ARE
A LOT OF ASSUMPTIONS WITH REGARD TO THIS. SO I THINK THE
ANSWER TO THE COURT'S QUESTION IS IS THAT IF THE COURT
ASSUMES THAT THE MATERIAL WAS GOING TO BE TRANSFERRED --
WHAT WE HAVE HERE, I MEAN, THAT IS CLEARLY WHAT IT IS,
IT'S AN ASSUMPTION.

NOW, WHAT WE HAVE BEFORE THE COURT TODAY AND
WHAT WE'VE HAD IN THIS CASE ARE THE FACTS AND WHAT WAS
PRESENTED AT TRIAL, AND THE FACTS THAT WE HAVE ARE SIMPLY

THAT IT WAS NOT TRANSFERRED.  SO MY ANSWER TO THE COURT'S

QUESTION IS DO I THINK IT'S LESS SERIOUS?  ABSOLUTELY, I

DO, BECAUSE IN THESE OTHER CASES, YOUR HONOR, EXCUSE ME,

IN THESE OTHER CASES, YOUR HONOR, WE HAVE ACTUAL

TRANSFERENCE, WE HAVE ACTUAL DAMAGE; AND I THINK THAT'S A

VERY GOOD DISTINGUISHING FACTOR, YES.

I MEAN, IF WE RUN THAT LOGICAL PROGRESSION, OR

IF YOU WANT TO CALL IT LOGICAL PROGRESSION, IF WE RUN THAT

PROGRESSION IN SAYING THAT, WELL, WE ASSUME THAT SHE WAS

GOING TO DO THIS, I DON'T THINK THAT'S THE COURT'S JOB AND

I DON'T THINK THAT'S THE WAY THE LAW SHOULD BE.  I THINK

WE SHOULD PUNISH PEOPLE FOR WHAT THEY'VE DONE, NOT WHAT WE

THINK IS GOING TO HAPPEN.

THE COURT:  BUT THE PROBLEM IS HERE,

MR. SHIPLEY, THAT SHE WAS CONVICTED OF A CONSPIRACY TO DO

EXACTLY THAT.

MR. SHIPLEY:  IT BRINGS UP ANOTHER GOOD POINT,

YOUR HONOR.  I UNDERSTAND THE WAY CONSPIRACIES, YOU KNOW,

WORK, YOU KNOW, ONE PERSON IS AS CULPABLE AS ANY OTHER

PERSON IN THESE CASES; BUT WHEN YOU LOOK AT IT, YOUR

HONOR, DR. YOU SITS HERE TODAY TAKING THE BRUNT OF THE

RESPONSIBILITY FOR CERTAIN ACTIONS THAT SHE COULDN'T

CONTROL.  I THINK THERE HAS BEEN, THERE HAS BEEN ARGUMENT

IN THE FIRST SENTENCING THAT WE HAVE TWO INDIVIDUALS THAT

WILL NEVER BE BROUGHT BEFORE AN AMERICAN COURT, NEVER; AND

1    WE HAVE CERTAIN THINGS THAT THOSE INDIVIDUALS DID THAT

2    DETRIMENTALLY AFFECT, AFFECTED DR. YOU.

3            WE HAVE A SITUATION THAT THIS THOUSAND TALENTS

4    PLAN APPLICATION, I DO WANT TO TOUCH ON THAT A LITTLE BIT

5    BECAUSE THE COURT HAS BROUGHT UP THE CONSPIRACY.  YOUR

6    HONOR, THAT THOUSAND TALENTS PLAN APPLICATION WAS DONE,

7    WAS COMPILED BY XIANGCHEN LIU, AND, THEREFORE, AND WHAT --

8    NOW, THE CLEAR, I GUESS, THE INSTANT REBUTTAL TO THAT

9    WOULD BE, WELL, SHE SIGNED IT; BUT WE HAVE -- THERE'S AN

10   ARGUMENT THAT SHE NEVER EVEN SIGNED THAT DOCUMENT, YOUR

11   HONOR.

12           WE HAVE AN INDIVIDUAL THAT IS TAKING THESE,

13   THIS INFORMATION THAT WE ALREADY KNOW FROM THE COURT'S

14   OPINION, MEMORANDUM OPINION, THAT DOCUMENTS THAT, THAT

15   NUMBERS THAT ARE INFLATED, THAT THE COURT HAS EVEN AGREED

16   WITH THE DEFENSE THAT IT'S PUFFERY.  WE HAVE THIS IN THERE

17   THAT WAS SUBMITTED TO A FOREIGN INSTRUMENTALITY TO GET AN

18   AWARD; SO, OBVIOUSLY, THE ISSUE I HAVE WITH THAT, YOUR

19   HONOR, ABOUT TAKING SO MANY THINGS OUT OF THE THOUSAND

20   TALENTS PLAN, THE THOUSAND TALENTS PLAN APPLICATION, ONE

21   OF THE MAIN ISSUES I HAVE WITH THAT IS, NUMBER ONE, IT WAS

22   NOT COMPLETED BY DR. YOU; BUT, NUMBER TWO, WE HAVE A

23   SITUATION WHERE WE HAVE CERTAIN INFORMATION FOUND WITHIN

24   THE THOUSAND TALENTS PLAN APPLICATION ON THE ONE HAND THAT

25   WE, AS WE STAND HERE TODAY AND AS THE COURT HAS RULED,

1   THAT SAID IT IS EXAGGERATED, IT IS PUFFERY; SO, THEREFORE,

2   IF WE ARE CHERRY PICKING BETWEEN THAT DOCUMENT ON THE

3   ISSUES THAT WE BELIEVE OR THAT ARE OFFERED TO THE COURT

4   THAT ARE TRUE, BUT YET WE KNOW THIS DOCUMENT HAS

5   INFORMATION THAT'S NOT TRUE, I THINK THAT CALLS INTO

6   QUESTION THE VALIDITY OF THE ENTIRE DOCUMENT.

7            THE COURT:  WHAT PROOF IS THERE, MR. SHIPLEY,

8   THAT SHE DID NOT COMPLETE THAT DOCUMENT OR PROVIDE THE

9   INFORMATION THAT WAS USED TO COMPLETE IT IN THIS RECORD?

10           MR. SHIPLEY:  YOUR HONOR, THAT WOULD BE SIMPLY

11  FOR SOMETHING THAT DR. YOU WOULD STATE; THAT'S HER

12  POSITION, AND I THINK THAT'S SOMETHING THAT --

13           THE COURT:  SHE DIDN'T TESTIFY.

14           MR. SHIPLEY:  I UNDERSTAND.  AND, YOUR HONOR,

15  SHE IS PREPARED AND WILLING TO GIVE A STATEMENT TODAY TO

16  THE COURT; BUT I THINK WHAT WE HAVE IS IS WE HAVE A

17  SITUATION -- AND I UNDERSTAND WHAT THE COURT'S POINT IS;

18  BUT, I MEAN, IF IT IS A REASONABLE ALTERNATIVE, WE HAVE AN

19  INDIVIDUAL THAT, AS I SAID, WILL NEVER BE BROUGHT BEFORE

20  THIS COURT; THAT EVEN IN -- WE LOOK BACK IN THE TESTIMONY,

21  EVEN IN HER INTERROGATION, EVEN THE FBI ACKNOWLEDGED THE

22  FACT THAT THERE IS A SITUATION WHERE I THINK WHAT THEY

23  SAID -- NOW, THERE WAS AN ISSUE AT TRIAL ABOUT INTERRO-

24  GATION TACTICS AND WHAT HAVE YOU; BUT, I MEAN, THEY'VE

25  ACKNOWLEDGED THEY THOUGHT SHE WAS BEING TAKEN ADVANTAGE OF

1   BY OTHER PEOPLE; AND I THINK IF YOU LOOK AT THAT, YOUR

2   HONOR, IF IT'S, IF IT'S REASONABLE TO ASSUME THAT, YOU

3   KNOW, SHE SIGNED THIS, IT'S ALSO REASONABLE TO ASSUME THAT

4   SHE DIDN'T; AND, IN FACT, WHEN WE HAVE THIS, WE HAVE THIS

5   INFORMATION FROM SOMEONE THAT IS OBVIOUSLY FAMILIAR WITH

6   THE CULTURE AND THE BUSINESS PRACTICES IN CHINA, HE KNEW

7   ALL OF THIS, YOUR HONOR; AND, IN FACT, IT'S OUR -- IT

8   WOULD BE OUR POSITION, YOUR HONOR, THAT IF THIS DOCUMENT

9   ALONE CONTAINS PUFFERY, CONTAINS EXAGGERATED INFORMATION,

10  IT'S REASONABLE TO ASSUME IT CALLS INTO QUESTION THE

11  VALIDITY OF THE ENTIRE DOCUMENT.

12          GOING FORWARD, YOUR HONOR, ADDRESSING A FEW

13  POINTS THAT MR. WALCZEWSKI SAID, OR TALKED ABOUT, YOU

14  KNOW, HE DREW THE DISTINCTION WITH REGARD TO THESE OTHER

15  CASES HAVING SO-CALLED ACCEPTANCE OF RESPONSIBILITY.  YOUR

16  HONOR, I DON'T THINK THAT MAKES MUCH OF A DIFFERENCE,

17  RESPECTFULLY.  WE HAVE A SITUATION HERE WHERE WE HAVE AN

18  INDIVIDUAL SITTING HERE THAT HAS A CRIMINAL HISTORY

19  OFFENSE CATEGORY OF I, OFFENSE, OFFENSE LEVEL OF 41.  HAD

20  SHE TAKEN A PLEA, HAD SHE TAKEN A PLEA IN THIS CASE, THAT

21  WOULD HAVE REDUCED HER OVERALL GUIDELINE RANGE TO 235 TO

22  293.  I MEAN, EVERYTHING IN THIS CASE, AS THE COURT STATED

23  THE FIRST TIME WE CAME HERE BEFORE SENTENCING, EVERYTHING

24  IN THIS CASE IS DRIVEN BY THIS INTENDED LOSS AMOUNT.

25  EVERYTHING.  ESPECIALLY WHEN YOU HAVE AN OVERALL OFFENSE

LEVEL OF 7.  SO I DON'T THINK THE DISTINCTION IN THE CASES

SAYING THAT ONE PERSON ACCEPTED RESPONSIBILITY IS THAT

MUCH OF A DIFFERENCE, YOUR HONOR, BECAUSE IT REDUCES HER

GUIDELINE RANGE STILL ABOVE THE STATUTORY MAXIMUM HERE.

        WITH REGARD TO ANY TYPE OF DETERRENCE THAT

MR. WALCZEWSKI SAID, I BELIEVE HE STATED IN HIS ARGUMENT,

YOUR HONOR, THAT, WELL, WE BELIEVE THAT THIS PARTICULAR

DEFENDANT IS UNLIKELY TO REOFFEND; BUT, THEN AGAIN, WE GET

INTO THE ARGUMENT ABOUT, WELL, THERE'S A POSSIBILITY, YOU

KNOW, SHE GETS OUT, THAT SHE COULD REOFFEND BECAUSE, YOU

KNOW, IT'S THEIR POSITION THAT THERE IS ANOTHER DEVICE.

YOU KNOW, WHAT WE KNOW IS, WHAT THEY'VE ARGUED HERE, YOUR

HONOR, WE TAKE THE POSITION HERE, YOUR HONOR, THAT THERE

IS NO OTHER DEVICE, THAT THERE NEVER WAS ANOTHER DEVICE;

AND I THINK THE ONLY THING THEY CAN --

        THE COURT:  THE PROOF AT TRIAL, MR. SHIPLEY,

WAS THAT THERE WAS ANOTHER DEVICE.

        MR. SHIPLEY:  THERE WAS A TRANSFERENCE.

        THE COURT:  TRANSFER TO ANOTHER DEVICE.

        MR. SHIPLEY:  AND THAT'S THE THING, YOUR HONOR,

THAT THERE HAS BEEN NO DEVICE EVER RECOVERED.  I MEAN, IN,

IN --

        THE COURT:  AND THAT'S THE TROUBLING THING,

IT'S NEVER BEEN RECOVERED, THEY DON'T KNOW WHERE IT IS.

        MR. SHIPLEY:  IT'S OUR POSITION, YOUR HONOR, IT

1　DOESN'T EXIST.  AND THE THING IS IS THAT, AGAIN, WE ARE

2　TRAVELING DOWN THAT LINE OF ASSUMPTIONS AND SAYING THAT,

3　WELL, IT WAS TRANS -- THERE'S A TRANSFERENCE, A DIGITAL

4　FOOTPRINT HERE.  OUR POSITION IS, YOUR HONOR, IT DOES NOT

5　EXIST.  AND WHAT DO WE HAVE TO SUPPORT THAT?  WELL, YOUR

6　HONOR, WHAT WE HAVE TO SUPPORT THAT IS IS THAT SHE WAS

7　ASKED TO LEAVE, SHE WENT STRAIGHT HOME, SHE GAVE THEM THE

8　MATERIALS, SHE HAD EVERYTHING; AND IF THERE WAS SOME OTHER

9　HARD DRIVE THERE, THEY WOULD HAVE FOUND IT, YOUR HONOR.

10　THERE IS NO HARD DRIVE.

11　　　　　WE ARE -- IF WE TAKE THAT POSITION AND WE ARE

12　SAYING THAT WE ARE GOING TO INCREASE HER LEVEL OF CULPA-

13　BILITY BECAUSE IT'S JUST THERE IS A, THERE'S PROBABLY

14　ANOTHER HARD DRIVE THAT'S NEVER BEEN FOUND, I DON'T THINK

15　THAT IS ONE OF THE THINGS THAT WE AS A SOCIETY WANT TO DO

16　AND START SENTENCING PEOPLE TO HIGH SENTENCES ON WHAT WE

17　THINK COULD BE THERE; AND I THINK THAT TIES BACK AROUND TO

18　MY ARGUMENT ABOUT THE, THE LEVEL OF OVERALL SPECULATION

19　WHEN IT COMES TO THE INTENDED LOSS.

20　　　　　NOW, I'M NOT SAYING THAT, I'M NOT OFFERING IT

21　TO THE COURT TO PROVIDE SOME ARGUMENT AS TO WHAT THE

22　COURT'S RULING IS.  I UNDERSTAND WHAT THE COURT'S RULING

23　IS; AND IF I HAD AN OBJECTION TO THAT RULING, WE SHOULD

24　HAVE, I SHOULD HAVE SAID THAT AT THE BEGINNING, BUT I

25　UNDERSTAND THAT'S THE COURT'S RULING; BUT THE MAIN PROBLEM

1   WE HAVE IN THESE CASES, YOUR HONOR, AND THE CASE LAW

2   SUPPORTS THIS POSITION, IS THAT WHEN IT COMES TO INTENDED

3   LOSS, THE GUIDELINES DO NOT ACCURATELY REPRESENT THE

4   SERIOUSNESS OF THE OFFENSE BECAUSE THE CASE LAW, THE CASE

5   LAW IS LITTERED WITH STATEMENTS DISCUSSING USING THE

6   GUIDELINES AS A PROXY FOR CULPABILITY; AND ESPECIALLY WHEN

7   YOU HAVE SUCH A HIGH LOSS AMOUNT, YOU KNOW, THE GUIDELINES

8   AT THAT POINT REALLY BECOME REALLY DIVORCED FROM THE

9   3553(A) OBJECTIVES BECAUSE WE HAVE A SITUATION HERE WHERE

10  THERE IS ZERO ACTUAL LOSS, AND WE HAVE AN OFFENSE LEVEL OF

11  7; AND THE CASES HAVE ADDRESSED THAT, YOUR HONOR, TALKING

12  ABOUT ESPECIALLY WHEN YOU HAVE A SITUATION WHERE YOU HAVE

13  A RELATIVELY LOW OFFENSE LEVEL AND IT'S EXPONENTIALLY

14  INCREASED, OVER THREEFOLD IN THIS CASE, ACTUALLY STRICTLY

15  ENHANCEMENT ALONE REGARDING THE OFFENSE -- REGARDING THE

16  FINANCIAL LOSS, IT'S AN INCREASE OVER THREEFOLD, YOUR

17  HONOR, AND THIS CASE HERE IS THE QUINTESSENTIAL CASE THAT

18  THE COURT SHOULD ENTER A VERY LARGE VARIANCE OR A VERY

19  LARGE DEPARTURE.

20          THE COURT:  SO YOU'RE SUGGESTING THAT THE

21  POLICY APPROACH TAKEN BY THE GUIDELINES, THAT IS TO

22  INCREASE THE SENTENCE OR THE RECOMMENDED SENTENCE BASED ON

23  THE EXTENT OF THE THEFT OR THE INTENDED THEFT IS SOMEHOW

24  FLAWED?

25          MR. SHIPLEY:  I DO, YOUR HONOR.

1              THE COURT:  THE UNDERLYING PRINCIPLE IS THAT

2    THE GREATER THE THEFT, THE GREATER THE SENTENCE; RIGHT?

3              MR. SHIPLEY:  I UNDERSTAND.

4              THE COURT:  YOU'RE SAYING THAT'S FLAWED?

5              MR. SHIPLEY:  I DO BECAUSE I THINK THAT DOESN'T

6    TAKE INTO ACCOUNT A CASE-BY-CASE BASIS.  I THINK THE --

7    THERE WAS COMMENTARY TO THE GUIDELINE WE CITED IN OUR

8    SENTENCING MEMORANDUM THAT TALKS ABOUT IF YOU STRICTLY

9    TAKE THAT APPROACH, SAYING THAT THAT REASONING THERE IS

10   SUFFICIENT ON ITS FACE, A SITUATION WHERE WE HAVE AN

11   ELDERLY PERSON THAT A FRAUD IS COMMITTED UPON WHERE THEY

12   LOSE $20,000, WE'LL JUST SAY THAT, $20,000, THAT'S THEIR

13   LIFE SAVINGS ON ONE HAND; AND WE HAVE A FRAUD THAT'S

14   COMMITTED ON A MULTI-MILLION DOLLAR COMPANY THAT INVOLVES

15   A $5 MILLION LOSS.

16             WELL, WHICH ONE IS MORE SERIOUS?  WELL, PER THE

17   GUIDELINES THE FRAUD COMMITTED ON THE -- IF WE LOOK

18   STRICTLY AT THE GUIDELINES, THE FRAUD ON THE CORPORATION;

19   OR LET'S JUST SAY THAT ON THE CORPORATION, LET'S SAY

20   NOTHING WAS EVER -- THERE WAS NO ACTUAL LOSS, IT WAS ALL

21   INTENDED; AND WE HAVE A SITUATION OVER HERE WHERE WE ARE

22   ARGUING WITH $20,000 AS OPPOSED TO $20 MILLION ON INTENDED

23   LOSS, WHICH ONE IS ARGUABLY MORE SERIOUS?  AND THAT'S

24   WHERE I THINK THE REASONING BEHIND THE GUIDELINES IS

25   FLAWED BECAUSE IF WE STRICTLY LOOK AT WHAT'S ON PAPER, IF

WE STRICTLY MAKE IT A MATHEMATICAL, MECHANICAL APPROACH,

THAT'S WHERE IT'S FLAWED; AND I THINK THERE'S THE REASON,

YOUR HONOR, THAT THIS COURT CAN COME IN, OR THE SENTENCING

COMMISSION, THE CASE LAW FROM MOST OF THESE CIRCUITS, YOUR

HONOR, THAT TALK ABOUT THESE CASES HERE, IT'S WELL WITHIN

THE COURT'S DISCRETION TO VARY DOWNWARD.

I APOLOGIZE, YOUR HONOR, GIVE ME ONE SECOND.

I'M TRYING -- I'M LOOKING AT THE COURT'S OPINION IN

SOMETHING THAT THE -- I KNOW THE COURT LOOKED AT, THE

HOWLEY CASE, AND BASED ITS, A LOT OF ITS REASONING OFF OF

JUDGE PHILLIPS; AND SOME OF THE LANGUAGE IN THERE, I

UNDERSTAND WHAT THE COURT RULED, AND, AGAIN, I'M NOT

ARGUING WITH THE COURT'S OVERALL CALCULATION OR THE WAY IT

CAME TO ITS CALCULATION, BUT I THINK THE HOWLEY CASE, YOUR

HONOR, IT ALSO TALKS ABOUT THAT THERE, YOU KNOW, WE HAVE

TO FIND A WAY TO CALCULATE, WE HAVE TO FIND A WAY TO

ARTICULATE A PARTICULAR LOSS AMOUNT BECAUSE, AGAIN, THAT'S

WHAT DRIVES THIS CASE; AND AS THE COURT STATED IN THE

FIRST HEARING, THAT REALLY IS THE MAIN THING THAT DRIVES

THIS GUIDELINE RANGE.  AND, YES, WE HAVE CERTAIN ENHANCE-

MENTS; BUT WHAT WE HAVE HERE, YOUR HONOR -- AND THE COURT,

YOU KNOW, AS THE HOWLEY CASE SAYS AND AS THE COURT HAS

SAID IN ITS OPINION, I MEAN, THE COURT HAS TO -- DOESN'T

HAVE TO BE EXACT, IT CAN MAKE A REASONABLE ESTIMATE.

SO WHEN YOU LOOK AT THAT, YOUR HONOR,

1   ASSUMING -- AND, OBVIOUSLY, JUST FOR THE SAKE OF ARGUMENT,

2   OBVIOUSLY, WE HAVE A SITUATION HERE WHERE WE HAVE AN

3   OFFENSE LEVEL OF 41 AND WE'RE DEALING WITH A CRIMINAL

4   HISTORY CATEGORY OF I, THEN WE LOOK INTO WHY COULD THIS

5   COURT OR WHAT REASONS SHOULD THIS COURT VARY DOWNWARD.

6   AND I SHOULD HAVE STARTED MY ARGUMENT WITH SAYING, JUDGE,

7   IT IS OUR POSITION THAT WE BELIEVE A 36 MONTH SENTENCE OR

8   A TIME-SERVED SENTENCE IS SUFFICIENT BUT NOT GREATER THAN

9   NECESSARY, BUT HOW DO WE GET THERE.

10          AGAIN, WHEN YOU LOOK AT THE OVERALL LOSS

11  AMOUNT, ONE THING THAT THE GOVERNMENT GLOSSED OVER AND DID

12  NOT ADDRESS WAS OUR CITATIONS REGARDING THE ECONOMIC

13  REALITY PRINCIPLE; AND I THINK THAT'S VERY, VERY IMPOR-

14  TANT, YOUR HONOR, IN THIS CASE BECAUSE INSTEAD OF -- I'M

15  NOT GOING TO QUOTE, YOU KNOW, MCBRIDE AND JORDAN AND ALL

16  THESE OTHER CASES BECAUSE I KNOW THE COURT IS VERY

17  FAMILIAR WITH THEM; BUT WHEN WE HAVE A SITUATION AS WE DID

18  HERE, NOW, IF WE -- YOU KNOW, WE HAVE AN INTENDED LOSS

19  AMOUNT THAT'S VERY CLEAR THAT'S CALCULATED BY THE COURT,

20  WELL, THEN WE HAVE TO LOOK AT THE REASONS FOR THE

21  VARIANCE, AND THE ECONOMIC REALITY PRINCIPLE IS VERY

22  INSTRUCTIVE HERE.  IT'S VERY INSTRUCTIVE, YOUR HONOR,

23  BECAUSE IF WE ARE TO THE POINT WHERE WE ARE, THERE IS AN

24  INTENDED LOSS, THEN WE MUST LOOK AT THE OVERALL POTENTIAL

25  SUCCESS OF THIS ALLEGED SCHEME.

1          THERE'S NOTHING MORE TELLING IN THE RECORD FROM

2    MR. HUNTER'S QUESTION, QUESTIONS TO ALMOST EVERY VICTIM

3    COMPANY WHERE HE STATED, IF WE HAVE A RAW MATERIAL

4    SUPPLIER -- AND I'M PARAPHRASING HERE -- WE HAVE A RAW

5    MATERIAL SUPPLIER, SEVERAL MILLION DOLLARS IN SEED FUNDING

6    AND A COMPANY SUCH AS METLAC, CAN THEY COMPETE?  CAN THEY

7    BE A THREAT IN THE INTERNATIONAL MARKET?  IT WAS ALMOST A

8    RESOUNDING YES FROM EACH ONE OF THE INDIVIDUALS FROM THE

9    WITNESS STAND; BUT WHEN YOU LOOK AT THE TRANSCRIPT, WHEN

10   YOU LOOK AT THAT STATEMENT, THERE'S NOWHERE ELSE TO LOOK

11   THAT'S MORE INSTRUCTIVE BUT FROM THE CEO OF METLAC.

12        WHEN YOU HAVE MR. BOCCHIO THAT'S SITTING UP

13   THERE STATING THAT HE WOULD NEVER DO BUSINESS WITH CHINA,

14   THIS WAS NEVER GOING TO HAPPEN.  ANNA MARIE MAZZILLI

15   ECHOED THAT, THAT THIS WAS NEVER GOING TO HAPPEN.  METLAC

16   IN THIS CASE, AGAIN, ASSUMING WE'VE GOT TO THIS POINT, BUT

17   ASSUMING, TAKING THE JURY'S VERDICT FOR WHAT IT IS, METLAC

18   WAS NEVER GOING TO BE A PLAYER IN THIS; AND THAT'S, THAT

19   IS UNDISPUTED IN THIS CASE.  WE HAVE TESTIMONY THAT THEY

20   VERY CLEARLY STATED THAT THEY WERE NEVER GOING TO DO

21   BUSINESS WITH CHINA; THAT THEY WOULD NEVER DO BUSINESS

22   WITH CHINA.

23        SO IF THAT'S THE CASE, YOUR HONOR, THAT ALONE,

24   YOU KNOW, THE COURT HAS FOUND AGAIN, NOT TO BE A BROKEN

25   RECORD, BUT THE COURT HAS CLEARLY FOUND INTENDED LOSS, BUT

1    WHEN YOU LOOK AT THE OVERALL POTENTIAL SUCCESS OF THE

2    PLAN, IT WAS NEVER GOING TO HAPPEN.

3              THE COURT:  SO YOU'RE SUGGESTING THAT IT WAS

4    IMPOSSIBLE THAT THIS SCHEME WOULD EVER BE COMPLETED?

5              MR. SHIPLEY:  I THINK WITH THE FACTS THAT WE

6    HAVE, YES.  YES, THAT'S WHAT I'M SUGGESTING, YOUR HONOR,

7    BECAUSE IT WAS SUCH AN IMPORTANT PIECE OF TESTIMONY THAT

8    IT WAS ASKED ALMOST VERBATIM OF EVERY SINGLE VICTIM

9    COMPANY, IF YOU HAVE METLAC.  METLAC WAS KEY.  METLAC WAS

10   DEPOSED IN THIS CASE.  THE GOVERNMENT KNEW THAT METLAC WAS

11   KEY, THAT'S WHY THEY PHRASED THEIR QUESTIONS IN THE WAY

12   THEY DID; BUT THEN TO THE POINT OF METLAC SAYING THAT IT

13   WASN'T GOING TO HAPPEN.  YOU HAVE THE BIGGEST MANUFACTURER

14   IN EUROPE ARGUABLY THAT'S STATING THAT NO MATTER WHAT YOU

15   HAVE, NO MATTER -- WELL, LET ME RESTATE THAT.  THEY NEVER

16   HAD ANYTHING, THAT'S OUR POINT, THEY NEVER HAD ANY OF THE

17   MATERIAL, AND THAT'S BEEN UNDISPUTED IN THIS CASE.

18   NOTHING WAS TRANSFERRED, WE KNOW THAT; BUT LET'S JUST SAY,

19   YOU KNOW, FOR THE SAKE OF ARGUMENT THAT THEY DID.  EVEN IF

20   THEY HAD MATERIAL, YOUR HONOR, IT WAS IMPOSSIBLE TO DO.

21   YOU HAVE RAW MATERIAL SUPPLIERS, YOU HAVE ALL THIS STUFF

22   AND YOU HAVE THE FORMULA, IF THEY HAD THE FORMULA, WHICH

23   THEY NEVER DID, IT WAS GOING TO BE IMPOSSIBLE WITHOUT

24   METLAC.  THAT WAS COMPLETELY UNDISPUTED BY THE TWO

25   DEPOSITIONS THAT WE HEARD AND WHAT THE JURY HEARD.  THAT

1   WAS NEVER GOING TO HAPPEN.  SO, YES, MY ARGUMENT WOULD BE
2   TO THE COURT THAT IT WAS IMPOSSIBLE FOR THAT TO HAPPEN.
3               MOVING ALONG, YOUR HONOR, I'VE TOUCHED A LITTLE
4   BIT ON THIS, AND I THINK THE COURT IS VERY AWARE OF OUR
5   POSITION WHEN I TALK ABOUT THE GUIDELINES OVERSTATING THE
6   SERIOUSNESS OF THIS OFFENSE, AND I WILL ECHO THAT, THAT
7   WAS THE NEXT PORTION OF MY ARGUMENT, YOUR HONOR.  YOU
8   KNOW, I THINK THE STATEMENT FROM THE CASE LAW, YOU KNOW,
9   SAYING NOT ALL DOLLARS OF LOSS ARE FUNGIBLE, I THINK
10  THAT'S VERY INSTRUCTIVE.  SENTENCING INDIVIDUALS SHOULD
11  NOT BE -- OR THE COURT SHOULD NOT RESORT TO A SIMPLE
12  MECHANICAL APPROACH AND LOOK AT AND TREAT ALL DOLLARS AS
13  FUNGIBLE BECAUSE THEY'RE NOT.  IF THAT WERE THE CASE, YOUR
14  HONOR, THEN THAT WOULD RENDER THE 3553(A) FACTORS
15  COMPLETELY USELESS.  THERE'S WHAT THE UNDERLYING FLAW IS
16  IN THE GUIDELINES.
17              AND THE SECOND CIRCUIT, YOU KNOW, YOUR HONOR,
18  ADDRESSED THAT IN THE ALGAHAIM CASE, YOUR HONOR, WHEN
19  TALKING ABOUT LOW OFFENSE LEVELS, YOU KNOW, SIGNIFICANTLY
20  INCREASED BY LOSS AMOUNTS ENTITLES A SENTENCING JUDGE TO
21  COME IN AND CONSIDER A NON-GUIDELINE SENTENCE.  SO IT'S
22  NOT ONLY MY POSITION, YOUR HONOR, IT'S COMMENTARY TO THE
23  SENTENCING GUIDELINES, IT'S CRITIQUES ON THE SENTENCING
24  GUIDELINES TO OTHER CIRCUITS THAT TALK ABOUT, YOUR HONOR,
25  HOW THAT SIMPLY TREATING THESE AS FUNGIBLE DOLLARS IS NOT

1    PROPER.

2              AND THEN, YOUR HONOR, AFTER YOU TALK ABOUT

3    THAT, FOR THE REASONS FOR THE VARIANCE, THEN WE HAVE TO GO

4    INTO AND TALK ABOUT THE, REALLY THE 3553(A) FACTORS AS

5    WRITTEN IN THE, IN THE STATUTE.

6              HISTORY AND CHARACTERISTICS.  YOUR HONOR, WE

7    HAVE WRITTEN A LOT IN OUR SENTENCING MEMORANDUM, I'M NOT

8    GOING TO REHASH ALL OF THAT; BUT WE HAVE AN INDIVIDUAL

9    HERE, YOUR HONOR, THAT, IS MY OPINION, THAT CAME TO

10   AMERICA AND DID IT THE RIGHT WAY.  SHE CAME TO AMERICA,

11   SHE RENOUNCED HER CHINESE CITIZENSHIP.  SHE WAS VERY PROUD

12   AT THAT POINT TO BE AN AMERICAN, STILL IS.

13             THE COURT:  WHAT DO YOU MEAN "AT THAT POINT"?

14             MR. SHIPLEY:  STILL IS.  THAT'S WHY I WANT TO

15   SAY THAT, YOUR HONOR, AT THAT POINT WHEN SHE CAME IN AND

16   RENOUNCED HER CITIZENSHIP, I WAS TALKING ABOUT A TEMPORAL

17   PORTION IN TIME, AND NOW SHE STILL IS.

18             WE HAVE AN INDIVIDUAL THAT HAS -- AGAIN, WHEN

19   WE TALK ABOUT, WHEN WE TALK ABOUT OBEYING THE LAW, WE TALK

20   ABOUT DETERRENCE, AND I KNOW I'M CONFLATING TWO SEPARATE

21   PORTIONS OF THE GUIDELINE RANGE, BUT THEY'RE SO INEX-

22   TRICABLY INTERTWINED HERE THAT I CANNOT TALK ABOUT ONE

23   WITHOUT TALKING ABOUT THE OTHER BECAUSE YOU HAVE AN

24   INDIVIDUAL HERE THAT IS EDUCATED, THAT HAS DONE IT THE

25   RIGHT WAY.  SHE'S COME TO THE COUNTRY, SHE HAS GAINED HER

CITIZENSHIP, SHE HAS BECOME EDUCATED, SHE HAS FOLLOWED THE

LAW HER ENTIRE LIFE.  YES, SHE TOOK SOMETHING THAT SHE

SHOULDN'T HAVE TAKEN.  SHE HAD SOMETHING THAT SHE

SHOULDN'T HAVE HAD, THAT'S CLEAR.  THAT'S SOMETHING THAT

WE DO NOT DISPUTE.

          NOW, THE MATTER OF TAKING, THAT'S ANOTHER

THING.  THE DEFINITION OF "TAKING", SHE TOOK IT, SHE HAD

IT; BUT AT THE END OF THE DAY FOR THE LAW PURPOSES, SHE

HAD IT, SO WE UNDERSTAND THAT; BUT ALBEIT FOR ONE THING IN

HER LIFE SHE HAS DONE NOTHING IN THIS COUNTRY BUT FOLLOW

THE LAW AND BECAME A MODEL CITIZEN.  DONE EXACTLY WHAT,

WHAT THIS COUNTRY WAS FOUNDED UPON, HAVING PEOPLE COME TO

THIS COUNTRY TO DO IT THE RIGHT WAY, TO GIVE BACK TO THE

COUNTRY, USE THEIR EXPERTISE TO DO SO.

          SO HERE WE HAVE AN INDIVIDUAL THAT ANY, ANY

ISSUE WITH RECIDIVISM OR ANYTHING LIKE THAT, I MEAN, EVEN

MR. HUNTER SAID THAT THERE'S NOT REALLY AN ISSUE THAT THEY

HAVE -- EXCUSE ME, NOT MR. HUNTER, MR. WALCZEWSKI, SAID

THAT THERE'S NOT REALLY A, A THREAT OF HER REOFFENDING

FROM A DETERRENT STANDPOINT.  I MEAN, AGAIN, ALL THOSE

FACTORS, YOUR HONOR, I THINK THE STATISTICS ARE THAT ONE

WITH ZERO CRIMINAL HISTORY POINTS AS OPPOSED TO SOMEONE

WITH ONE CRIMINAL HISTORY POINT ARE 50 PERCENT LESS LIKELY

TO RECIDIVATE.  SO, I MEAN, WHEN YOU LOOK AT THE, WHEN YOU

LOOK UNDER SECTION B OF 3553(A) AND WHEN WE TALK ABOUT,

1    YOU KNOW, THE DETERRENT FACTOR, THERE'S NO ISSUE.  I THINK

2    THE COURT WHEN YOU LOOK AT, OBVIOUSLY, SPECIFIC DETER-

3    RENCE, THERE SHOULDN'T BE AN ISSUE, EVEN AS MR. WALCZEWSKI

4    SAID, ABOUT HER REOFFENDING, AND WE HAVE -- AND THE

5    STATISTICS STATE THAT THE ISSUE WITH HER REOFFENDING ARE

6    ALMOST NOTHING.

7         BUT WHEN YOU'RE TALKING ABOUT HER AND YOU TALK

8    ABOUT SOMETHING THAT WE HAVE TO TALK ABOUT ARE THE COL-

9    LATERAL CONSEQUENCES OF WHAT THIS SENTENCE IS GOING TO DO

10   TO DR. YOU, SHE'LL NEVER BE ABLE TO WORK IN THE SCIENTIFIC

11   COMMUNITY AGAIN.  SHE'LL BE A CONVICTED FELON.  HER, HER

12   WORK CAREER, HER -- SOMETHING THAT SHE HAS WORKED FOR EVER

13   SINCE SHE WAS A TEENAGER -- WELL, ACTUALLY WE'LL BACK UP

14   FURTHER AND EVER SINCE SHE WAS IN SCHOOL, SOMETHING SHE

15   HAD WORKED FOR, AND WE HAVE TO LOOK AT THAT WHEN YOU LOOK

16   AT THE COLLATERAL CONSEQUENCES OF WHAT WILL HAPPEN HERE.

17        YOU KNOW, WE BELIEVE THAT THAT 36 MONTH

18   SENTENCE IS SUFFICIENT, SUFFICIENTLY STATES THAT THAT'S

19   ENOUGH BECAUSE LET'S JUST SAY, FOR INSTANCE, SHE WALKS OUT

20   OF HERE TODAY, WALKS OUT OF HERE IN A COUPLE OF MONTHS,

21   WALKS OUT AFTER SHE IS BOOKED OUT, I MEAN, WHAT DOES SHE

22   HAVE THERE?  SHE CAN'T WORK IN THE SCIENTIFIC COMMUNITY.

23   I MEAN, ONE OF THE BRIGHTEST MINDS IN THE WORLD WE'RE

24   DEALING WITH HERE WITH REGARD TO THIS SCIENCE, SHE HAS

25   THAT BRAND OF A FELON NOW, NOT WORKING FOR ANY OTHER

1   COMPANY; SO, I MEAN, THAT ALONE THERE, I MEAN, WHEN SHE

2   GETS OUT, I MEAN, WE HAVE TO LOOK AT THAT TOO, THE

3   COLLATERAL CONSEQUENCES, AND HOW DOES THAT DETER HER?

4   WELL, YOUR HONOR, IT WOULD BE OUR POSITION THAT IT DETERS

5   HER GREATLY BECAUSE SHE'S BEEN IN PRISON FOR THREE, FOR

6   OVER THREE YEARS IN THIS CASE; AND WHEN YOU LOOK AT ALL

7   THE CASES THAT WE'VE CITED, AGAIN, I CAN GO OVER THEM

8   INDIVIDUALLY, BUT THREE YEARS WAS ALMOST NEAR THE TOP OF

9   WHAT THESE PEOPLE RECEIVED.

10          NOW, YES, THERE ARE A COUPLE OF CASES, A COUPLE

11  OF OUTLIERS, THE ONE THAT MR. WALCZEWSKI CITED, I THINK

12  THE PERSON RECEIVED IN EXCESS OF 10 YEARS; BUT THEY CITED

13  THREE CASES, THREE CASES THAT, IT WOULD BE OUR POSITION,

14  THAT WERE, AGAIN, FAR MORE EGREGIOUS THAN ANY TYPE OF

15  ALLEGATIONS WE HAVE IN THIS CASE, YOUR HONOR.

16          THEY CITED THE UNITED STATES VERSUS CHUNG CASE.

17  IN THAT CASE, YOUR HONOR, IT WAS A THREAT TO NATIONAL

18  SECURITY.  I UNDERSTAND THAT WE HAVE PROPRIETARY INFOR-

19  MATION, AND I'M NOT SAYING THAT THAT'S NOT -- FOR LACK OF

20  A BETTER WORD, YOUR HONOR, I'M NOT SAYING, I'M NOT SAYING

21  IT'S NOT A BIG DEAL, BUT I'M SAYING EACH CASE PRESENTS ITS

22  OWN SET OF FACTS TO THE COURT.  WE HAVE A SITUATION IN THE

23  CHUNG CASE, WE HAVE SOMEONE THAT COLLECTED HIGHLY TECH-

24  NICAL AEROSPACE AND MILITARY TECHNOLOGY, SOMETHING THAT

25  WOULD BE -- THAT WAS ACTUALLY, I BELIEVE, IF I'M NOT

1    MISTAKEN, YOUR HONOR, THAT WAS ACTUALLY TRANSFERRED, THAT

2    WAS ACTUALLY GIVEN TO THE PEOPLE'S REPUBLIC OF CHINA.  WE

3    GO DOWN TO THE --

4              THE COURT:  WELL, WITH ALL DUE RESPECT,

5    MR. SHIPLEY, IF THAT'S WHAT HAPPENED IN THAT CASE, I

6    SIMPLY DISAGREE WITH THE JUDGE WHO IMPOSED THAT SENTENCE.

7    THAT'S A RIDICULOUS SENTENCE IF THAT'S WHAT HAPPENED IN

8    THAT CASE IN MY OPINION BECAUSE WE HAVE A SITUATION HERE

9    WHERE THE DEFENDANT CONSPIRED TO TRANSFER TO AN ECONOMIC

10   ENEMY OF THE UNITED STATES, PEOPLE'S REPUBLIC OF CHINA,

11   VALUABLE TRADE SECRETS.  I DON'T -- I'M NOT SURE HOW YOU

12   CAN DISAGREE WITH WHAT MR. WALCZEWSKI SAID ABOUT THAT NOT

13   ONLY BEING A BETRAYAL OF HER EMPLOYER, BUT ALSO A BETRAYAL

14   OF THE COUNTRY; AND IF THAT ONLY WARRANTS A 36 MONTH

15   SENTENCE, THEN -- I MEAN, HOW DO YOU JUSTIFY A -- LET'S

16   SET ASIDE LOSS FOR A MINUTE AND JUST LOOK AT WHAT HAPPENED

17   HERE.  WHAT HAPPENED WAS THAT SHE STOLE VALUABLE TRADE

18   SECRETS, AND SHE INTENDED TO TRANSFER THOSE TO AN ENEMY OF

19   THE UNITED STATES.  NOW, HOW CAN YOU JUSTIFY A 36 MONTH,

20   TIME-SERVED SENTENCE JUST BASED ON THAT ALONE?

21             MR. SHIPLEY:  AND I'LL BE HAPPY TO RESPOND TO

22   THAT, YOUR HONOR; BUT MY FIRST THING IS IS THAT, AND THIS

23   IS MEANT TO BE RHETORICAL WHEN I START THIS, BUT I DON'T

24   KNOW HOW YOU JUSTIFY A 20 YEAR SENTENCE EITHER.

25             THE COURT:  WELL, MAYBE NOT; BUT LET'S TALK

1  REALISTICALLY ABOUT WHAT WE'RE TALKING ABOUT HERE.  WE'RE

2  TALKING ABOUT SOMEBODY WHO INTENDED TO AID AN ENEMY OF THE

3  UNITED STATES.

4           MR. SHIPLEY:  YOUR HONOR, WHAT, WHAT OUR

5  POSITION IS, AND OUR POSITION HAS BEEN FROM THE GET-GO,

6  THAT THERE WAS NEVER AN INTENT TO AID THIS ENEMY OF THE

7  UNITED STATES.  THAT IS OUR POSITION.  IT IS -- IT HAS

8  BEEN OUR POSITION, IT'S BEEN HER POSITION SINCE DAY ONE,

9  AND THAT'S OUR POSITION; AND THE THING IS THAT I WILL

10  PROVIDE TO THE COURT FOR A -- I DON'T KNOW IF IT'S A

11  JUSTIFICATION, BUT WHEN YOU, WHEN YOU HAVE A SITUATION

12  WHERE THIS INDIVIDUAL, OKAY, SO WHAT'S THE, WHAT'S THE

13  PURPOSE, THE PURPOSE HERE, IS IT FOR RETRIBUTION, IS IT

14  FOR -- IS IT TO FIT THOSE 3553(A) FACTORS, IS IT TO DETER

15  HER, IS IT TO, IS IT TO, YOU KNOW, SEND A MESSAGE TO THE

16  COMMUNITY, IS IT TO SEND A MESSAGE FOR A GENERAL

17  DETERRENCE STANDPOINT?  I MEAN, WHEN WE TALK ABOUT AN

18  INDIVIDUAL THAT -- ASSUMING THE GOVERNMENT AND ASSUMING A

19  20 YEAR SENTENCE OR WHATEVER THAT MAY BE, SHE'D BE LUCKY

20  TO EVEN SURVIVE IN PRISON; BUT WHEN I SAY A 3 YEAR

21  SENTENCE, OKAY, WHAT HAS THAT ACCOMPLISHED?  SHE IS --

22  SHE'LL NEVER BE ABLE TO VOTE.  SHE IS NOT -- PRETTY MUCH

23  RENOUNCING HER CITIZENSHIP, SOMETHING THAT SHE WORKED VERY

24  HARD TO GET.  SHE'LL NEVER BE ABLE TO GET A JOB IN THE

25  SAME COMMUNITY.

1    NOW, WHO KNOWS, I DON'T KNOW WHO WOULD HIRE

2   HER, BUT AS MUCH, AS MUCH ATTENTION AS THIS CASE HAS

3   RECEIVED, I DOUBT IF ANYBODY WOULD, OTHER THAN A VERY,

4   VERY -- A JOB THAT WAS NOT ANYWHERE NEAR TAKING ADVANTAGE

5   OF HER EXPERTISE; BUT WE HAVE AN INDIVIDUAL THAT'S BEEN IN

6   JAIL FOR 3 YEARS.  SO IF WE WANT TO TALK ABOUT -- I THINK

7   IT'S, IT'S A MATTER OF, YOU KNOW, TO THE COURT, YOU ASKED

8   ME, YOU KNOW, WHY DOES IT WARRANT A 36 MONTH SENTENCE?

9   WELL, I THINK THAT THAT SATISFIES EVERYTHING THAT 3553(A)

10  IS SUPPOSED TO SATISFY.  IT SAYS THAT WE HAVE A SITUATION

11  WHERE WE HAVE A WHITE COLLAR OFFENSE.

12    THE COURT HAS SENTENCED HUNDREDS OF PEOPLE IN

13  WHITE COLLAR OFFENSES, AND THE RESOUNDING -- I THINK I'VE

14  HEARD THE COURT SAY IT BEFORE, THE RESOUNDING POINT IS IS

15  THAT PEOPLE BELIEVE THAT PEOPLE THAT COMMIT WHITE COLLAR

16  OFFENSES, YOU KNOW, GET A SLAP ON THE WRIST OR SOMETHING,

17  THEY DON'T GET AS MUCH, OR AS HARSH OF A SENTENCE AS,

18  LET'S SAY, A DRUG DEALER WOULD BECAUSE THE MANDATORY

19  MINIMUMS AND EVERYTHING ELSE THAT YOU HAVE; BUT HERE YOU

20  HAVE A SITUATION WHERE WE HAVE AN INDIVIDUAL THAT'S BEEN

21  IN PRISON, THAT'S BEEN IN JAIL FOR 3 YEARS ON THIS; SO IF

22  THAT -- DOES THAT, YOU KNOW, WHEN YOU LOOK AT THE NATURE

23  AND CIRCUMSTANCES OF THE OFFENSE, YOU KNOW, YES, SHE HAD

24  INFORMATION THAT SHE DIDN'T HAVE, BUT WHAT WE'RE DOING

25  HERE, AND GOING BACK TO ONE OF THE POINTS THE COURT MADE

1    EARLIER SAYING THAT, YOU KNOW, AM I MAKING THE ARGUMENT

2    THAT SIMPLY BECAUSE SHE DIDN'T DO IT IT IS LESS SEVERE?

3    ABSOLUTELY, BECAUSE WE HAVE THESE VICTIM COMPANIES, YOU

4    KNOW, WE HAVE THE VICTIM COMPANIES HERE, BUT THE ISSUE IS

5    IS THAT THESE VICTIM COMPANIES ARE NOT DAMAGED, SO THAT --

6         THE COURT:  LET ME ASK YOU ONE OTHER QUESTION

7    IN THAT REGARD, MR. SHIPLEY.  IF YOUR POSITION IS THAT SHE

8    NEVER INTENDED FOR THIS SECRET INFORMATION TO FALL INTO

9    THE HANDS OF THE CHINESE GOVERNMENT OR AN ENTITY CON-

10   TROLLED BY THE CHINESE GOVERNMENT, CAN YOU SUGGEST TO ME

11   WHAT AN ALTERNATE INTENT MIGHT HAVE BEEN?

12         MR. SHIPLEY:  ABSOLUTELY.  I THINK WHAT WE

13   HAVE, WHAT WE'VE HEARD AND WHAT THE JURY HEARD WAS THE

14   MOST MALICIOUS, THE MOST EGREGIOUS THOUGHT PROCESS THAT

15   THEY COULD HAVE PRESENTED TO THE JURY, AND I THINK EVERY,

16   EVERY WITNESS SPUN THE ISSUE IN THAT, IN THAT MANNER.  WE

17   HAVE WECHATS, YOUR HONOR, THAT -- THE WECHATS THAT SHE WAS

18   HELD ACCOUNTABLE FOR WERE WRITTEN TO HER; SO I THINK WHAT

19   WE HAVE DONE HERE IN THIS, IN THIS CASE, WE HAVE TAKEN A

20   SITUATION WHERE, YES, IS SHE -- YOU KNOW, IT WOULD STAND

21   TO REASON THAT A LOT OF THIS INFORMATION FROM THESE

22   COMPANIES IS -- WAS IN HER HEAD AT THAT TIME, YOUR HONOR.

23   I MEAN, WE'RE TALKING ABOUT THE PREEMINENT SCIENTIST WHEN

24   IT COMES TO THIS MATERIAL.  SO, YOU KNOW, IS SHE DOING A,

25   IS SHE WORKING ON IT AS A CONSULTING, AS IN A CONSULTING

1    ASPECT?  ARGUABLY, YES.  THAT'S AS REASONABLE AS HER

2    SAYING SHE WAS GOING TO TRANSFER THE MATERIAL.

3              GOING BACK TO MY OPENING STATEMENT, YOUR HONOR,

4    THAT I GAVE IN THIS CASE, IF SOMEONE INTENDED TO DO SOME-

5    THING AND IT WAS THERE, IT WAS THERE TO DO, YOU HAD MONEY

6    THAT YOU WERE THERE, IT WAS ON THE TABLE THAT WAS GOING TO

7    BE TRANSFERRED TO YOU, THEY KNEW YOU HAD VALUABLE INFOR-

8    MATION, THEY ASSUMED THAT YOU HAD VALUABLE INFORMATION AND

9    YOU DIDN'T DO IT.  SHE HAD EVERY OPPORTUNITY AFTER

10   OPPORTUNITY AFTER OPPORTUNITY TO TRANSFER THIS MATERIAL,

11   SHE DIDN'T.  THERE'S NO PROOF IN THE RECORD THAT SHE DID.

12   SO IN THAT POINT, YOUR HONOR, I THINK THAT'S, THAT IS A

13   DISTINGUISHING FACTOR IN THIS CASE.  SHE HAD EVERY --

14             THE COURT:  WHY TAKE IT IN THE FIRST PLACE?  IT

15   DIDN'T BELONG TO HER, WHY TAKE IT IN THE FIRST PLACE?

16             MR. SHIPLEY:  AND, YOUR HONOR, I THINK THAT

17   GOES BACK TO WHAT I STATED EARLIER, WHEN YOU'RE LOOKING

18   AT -- IF WE'RE TALKING ABOUT TAKING VERSUS HAVING, AGAIN,

19   AT THE END OF THE DAY THE LAW SAYS THAT SHE HAD IT.

20             THE COURT:  WELL, I KNOW SHE'S CHARGED WITH

21   POSSESSION, BUT THE PROOF IN THE CASE ESTABLISHED THAT SHE

22   TOOK IT.

23             MR. SHIPLEY:  WELL, AND, AGAIN, YOUR HONOR, I'M

24   NOT TRYING TO ARGUE SEMANTICS HERE OR WHATEVER IT MAY BE,

25   I'M JUST TRYING TO PROVIDE CONTEXT TO WHAT HAS HAPPENED

HERE. THE ISSUE IS, YOUR HONOR -- AGAIN, THE ONLY THING I
HAVE FOR EXAMPLES ARE SOME OF THESE OTHER CASES, HOW
SOMEONE WENT INTO A HARD DRIVE, WENT INTO A HARD DRIVE AND
ACTIVELY -- THE ACTIVE PART OF THAT WAS TRANSFERRING
MATERIAL FROM THAT HARD DRIVE TO THEIR HARD DRIVE, STUFF
THAT THEY WERE NEVER PRIVY TO IN THE FIRST PLACE. THAT'S,
THAT'S -- THAT MAY BE A SUBTLE DISTINGUISHING FACTOR, BUT
I THINK IT IS -- TO THE COURT, BUT I THINK IT IS A VERY
BIG DISTINGUISHING FACTOR IN THIS CASE ABOUT WHAT HER
CONDUCT IS, TO PUT HER CONDUCT INTO PERSPECTIVE IN THIS
CASE. SHE DIDN'T ACTIVELY GO TO A HARD DRIVE SOMEWHERE
AND TAKE THE MATERIAL, THIS MATERIAL WAS GIVEN TO HER.

NOW, SHE POSSESSED IT. DID SHE TRANSFER THAT
TO A PERSONAL DEVICE? YES, I AGREE; BUT I THINK THERE'S A
DIFFERENCE IN THERE, YOUR HONOR. WHEN WE LOOK AT LEVEL OF
CULPABILITY, WHEN THE COURT HAS TO DECIDE WHETHER IT'S
GOING TO DEPART UNDER THE ECONOMIC REALITY PRINCIPLE OR
IT'S GOING TO VARY UNDER THE GUIDELINES BEING A LITTLE
FLAWED IN THEIR REASONING, THE COURT HAS TO TAKE INTO
CONSIDERATION THE NATURE AND THE CIRCUMSTANCES OF THE
OFFENSE; NOT JUST WHAT THE JURY DECIDED, WE HAVE TO TALK
ABOUT EVERYTHING THAT HAPPENED IN THIS CASE; AND WHEN WE
LOOK AT THIS OFFENSE AND EVERY ELEMENT, EVERY THING, EVERY
ACT THAT WAS EVER DONE IN THIS CASE, I THINK IT'S VERY
IMPORTANT AND A DISTINGUISHING FACTOR FOR DR. YOU.

1          SO DO I THINK THAT, YES, DO I THINK SHE HAD THE

2     MATERIAL SHE WAS CHARGED WITH POSSESSING, YEAH, BUT I

3     DISAGREE THAT THE PROOF AT TRIAL WAS THAT SHE TOOK IT, I

4     THINK THAT SHE HAD IT BECAUSE SHE WAS --

5          THE COURT:  THE PROOF AT TRIAL WAS THAT SHE

6     DOWNLOADED IT TO HER PERSONAL DEVICE.

7          MR. SHIPLEY:  AGREE, BUT THERE'S A DIFFERENCE.

8     SHE DID NOT HAVE IT AT THAT POINT UNLAWFULLY, SHE DID NOT

9     SEEK IT UNLAWFULLY; AND, YOUR HONOR, I UNDERSTAND THE

10    COURT'S POINT, BUT OUR POINT IS, YOUR HONOR, THAT, YES,

11    SHE MAY HAVE DOWNLOADED IT TO A PERSONAL COMPUTER, BUT I

12    THINK THE DISTINGUISHING FACTOR WHEN YOU LOOK AT THE OTHER

13    CASES, WHEN YOU'RE PUTTING THIS CASE INTO PERSPECTIVE, YOU

14    HAVE A SITUATION WHERE SHE LAWFULLY HAD IT, SHE PUT IT ON

15    A COMPUTER, HER PERSONAL COMPUTER, THAT SHE SHOULDN'T

16    HAVE, ABSOLUTELY, BUT SHE DID NOT ACTIVELY SEEK SOMETHING

17    THAT SHE WAS NOT PRIVY TO IN THE FIRST PLACE.

18          THE COURT:  WELL, WITH ALL DUE RESPECT IF IT

19    WAS ALL IN HER HEAD, SHE DIDN'T NEED THE DOCUMENTS IN THE

20    FIRST PLACE, SO WHY TAKE IT?

21          MR. SHIPLEY:  YOUR HONOR, THE EXPLANATION THAT

22    I WOULD PROVIDE FOR THAT, I DON'T KNOW IF THE COURT WAS

23    INQUIRING, BUT I'M HAPPY TO PROVIDE AN EXPLANATION, YOU

24    KNOW, WE HAVE A SITUATION WHERE SHE HAS DONE THIS, THIS IS

25    HER, THIS IS HER LIFE'S WORK.  I MEAN, THIS IS SOMETHING

1    THAT SHE HAS LITERALLY DONE, SOMETHING SHE HAS WORKED

2    TIRELESSLY ON TO MAKE IT TO THE POINT SHE WAS AT.  WAS IT

3    SOMETHING THAT SHE HAD WITH THE INTENT TO GIVE TO THE

4    FOREIGN INSTRUMENTALITY?  IT WOULD BE OUR POSITION, YOUR

5    HONOR, IT WASN'T BECAUSE WE THINK THAT IF SHE WAS GOING TO

6    DO IT AT THAT POINT IN TIME DURING THIS INVESTIGATION, SHE

7    WOULD HAVE DONE IT.  THAT'S, YOU KNOW, THAT IS -- WHEN YOU

8    LOOK AT, WHEN YOU BOIL THIS DOWN TO ITS FINITE PRINCIPLES,

9    WHEN YOU LOOK AT JUST SHEER LOGIC, IF YOU HAVE MILLIONS OF

10   DOLLARS, AS THE GOVERNMENT HAS ARGUED AT TRIAL, AS THEY'VE

11   ARGUED HERE AT SENTENCING, IF YOU HAVE MILLIONS OF DOLLARS

12   ON THE TABLE THAT CAN BE YOURS, AND ALL YOU HAVE TO DO IS

13   SEND THE INFORMATION, IF YOU WANT TO DO IT, WHAT, WHAT,

14   WHAT'S STOPPING IT?

15            THE COURT:  WELL, YOU WANT TO GET PAID BEFORE

16   YOU SEND IT; DON'T YOU?

17            MR. SHIPLEY:  MAYBE SO; BUT THE FACT OF THE

18   MATTER IS IS THAT WE, YOU AND I, THE COURT, WE CAN SIT

19   HERE AND THINK OF A MILLION DIFFERENT PERMUTATIONS OF THAT

20   AND SAY THIS COULD BE AN ISSUE, THIS COULD BE AN ISSUE,

21   THIS COULD BE AN ISSUE; BUT WHAT DO WE HAVE TO LOOK AT?

22   THE FACT IS IT WASN'T DONE.  SO THAT'S WHY WE BELIEVE,

23   YOUR HONOR, THAT WHEN I SAY THIS CASE IS LESS SEVERE, WHEN

24   I SAY THIS CASE IS LESS SERIOUS THAN SOME OF THESE OTHER

25   CASES, THAT'S WHY.

1      THAT WAS THE INTENT OF WHAT WE'VE PROVIDED TO

2    THE COURT IN OUR MEMORANDUM THAT WE SUBMITTED, SHOWING THE

3    COURT THAT EVERY SITUATION -- WHEN THE COURT, AND, UN-

4    DOUBTEDLY, THE COURT WILL GO THROUGH EACH OF THE 3553(A)

5    FACTORS; BUT WHEN THE COURT LOOKS AT THE NATURE AND

6    CIRCUMSTANCES OF THIS OFFENSE, IT'S VERY INSTRUCTIVE TO

7    LOOK AT WHAT HAS ACTUALLY HAPPENED IN THIS CASE, TO

8    PROVIDE, IF NOTHING ELSE, CONTEXT; AND, YOUR HONOR, FOR

9    THAT WE BELIEVE THAT A 36 MONTH SENTENCE IN THIS CASE IS

10   FAR MORE SUFFICIENT THAN WHAT IS NECESSARY IN THIS CASE

11   WHEN YOU LOOK AT EVERY SINGLE THING THAT'S GOING TO

12   HAPPEN.  AT ONE POINT IN TIME DR. YOU WILL BE RELEASED

13   FROM JAIL.  IF WE'RE LOOKING AT PUNISHING HER, SETTING A

14   STANDARD IN THE COMMUNITY AND SOMEONE HAS TO SPEND OVER 3

15   YEARS IN JAIL, IT IS OUR OPINION TO THE COURT THAT THAT IS

16   SUFFICIENT BUT NOT GREATER THAN NECESSARY TO COMPLY WITH

17   THE FACTORS SET OUT IN 3553(A).

18           THE COURT:  ALL RIGHT, MR. SHIPLEY, THANK YOU.

19           MR. WALCZEWSKI, DO YOU WANT TO MAKE ANY

20   RESPONSE BEFORE I HEAR THE DEFENDANT'S ALLOCUTION?

21           MR. WALCZEWSKI:  I'LL KEEP IT BRIEF, JUDGE.

22           THE COURT:  ALL RIGHT.

23           MR. WALCZEWSKI:  ONE THING JUST TO START OUT,

24   MR. SHIPLEY WAS MENTIONING THE DONGFAN CHUNG CASE, THAT

25   WAS THE AEROSPACE ONE, NATIONAL SECURITY SECRETS, JUST TO

1  CLARIFY, THAT WAS ONE OF THE 1831 CASES THAT WE CITED, AND

2  MR. CHUNG DID RECEIVE A 180 MONTH SENTENCE UNDER 1831, SO

3  I JUST WANTED TO MAKE SURE THAT WAS CLEAR.

4          BEYOND THAT THOUGH, IT SOUNDS LIKE THE

5  DEFENDANT HAS SOME, SOME ISSUES WITH THE WAY THAT THE

6  GUIDELINES ARE CONSTRUCTED, PARTICULARLY WITH REGARD TO

7  LOSS.  THE GUIDELINES ARE CAREFULLY THOUGHT OUT, THEY'RE

8  REGULARLY UPDATED, THEY ARE ADVISORY, THE COURT IS

9  REQUIRED TO TAKE THEM INTO ACCOUNT.

10          AS YOU KNOW, BASED UPON YOUR OPINION, THERE'S A

11  HIGH INTENDED LOSS IN THIS CASE BECAUSE OF THE VALUE OF

12  THE TRADE SECRETS AND THE NUMBER OF THE VICTIMS, SEVEN

13  VICTIM COMPANIES.  TO THE EXTENT THAT THE DEFENDANT IS

14  ARGUING THAT INTENDED LOSS IS LESS SERIOUS THAN ACTUAL

15  LOSS, IT SOUNDS LIKE THAT'S AN ARGUMENT THAT IF YOU GET

16  CAUGHT EARLY, YOU SHOULD HAVE A LOWER SENTENCE; AND, YOU

17  KNOW, FRANKLY, THAT'S, THAT'S A LITTLE, THAT'S A LITTLE

18  ABSURD, AND IT DOESN'T MAKE ANY SENSE, ESPECIALLY FROM A

19  DETERRENCE STANDPOINT, FOR INDIVIDUAL DETERRENCE OR

20  DETERRENCE FROM OTHERS SIMILARLY SITUATED, BECAUSE AT THE

21  TIME THAT YOU'RE CONSPIRING TO COMMIT A CRIME NOBODY, NO

22  ONE THINKS THEY'RE GOING TO GET CAUGHT.  SO THE IDEA THAT

23  JUST BECAUSE IF YOU GET CAUGHT BEFORE YOU'RE ABLE TO

24  ACTUALLY COMPLETE YOUR CRIME, THAT YOU SHOULD GET A LOWER

25  SENTENCE, THAT'S JUST NOT BORN OUT BY THE GUIDELINES, AND,

1    FRANKLY, THE GOVERNMENT SUGGESTS IT DOES NOT MAKE SENSE.

2              A FEW OTHER, A FEW OTHER POINTS.  MR. SHIPLEY

3    SEEMED TO BE MAKING THE POINT THAT IT'S A LESS SERIOUS

4    CRIME BECAUSE THE DEFENDANT WAS, WAS ENTRUSTED BY HER

5    EMPLOYERS AT SOME POINT TO POSSESS THESE TRADE SECRETS.

6    IT SOUNDS TO US LIKE THAT'S ACTUALLY ARGUABLY MORE SERIOUS

7    THAN IF SOMEBODY WAS TO JUST STEAL THEM WITHOUT HAVING

8    BEEN ENTRUSTED WITH THEM; AND JUST TO BE CLEAR, OBVIOUSLY,

9    YOUR HONOR SAT THROUGH THE TRIAL, BUT THIS IS NOT JUST A

10   CASE OF SOME FILES THAT SHE PUT ON HER COMPUTER AND FORGOT

11   ABOUT.  WE HAD, WE HAD THE UPLOADS FROM THE COCA-COLA

12   COMPANY NETWORK THAT SHE TRIED TO DO IT ONE WAY AND THAT

13   WAS BLOCKED BY THE SYSTEM AND THEN LATER ON SHE WAS OFF

14   HOURS AND UPLOADS TO THE GOOGLE FILE, AND THAT'S FROM THE

15   COCA-COLA NETWORK; AND THEN WITH REGARD TO THE HARD DRIVE

16   THAT WAS FOUND AT THE ARREST, MR. RINALDI'S TESTIMONY

17   SHOWED THAT THERE WERE FILES THAT HAD BEEN RENAMED TO

18   REMOVE VICTIM COMPANY IDENTIFIERS AND, YOU KNOW, HIGHLY

19   CONFIDENTIAL MARKINGS THAT HAD BEEN REMOVED.  SO THIS

20   ISN'T JUST A CASE OF SHE WAS TRUSTED WITH SOME DOCUMENTS,

21   SHE MIGHT HAVE STORED THEM SOMEWHERE WHERE SHE WASN'T

22   SUPPOSED TO AND THEN FORGOT ABOUT THEM, THIS IS NOT, THIS

23   IS NOT THAT CASE.

24             AND, AGAIN, I BELIEVE THAT AT ONE POINT

25   MR. SHIPLEY SAID THAT WHEN, WHEN SHE WAS CONFRONTED ABOUT

THE STOLEN TRADE SECRETS, SHE TURNED THEM OVER.  WELL, SHE
DIDN'T TURN OVER ALL OF THEM.  OF COURSE, WE HAVE THE
LANSING HARD DRIVE THAT WAS FOUND AT HER ARREST THAT STILL
CONTAINED THE HEART OF THE TRADE SECRETS ON THEM.

      MR. SHIPLEY SPENT A FAIR AMOUNT OF TIME ARGUING
THAT THERE WAS IN FACT NO TRANSFER OF THESE TRADE SECRETS,
THAT IS NOT THE GOVERNMENT'S POSITION.  OUR POSITION IS
JUST THAT WE CAN'T PROVE THAT TRANSFER, AND I THINK YOU
UNDERSTAND THAT, BUT I JUST WANT TO MAKE THAT POINT.  YOU
KNOW, SHE TRAVELED TO THE PRC TO PRESENT IN SUPPORT OF HER
THOUSAND TALENTS APPLICATION, SHE WAS MESSAGING WITH HER
FAMILY ABOUT ALL THE RISKS THAT SHE WAS TAKING, YOU KNOW,
SHE WAS PAID BY WEIHAI JINHONG GROUP AND SHE LIED ABOUT
IT.  SO, AGAIN, WE CAN'T PROVE THE TRANSFER, BUT OUR
POSITION IS NOT THAT IT AS A MATTER FACT DID NOT HAPPEN, I
JUST WANT TO MAKE THAT CLEAR.

      AND, FINALLY, THE SUGGESTION THAT THERE WAS,
THERE WAS TESTIMONY THAT THIS PLAN WAS IMPOSSIBLE AND WAS
NEVER GOING TO HAPPEN, THAT, THAT WAS NOT THE TESTIMONY AT
TRIAL.  IN FACT, WHEN THE VICTIM, WHEN THE VICTIM
COMPANIES WERE ASKED THE QUESTION THAT MR. HUNTER KEPT
REFORMULATING, THE ANSWER THAT HE CONSISTENTLY GOT WAS NOT
THAT IT WAS IMPOSSIBLE, WAS THAT IT WAS IN FACT POSSIBLE;
AND WHETHER IT WAS GOING TO HAPPEN WITH METLAC OR HAPPEN
IN SOME OTHER FASHION, THE EVIDENCE AT TRIAL INDICATED

1    THAT THIS WAS A FEASIBLE PLAN AND THAT THE DEFENDANT

2    INTENDED TO CARRY OUT, AND THE JURY FOUND THAT.

3                    MAY I JUST CONSULT WITH COCOUNSEL BRIEFLY?

4                    THE COURT:  YOU MAY.

5                    MR. WALCZEWSKI:  THAT'S ALL I HAVE, JUDGE.

6    AGAIN, WE SUBMIT A 240 MONTH SENTENCE IS APPROPRIATE IN

7    THIS CASE.

8                    THE COURT:  MR. SHIPLEY ALSO MENTIONED THE LATE

9    SUPERSEDING INDICTMENT, WHICH IS SOMETHING WE'VE TALKED

10   ABOUT A GOOD BIT ALREADY IN THIS CASE, BUT THE AMENDMENT

11   IN THE INDICTMENT TO ADD THE ECONOMIC ESPIONAGE CHARGES

12   GIVEN YOUR RECOMMENDATION FOR 240 MONTHS DIDN'T REALLY

13   CHANGE THE POTENTIAL SENTENCE SHE WOULD FACE; CORRECT,

14   BECAUSE SHE FACED A 20 YEAR MAXIMUM ON THE WIRE FRAUD

15   COUNT ITSELF?

16                   MR. WALCZEWSKI:  THAT'S RIGHT, JUDGE.  AND AS

17   YOU KNOW, WE'RE RECOMMENDING, IT'S A 15 MONTH MAXIMUM ON

18   1831, A 10 MONTH MAXIMUM -- 15 YEAR MAXIMUM ON THE 1831,

19   THE 10 YEAR MAXIMUM ON 1832 AND A 20 YEAR MAXIMUM ON THE

20   WIRE FRAUD.  SO WHAT WE WERE GETTING AT, JUDGE, IF WE HAD

21   TRIED THIS CASE WITH NO 1831 COUNT, FRANKLY, SHE WOULD

22   HAVE GOTTEN ALL THE SAME ENHANCEMENTS.  SHE COULD HAVE

23   RECEIVED THE ENHANCEMENT FOR INTENT TO BENEFIT A FOREIGN

24   GOVERNMENT, EVEN WITHOUT AN 1831 CONVICTION, WHICH IS WHAT

25   HAPPENED IN THE SHAN SHI CASE, WHICH I BELIEVE IS WHERE HE

1    WAS ACQUITTED OF THE 1831, BUT STILL THE JUDGE NOTED THAT

2    THERE WAS AN INTENT TO BENEFIT A FOREIGN GOVERNMENT; SO,

3    YES, IF THE INTENDED LOSS HAD COME OUT THE SAME, WHICH WE

4    HAVE NO REASON TO BELIEVE THAT IT HADN'T AND IT WOULDN'T

5    IN ABSENCE OF AN 1831 COUNT, THE GUIDELINES RANGE WOULD BE

6    THE SAME.

7                 THE COURT:  ALL RIGHT.  THANK YOU.

8                 MR. WALCZEWSKI:  THANK YOU.

9                 THE COURT:  I'LL GIVE YOU THE LAST WORD IF YOU

10   WANT IT, MR. SHIPLEY, BEFORE I HEAR THE DEFENDANT.

11                MR. SHIPLEY:  YOUR HONOR, WITH ANY -- YOU KNOW,

12   WITH REGARD TO THAT ECONOMIC ESPIONAGE, THAT WAS SIMPLY A

13   RESPONSE TO THE GOVERNMENT'S SUPPLEMENTAL SENTENCING

14   MEMORANDUM THAT THEY FILED.  AND, ANYWAY, IT SEEMED TO ME

15   AT THAT POINT IN TIME THEY WERE DISTINGUISHING CASES THAT

16   WE FILED AND SAYING THAT THAT FOR SOME REASON DID NOT

17   INCLUDE ECONOMIC ESPIONAGE, THEREFORE, MAKING ECONOMIC

18   ESPIONAGE, IF IT WAS FOUND, MAKING IT MORE SEVERE.  IT WAS

19   MY POSITION TO THE COURT JUST DISTINGUISHING THOSE THAT IN

20   ANY OF THOSE CASES THAT WE CITED, THE MAJORITY OF THOSE

21   CASES ACTUALLY BENEFITED A FOREIGN INSTRUMENTALITY AND

22   COULD VERY WELL HAVE BEEN CHARGED UNDER THE ECONOMIC

23   ESPIONAGE; THAT'S THE POINT THAT I WAS TRYING TO MAKE

24   THERE, YOUR HONOR.

25                THE COURT:  WELL, MR. WALCZEWSKI'S POINT IS

1  ALSO WELL TAKEN, ISN'T IT, THAT THAT IS THAT THE STATUTORY

2  MAXIMUM OF 20 YEARS STILL EXISTED FOR THE WIRE FRAUD COUNT

3  AND THE GUIDELINE RANGE LIKELY WOULD HAVE COME OUT AT THE

4  SAME PLACE WITHOUT THOSE?

5          MR. SHIPLEY:  YES, YOUR HONOR.  ANY INSINUATION

6  THAT SIMPLY PUTTING THE STAMP OF ECONOMIC ESPIONAGE ON A

7  CASE, WE WOULD TAKE ISSUE WITH THAT.

8          THE COURT:  ALL RIGHT.

9          MR. SHIPLEY:  THANK YOU.

10          THE COURT:  ALL RIGHT.  DR. YOU, COME UP TO THE

11  PODIUM, PLEASE, WITH YOUR ATTORNEY.

12          THE DEFENDANT:  YES.

13          IS THERE ANYTHING YOU WISH TO SAY TO THE COURT

14  TODAY BEFORE SENTENCE IS IMPOSED?

15          THE DEFENDANT:  WHAT DID YOU SAY?

16          THE COURT:  IS THERE ANYTHING YOU WISH TO

17  SAY --

18          THE DEFENDANT:  YES.

19          THE COURT:  -- BEFORE I IMPOSE SENTENCE?

20          THE DEFENDANT:  YES.

21          THE COURT:  ALL RIGHT.  GO RIGHT AHEAD.

22          THE DEFENDANT:  YOUR HONOR, I WOULD LIKE TO

23  TAKE THIS OPPORTUNITY TO TELL YOU THE FACTS SURROUNDING MY

24  CASE.  WHEN I GREW UP, MY PARENTS ALWAYS TAUGHT ME NO

25  MATTER IF PEOPLE WERE RICH OR POOR, NOBLE OR HUMBLE,

1    EVERYONE WAS OF EQUAL STATUS.

2              COURT REPORTER:  I'M SORRY.

3              THE COURT:  THE COURT REPORTER HAD A HARD TIME

4    UNDERSTANDING YOU.  SHE SAID BASICALLY THAT NO MATTER

5    WHETHER PEOPLE WERE NOBLE OR HUMBLE, THEY HAD AN EQUAL

6    OPPORTUNITY, I BELIEVE IS WHAT SHE SAID.  IS THAT CORRECT?

7              THE DEFENDANT:  CORRECT.

8              THE COURT:  ALL RIGHT.

9              THE DEFENDANT:  BEFORE 1990, CHINA WAS A

10   DEVELOPING COUNTRY AND HAD VERY POOR ECONOMY.  LIKE MOST

11   CHINESE, MY FAMILY LIVED WITH FOOD AND SUPPLY IN RATION,

12   TINY APARTMENT, POOR SALARIES.  I WATCHED MY PARENTS

13   STRUGGLE WITH TIGHT BUDGET TO RAISE THREE DAUGHTERS, HELP

14   GRANDPARENTS AND OTHERS AS PART OF AN UNFORGETTABLE

15   EXPERIENCE.  AS THE OLDEST CHILD IN THE FAMILY, I LEARNED

16   TO TAKE CARE OF MY SISTERS, CHORES AROUND HOME AS A YOUNG

17   KID.  FAMILY BOND, UNCONDITIONAL LOVE FROM MY PARENTS AND

18   FAMILY, SUPPORT EACH OTHER AND HELP OTHERS BECAME PART OF

19   MY DNA.  THROUGH MY SCHOOL YEAR, I WAS ALWAYS AT THE TOP

20   OF MY CLASS, PEOPLE REMEMBERED ME AS A TALENTED, WELL-

21   ROUND AND CARING PERSON.  AFTER GRADUATED FROM HIGH

22   SCHOOL, I WAS ACCEPTED BY THE BEST UNIVERSITY, TSINGHUA

23   UNIVERSITY, IN CHINA IN JULY '80 AND COMPLETED BACHELOR

24   DEGREE IN '85.

25              IT WAS MY DREAM TO COME TO THE UNITED STATES,

THE SYMBOL OF EQUALITY AND DEMOCRACY TO THE WORLD.  THANKS
TO THE SCHOLARSHIP FROM KENT STATE UNIVERSITY IN OHIO, I
WAS ABLE TO COME TO U.S. FOR MY GRADUATE STUDY IN JANUARY
1990 AND EVENTUALLY OBTAINED MASTER AND DOCTORATE DEGREES
FROM U.S. UNIVERSITIES.

WHEN I CAME TO U.S. ON JANUARY 13, 1990, WITH A
SUITCASE AND COUPLE HUNDRED DOLLARS, I COULD HARDLY
UNDERSTAND PROFESSORS' LECTURES AND SPEAK -- SPOKE BROKEN
ENGLISH.  WORKED DAY AND NIGHT, I WAS ABLE TO SPEAK GOOD
ENGLISH WITHIN SIX MONTHS.

I COMPLETE DOCTORATE DEGREE WHILE I WAS FULL
TIME WORKING.  FOR FIVE YEARS, ALL EVENINGS, WEEKEND,
VACATIONS WERE DEVOTED TO COMPLETE DOCTORATE DEGREE.  HARD
WORK WAS PAID OFF.  I WAS ABLE TO OBTAIN DOCTORATE DEGREE
AND FIVE YEARS WORKING EXPERIENCE AT THE SAME TIME.  THIS
EXPERIENCE REWARDED ME ENORMOUSLY IN MY CAREER FOR IN
DEPTH UNDERSTANDING CUSTOMERS, BUSINESS NEED AND FULLY
RECOGNIZED BY MANAGEMENT IN EACH JOB FOR NEARLY THIRTY
YEARS AS A LEADING SCIENTIST CAN DELIVER NO MATTER WHAT
PROJECTS WERE ASSIGNED TO ME.

IN OCTOBER 1999 I GAVE UP MY CHINESE
CITIZENSHIP AND BECAME A PROUD U.S. CITIZEN.

DURING MY NEARLY 30 YEARS OF WORKING IN U.S., I
CONTRIBUTED 42 PATENT APPLICATIONS TO BENEFIT CONSUMERS TO
SEVERAL LEADING COMPANIES AND MADE SIGNIFICANT

1  CONTRIBUTIONS TO DEVELOP BREAK-THROUGH TECHNOLOGIES IN
2  SEVERAL INDUSTRIES.

3         BECAUSE THE REPUTATION AND RECOGNITION I HAD IN
4  THE POLYMER COATING FIELD, I WAS HIRED BY THE COCA-COLA
5  COMPANY IN DECEMBER 2012 TO LEAD WORK ON SOLUTIONS FOR
6  FRENCH BPA BAN WHICH TOOK PLACE ON JANUARY 1, 2015.  AS MY
7  COKE MANAGER, YU SHI, TESTIFIED THAT TO ACCELERATE THE
8  COATING DEVELOPMENT, COKE'S MANAGER -- MANAGEMENT IN 2013
9  REQUESTED THAT THE SUPPLIERS PROVIDED DETAILED INFORMA-
10 TION.  THE COKE PROJECT TEAM SPECIFIED WHAT INFORMATION
11 WAS NECESSARY FOR THEM TO PERFORM THEIR TASKS.  AS A
12 TECHNICAL LEADER, EXPERT AND GATEKEEPER, PER MANAGEMENT'S
13 REQUEST I WAS RESPONSIBLE WITH COMMUNICATING WITH EACH
14 SUPPLIER TO ACQUIRE DETAILS, PRESENTING THE CHEMISTRIES TO
15 OTHER FUNCTIONAL GROUPS IN COKE, AND SETTING UP APPRO-
16 PRIATE TESTS AT COKE FACTORIES.  FURTHERMORE, IT WAS ALSO
17 MY RESPONSIBILITY TO EXPLAIN THE DATA, IDENTIFY PROBLEMS
18 AND PROVIDE FEEDBACK, GUIDANCE TO EACH COATING SUPPLIER SO
19 THAT THEY COULD IMPROVE THEIR COATINGS.

20        DURING NEARLY FIVE YEARS WORKING IN COKE, I
21 GUIDED EACH SUPPLIER TO ADVANCE THEIR COATINGS.  FOR
22 EXAMPLE, GOVERNMENT WITNESS MR. LESCHNIK FROM AKZO SAID
23 AKZO WAS TRULY BEHIND.  THE OLD FORMULATION DEVELOPED
24 BEFORE 2013 HAD SEVERE FLAVOR SCALPING PROBLEM, FLAVOR
25 SCALPING MEANS ABSORB THE FLAVOR FROM THE BEVERAGE, UP TO

60 PERCENT, AND SELECTIVELY ABSORBING KEY INGREDIENTS FROM
COKE'S FANTA PRODUCTS.  I GUIDED THEIR TEAM FROM SELECTING
COMPOUNDS, SUGGESTING NEW TESTING METHODS, AND NOVEL
IDEAS.  AKZO TEAM EXPRESSED THEIR APPRECIATION TO MY COKE
MANAGEMENT TEAM AND MYSELF, ACKNOWLEDGED MY IDEA LEAD TO
THEIR SECOND GENERATION PRODUCTS.  THEY VOLUNTEERED TO SET
UP BIWEEKLY MEETING TO DISCUSS RESULTS AND IDEAS WITH ME.
MR. LESCHNIK SENT, SENT E-MAILS THANKING MY HELP FOR THEIR
TEAM, DESPITE HE WAS IN MARKETING ROLE, NOT INVOLVED IN MY
DAY-TO-DAY DISCUSSIONS WITH THEIR TEAM.

DOW HAS BEEN DEVELOPING THEIR POD FORMULATION
SINCE 2008.  WHEN WE TESTED IN JULY 2013, THEIR POD
COATING HAD SEVERE FLAVOR SCALPING PROBLEM.  I GUIDED
THEIR TEAM REDESIGN THEIR POD BY INCREASING CRYSTALLINITY.
THE REDESIGNED FORMULATION IN 2014 HAD PARITY FORMULATION
-- HAD PARITY PERFORMANCE IN FLAVOR TO BPA EPOXY CAN
COATING.  DURING SCALE-UP TESTING OF THEIR REDESIGNED POD
COATING IN COKE'S PILOT PLANT, IT HAD SEVERE FOAMING
PROBLEM.  BEVERAGE CANNOT BE FILLED TO THE TOP OF THE
CLASS -- TO THE TOP OF THE CANS.  I GUIDED THEIR TEAM
SELECTING ADDITIVE, SOLVED THE FOAMING PROBLEM WITHIN
THREE TO FOUR WEEKS, WHICH CAN EASILY TAKE SIX TO TWELVE
MONTHS WITHOUT MY GUIDANCE.  DOW'S MANAGEMENT EXPRESSED
THEIR APPRECIATIONS TO MY COKE MANAGEMENT.  MY GUIDANCE
MADE IT POSSIBLE THAT REDESIGNED POD WAS APPROVED BY COKE

1    TO HAVE SIMILAR PHYSICAL AND FLAVOR PERFORMANCE TO BPA

2    EPOXY CAN COATING.

3              MY IDEA AND GUIDANCE TO EACH SUPPLIER SIGNIFI-

4    CANTLY IMPROVED THEIR COATINGS TO BECOME POTENTIAL

5    COMMERCIAL COATINGS, THAT WAS THE REASON EACH SUPPLIER

6    CAME TO SEE ME REGULARLY TO DISCUSS IDEAS, RESULTS TO SEEK

7    MY GUIDANCE.  MY COKE MANAGEMENT RECEIVED GOOD FEEDBACK

8    FROM EACH SUPPLIER FOR MY GUIDANCE AND ACKNOWLEDGED THAT

9    MY HELP SIGNIFICANTLY ACCELERATED THEIR DEVELOPMENT.  I

10   GOT REWARD FROM COKE MANAGEMENT IN MID 2016 FOR MY

11   CONTRIBUTIONS IN BPA-FREE PROJECT.  AS MY COKE MANAGER, YU

12   SHI, TESTIFIED I AM A GOOD SCIENTIST, A PROFESSIONAL,

13   DELIVERED PROJECT.

14             I AM VERY PROUD OF MY CONTRIBUTION TO COKE AND

15   EACH SUPPLIER.  WHEN I LEFT COKE, I KEPT SOME FILES AS

16   RESUME AND WORK RECORD TO REFLECT MY, MY ACCOMPLISHMENTS

17   SINCE I WAS A MAJOR CONTRIBUTOR.  I HAD NO INTENTION TO

18   DISCLOSE THEM AND NEVER SHARED THEM WITH ANYONE.  AS

19   MR. HUESKEN AND MR. BAKER, THEIR GOVERNMENT WITNESS FROM

20   COKE, TESTIFIED, THOUSANDS OF FILES WERE DOWNLOADED BY

21   HUNDREDS OF PEOPLE IN COKE DURING THAT TWO MONTH PERIOD

22   AND COKE DID NOT SEE ANY PROBLEM.

23             DURING MY TEN MONTHS EMPLOYMENT AT EASTMAN, I

24   WAS NEVER INVOLVED IN FORMULATION DEVELOPMENT BUT MARKET-

25   ING.  EASTMAN WANTED TO USE MY REPUTATION IN BPANI,

BPA-FREE COATING TO HELP THEM OPEN THEIR BPA-FREE MARKET,
ESPECIALLY IN ASIA.  MY KNOWLEDGE IN BPA-FREE MARKETING
AND CREDIBILITY IN CONVINCING CUSTOMERS WERE FULLY
ACKNOWLEDGED BY EASTMAN UPPER MANAGEMENT.  DR. CHRIS
KILLIAN, DR. BHATTACHARYA'S BOSS, SET UP MONTHLY MEETING
WITH ME TO DISCUSS BPA-FREE PROJECT AND ALWAYS GAVE GOOD
FEEDBACK FOR MY PERFORMANCE AND PRAISED ME, BROUGHT
CREDIBILITY FOR EASTMAN TEAM.

WHEN I REALIZED THAT MY EMPLOYMENT AT EASTMAN
COULD BE SUDDENLY TERMINATED ON JUNE 21, '18, I SIMPLY
SAVED ALL FILES IN GOOGLE DRIVE AND HARD PORTABLE DRIVE,
HARD DRIVE.  IT WAS MY MISTAKE, NO CRIMINAL INTENT.

AS DR. BARRY NAUGHTON, HE'S THE GOVERNMENT
EXPERT ON CHINA, TESTIFIED, BOTH THOUSAND TALENT PROGRAM
AND YISHI-YIYI PROGRAM ARE LEGITIMATE AWARDS SIMILAR TO
ANY OTHER AWARD SPONSORED BY U.S. GOVERNMENT TO
INTERNATIONAL RECIPIENTS.  I WAS INTERESTED IN APPLYING
THE AWARDS BECAUSE IT WOULD GIVE ME RECOGNITION AS A
SUCCESSFUL SCIENTIST AND MORE CHANCES TO SEE MY MOTHER IN
HOSPITAL AND FAMILY MEMBERS.

THE APPLICATIONS SHOWED BY GOVERNMENT WERE
DRAFTS WRITTEN BY MR. LIU.  IT WAS NOT THE OFFICIAL
DOCUMENTS.  NO COMPANY SEAL, MY SIGNATURE WAS FORGED FROM
THE COVER LETTER OF MY RESUME BY MR. LIU IN CHINA.
GOVERNMENT HAS NO PROOF WHAT WAS SUBMITTED, PRESENTED FOR

1    TWO AWARDS.

2              I DID NOT WRITE ANY OF THE APPLICATION AND WAS

3    NOT AWARE TO THIS DATE WHERE AND WHO THE APPLICATIONS WERE

4    SUBMITTED TO, AND ALL I DID FOR, I PICKED THE TWO AWARD

5    APPLICATIONS, I SUBMITTED RESUME AND THE PERSONAL DATA AND

6    THE DIPLOMAS.  I ATTENDED YISHI-YIYI PRESENTATION, BUT NOT

7    PRESENTED.  I ATTENDED THE TTP WITH -- I ATTENDED

8    PRESENTATION AT TTP, PRESENTED MY RESUME AND ANSWERED THE

9    QUESTIONS REGARDING BPA REGULATION.  THE TOTAL TIME FOR MY

10   PRESENTATION WAS 10 MINUTES.

11             IN ADDITION, OTHER FILES RELATED WITH AWARD

12   APPLICATIONS, POTENTIAL BUSINESS PLAN FOUND IN MY HARD

13   DRIVE WERE DRAFTS SENT BY MR. LIU, REJECTED AND

14   DISAPPROVED BY ME.  GOVERNMENT HAS NO PROOF IF OR WHERE,

15   WHO THESE FILES WERE SUBMITTED.  IT IS, IS JUST --

16             COURT REPORTER:  COULD YOU REPEAT THAT PART

17   JUST A MINUTE.

18             THE COURT:  YOU'RE GOING TO NEED TO REPEAT THAT

19   FOR ME AS WELL, BUT ARE YOU SUGGESTING THAT THOSE --

20             THE DEFENDANT:  LET ME FINISH THOUGH.

21             THE COURT:  THE COURT REPORTER DIDN'T

22   UNDERSTAND WHAT YOU SAID, SO I'M GOING TO ASK YOU TO

23   REPEAT SOME OF THAT.

24             THE DEFENDANT:  OKAY.  IN ADDITION, OTHER FILES

25   RELATED WITH AWARD APPLICATIONS, POTENTIAL BUSINESS,

1    PROJECT PLAN LIKE THEY PRESENTED A NUMBER OF THINGS IN THE

2    TRIAL, NONE OF THEM I WROTE THEM, AND MR. LIU SENT SOME-

3    TIMES, SENT THESE FILES TO ME, ASK FOR MY OPINION FROM

4    TIME TO TIME.  I TOLD HIM I DISAPPROVE.  AND THEN HE SAID,

5    OH, OKAY, SO I NEVER HEARD HIM.  SO TO THIS DAY I DO NOT

6    KNOW WHAT HAS BEEN SUBMITTED AND TO WHO, AND I DO NOT KNOW

7    ANYTHING.

8            AND IN ADDITION, ALL THE FILES RELATED WITH

9    AWARD APPLICATIONS, POTENTIAL BUSINESS PLAN AND PROJECT

10   PLAN FOUND IN MY HARD DRIVE WERE DROPPED, SENT BY MR. LIU,

11   REJECTED, DISAPPROVED BY ME.  GOVERNMENT HAS NO PROOF IF

12   OR WHERE, WHO THESE FILES WERE SUBMITTED.

13           IS THIS WHAT YOU WANTED ME TO REPEAT?

14           THE COURT:  I BELIEVE SO, YES.

15           THE DEFENDANT:  OKAY.  ALL RIGHT.

16           I WAS NOT AWARE THE CHINESE ARTICLES ABOUT ME

17   UNTIL MY LAWYER SHOWED ME IN FBI'S DISCOVERY MATERIALS.

18           MR. LIU ADMITTED HE MADE FALSE STATEMENT FOR MY

19   AWARD APPLICATIONS WITHOUT MY KNOWLEDGE.  THAT WAS

20   DOCUMENTED IN THE WECHAT, HE ADMITTED THAT.  MR. LIU USED

21   MY NAME TO GET MY -- TO GET CHINESE GOVERNMENT FOR GRANT.

22   I HAVE NO CONTROL WHAT HE DID IN CHINA.  I AM A VICTIM.

23   PLEASE UNDERSTAND I AM A VICTIM.  I HAVE NO CONTROL WHAT

24   HE DID IN CHINA.  MS. FAN AND MR. LIU NEVER KNEW I

25   ACTUALLY LEFT COKE ON AUGUST 31, 2017 AND WORKED FOR

1 EASTMAN AFTER I LEFT COKE.  THEY NEVER KNEW I HAD THESE

2 FILES.

3          IN CLOSING, I DID NOT STEAL ANYTHING AND ALL

4 THE FILES I POSSESSED WERE RECEIVED WITH FULL AUTHORIZA-

5 TION DURING MY EMPLOYMENT.  I WAS SIMPLY DOING MY JOB PER

6 MANAGEMENT'S REQUEST.  IT WAS MY MISTAKE TO KEEP THESE

7 COMPANY FILES AFTER THE EMPLOYMENT ENDED, BUT AN INNOCENT

8 MISTAKE SHOULD NOT BE PUNISHED AS A CRIME.  I HAVE NO

9 INTENT TO DISCLOSE WITH ANYONE, NEVER SHARED WITH ANYONE,

10 AND I HAVE NO INTENT TO HARM ANY OF THE COMPANIES I WORKED

11 SO HARD TO HELP.

12          BEFORE MY EMPLOYMENT WITH COKE AND EASTMAN, I

13 HAD WORKED FOR SOME LEADING INDUSTRIAL COMPANIES, SUCH AS

14 ESSILOR, DUPONT, DSM, SAINT-GOBAIN AND HONEYWELL FOR

15 DECADES.  NONE OF THESE COMPANIES HAVE EVER ACCUSED ME OF

16 LEAKING OR KEEPING CONFIDENTIAL INFORMATIONS AFTER NEARLY

17 30 YEARS.  I WAS WELL RECOGNIZED AS AN ACCOMPLISHED

18 SCIENTIST THAT HAD TRACK-RECORD SUCCESS TO DELIVER BUSI-

19 NESS, CUSTOMER'S NEEDS WITH EXTRAORDINARY QUALIFICATIONS,

20 CHARACTER AND INTEGRITY.

21          I AM A CARING MOTHER, WIFE, DAUGHTER, AN

22 ACCOMPLISHED SCIENTIST, AND A PROUD U.S. CITIZEN.  THE

23 TERM "ILLEGAL ACTIVITIES" WERE NOT IN THE VOCABULARY

24 ASSOCIATED WITH ME FOR MY ENTIRE LIFE.

25          YOUR HONOR, I HAVE BEEN INCARCERATED FOR MORE

1   THAN THREE YEARS FOR MY MISTAKES.  MY MOTHER PASSED AWAY

2   IN THIS JANUARY.  I FEEL SO GUILTY THAT I CANNOT BE THERE

3   FOR HER FUNERAL.  I'VE BEEN CRYING AND PRAYING FOR GOD'S

4   HELP DAILY, TRUSTING THAT GOD HEARS MY SIGHS, FEELS MY

5   HURTS AND SEES MY FEARS.  LET ME QUOTE FROM BIBLE, "CAST

6   YOUR BURDEN ON THE LORD, AND HE WILL SUSTAIN YOU, HE WILL

7   NEVER PERMIT THE RIGHTEOUS TO BE MOVED."  "MAY MERCY,

8   PEACE AND LOVE BE MULTIPLIED TO YOU."  IN GOD'S GRACE, WE

9   FIND OUR COURAGE.  IN GOD'S LOVE, WE FIND OUR STRENGTH.  I

10   LOVE AMERICA, REMAIN OPTIMISTIC AND POSITIVE THAT UNITED

11   STATES IS A COUNTRY WHERE TRUTH AND FAIRNESS WILL PREVAIL.

12         THANK YOU FOR YOUR TIME AND CONSIDERATION.  GOD

13   BLESS ALL AMERICANS.  RESPECTFULLY.

14         AND THAT'S ALL I WANT TO SAY; BUT TO ANSWER

15   YOUR EARLIER QUESTION TO MY LAWYER, YOU SAID, WHAT IS THE

16   PROOF I DID WRITE THIS.  I HAVE NEVER, I SIMPLY DID NOT

17   COMPLETE THIS AND WILL HAVE RECORD IN EITHER MY E-MAIL,

18   EVERYTHING, THERE IS NO RECORD I EVER DONE THAT.  AND

19   ALSO, IN THE RESEARCH I DONE, THE RECORD, MR. LIU SAID HE

20   COMPLETED MY APPLICATION; BUT WHAT THE REASON I NEVER

21   KNOW, TO THIS DATE I NEVER KNOW.

22         THE COURT:  MAY I ASK YOU ONE OR TWO QUESTIONS?

23         THE DEFENDANT:  SURE.

24         THE COURT:  IS THERE SOME E-MAIL OR TEXT OR

25   SOMETHING SIMILAR TO THAT THAT YOU CAN POINT TO WHERE YOU

1   REJECTED OR TOLD MR. LIU THAT YOU DID NOT APPROVE OF THESE

2   BUSINESS PLANS, THESE PROJECT PLANS, THOSE SORTS OF

3   THINGS?

4           THE DEFENDANT:  WELL, USUALLY, USUALLY E-MAIL,

5   BUT I HAVE NO ACCESS TO MY E-MAIL, AND POSSIBLY I HAVE

6   YEARS, AND I DO NOT NOW HAVE THE RECORD AND -- BUT THEY

7   ARE, THEY ARE, THEY ARE SAYING THAT THERE ARE WECHAT

8   MESSAGES FROM MR. LIU AND THAT HE COMPLETED MY, HE

9   COMPLETED MY APPLICATION, BUT HE NEVER TOLD ME WHAT WAS

10  SUBMITTED TO WHO.  TO THIS DAY I DO NOT KNOW.

11          ALL -- THE SIGNATURE, THE GOVERNMENT SHOW IN

12  THAT ONE BECAUSE I SEND MY RESUME, I HAVE A COVER LETTER,

13  THERE'S AN ELECTRONIC SIGNATURE THERE.  THEY JUST SIMPLY

14  COPIED THAT PARTICULAR THINGS, AND THEN HE SENT, HE SENT

15  TO ME; AND I SAID, WELL, I, I AGREE ABOUT MY RESUME PART,

16  I DO NOT AGREE WITH ANYTHING ELSE.  HE SAID HE WOULD TAKE

17  CARE OF THAT, THAT'S ALL HE SAID.  HE SENT THINGS FROM

18  TIME TO TIME TO ME, AND THEN I WOULD SAY, OKAY, AND I DO

19  NOT AGREE; AND THEN HE SAID, WELL, HE NEVER HEARD OF IT;

20  AND THEN HE WOULD SAY, WELL, THEY DON'T NEED THAT.  EXCEPT

21  FOR EXAMPLE LIKE THE PATENT, THE FACE, THE FALSE PATENT,

22  THINGS THAT THE GOVERNMENT SHOWED IN THE TRIAL, AND THAT

23  THAT'S -- THEY DID THAT SENT TO ME, I COMPLETED THE

24  RESUME, AND THEN THEY SAID, OH, NEVER MIND.  SO I NEVER

25  KNOW, AND IF THAT'S SOMETHING THEY DID, OR THEY DID NOT,

```
1   TO THIS DAY I DO NOT KNOW.

2              THE COURT:  ALL RIGHT.

3              THE DEFENDANT:  BECAUSE I DON'T, I DON'T STAY

4   THERE.  THERE 12 HOUR DIFFERENCE, YOU UNDERSTAND, AND SO I

5   DON'T -- I DO NOT -- IT'S IMPOSSIBLE FOR ME TO KNOW WHAT

6   HIS DAILY ACTIVITIES, AND HE DOESN'T REPORT TO ME, AND SO

7   BASICALLY JUST I -- ALL, ALL MY PARTICIPATION IS ANSWER

8   THE -- SEND MY PERSONAL INFORMATION AND ANSWER QUESTION

9   WITH PUBLIC INFORMATION; THAT'S ALL, THAT'S ALL I DID.

10             THE COURT:  ALL RIGHT.  AND I WANT TO MAKE SURE

11  YOU UNDERSTAND THIS QUESTION, SO IF YOU --

12             THE DEFENDANT:  YES.

13             THE COURT:  -- HAVE ANY DOUBT ABOUT WHAT I'M

14  ASKING YOU, ASK ME TO EXPLAIN.

15             THE DEFENDANT:  YEAH, BUT --

16             THE COURT:  GO AHEAD, GO AHEAD IF YOU WANT

17  TO.

18             THE DEFENDANT:  YEAH; BUT THERE, YEAH, MR. LIU

19  IN WECHAT SAID, HE ANSWERED, HE DID ALL THAT APPLICATION

20  FOR ME.

21             THE COURT:  ALL RIGHT.  HERE'S THE QUESTION, IF

22  ALL YOU DID WAS MISTAKENLY RETAIN FILES THAT HAD BEEN

23  GIVEN TO YOU, WHY DID YOU GO INTO THOSE FILES AND CHANGE

24  THE FILE NAMES --

25             THE DEFENDANT:  I DID NOT.
```

1          THE COURT:  -- AND REMOVE THE NAMES OF THE
2    COMPANIES THEY BELONG TO?
3          THE DEFENDANT:  I DID NOT.
4          THE COURT:  DO YOU KNOW WHO DID?
5          THE DEFENDANT:  I DON'T.  I DID NOT -- WHEN I,
6    WHEN I GOT -- I DID NOT EVEN BOTHER TO LOOK AFTER I
7    DOWNLOAD THEM, THAT -- ALL THESE FILES WERE IN MY HOME.  I
8    HAD NEVER -- EVER SINCE, I DON'T HAVE RECORD OF WHAT BEEN
9    GIVE BACK TO ME, AND I HAVE NEVER LOOK AT AFTERWARDS.
10          THE COURT:  ALL RIGHT.  IS THERE ANYTHING ELSE
11    YOU WANT TO SAY?
12          THE DEFENDANT:  HUH?
13          THE COURT:  IS THERE ANYTHING ELSE YOU WANT TO
14    SAY?
15          THE DEFENDANT:  NOT AT THIS MOMENT.
16          THE COURT:  LET'S TAKE A FIVE MINUTE RECESS,
17    AND I'LL COME BACK AND IMPOSE SENTENCE.
18        (RECESSED AT 10:32 A.M., UNTIL 10:57 A.M.)
19          THE COURT:  I APOLOGIZE FOR THAT SHORT DELAY,
20    BUT I THINK WE'RE READY TO PROCEED.
21          DR. YOU, COME BACK UP TO THE PODIUM, PLEASE,
22    WITH YOUR ATTORNEYS.
23          DR. YOU, IF YOU READ TITLE 18, UNITED STATES
24    CODE, SECTION 3553(A), MY RESPONSIBILITY HERE TODAY SOUNDS
25    TO -- SOUNDS PRETTY SIMPLE.  THAT STATUTE DIRECTS ME TO

1    IMPOSE A SENTENCE WHICH IS SUFFICIENT BUT NOT GREATER THAN
2    NECESSARY TO COMPLY WITH THE PURPOSES OF SENTENCING
3    ESTABLISHED BY THE CONGRESS.  THE FACT THAT CONGRESS
4    PHRASED IT THAT WAY, A SENTENCE SUFFICIENT BUT NOT GREATER
5    THAN NECESSARY, MEANS TO ME THAT CONGRESS DREW A LINE, AND
6    ON ONE SIDE OF THAT LINE IS A SENTENCE SUFFICIENT, ON THE
7    OTHER SIDE OF THAT LINE IS A SENTENCE GREATER THAN
8    NECESSARY; AND JUST AS A MATTER, A GENERAL MATTER
9    INVOLVING SENTENCING, SINCE I BEGAN MY GOAL HAS ALWAYS
10   BEEN TO BE, NEVER BE ON THE GREATER-THAN-NECESSARY SIDE OF
11   THAT LINE.  BUT DESPITE THE FACT THAT THE CONGRESS DREW A
12   RED LINE BETWEEN A SENTENCE SUFFICIENT AND ONE GREATER
13   THAN NECESSARY, AS A PRACTICAL MATTER IT'S VERY DIFFICULT
14   SOMETIMES TO DETERMINE WHERE THAT LINE SHOULD BE DRAWN IN
15   TERMS OF THE APPROPRIATE SENTENCE IN A CASE.
16            NOW, CONGRESS DIDN'T LEAVE ME WITHOUT ANY
17   GUIDANCE ON HOW TO DO THAT, CONGRESS LISTED A NUMBER OF
18   FACTORS IN THAT CODE SECTION THAT I AM REQUIRED TO
19   CONSIDER BEFORE ARRIVING AT A DETERMINATION OF WHAT
20   SENTENCE IS SUFFICIENT BUT NOT GREATER THAN NECESSARY IN
21   THIS PARTICULAR CASE, AND YOU ARE ENTITLED TO AN
22   INDIVIDUALIZED DETERMINATION OF THE APPROPRIATE SENTENCE
23   IN THIS CASE, SO I'M GOING TO TAKE A FEW MINUTES TO TALK
24   ABOUT THOSE FACTORS SO THAT THE RECORD IS CLEAR AND SO
25   THAT YOU UNDERSTAND THE REASON FOR MY ULTIMATE DECISION

1    HERE TODAY.

2              I OFTEN TELL DEFENDANTS THAT IMPOSING SENTENCE

3    IN A CRIMINAL CASE IS THE MOST UNPLEASANT THING I HAVE TO

4    DO, AND IT IS, BY FAR.  MY PREDECESSOR ON THE BENCH TOLD

5    ME ONE TIME WHEN I STARTED THAT IT WOULD GET EASIER WITH

6    TIME, THAT I WOULDN'T HAVE TO SPEND SO MUCH TIME AND

7    STRUGGLE WITH SENTENCES, IT WOULD SIMPLY GET EASIER.  HE

8    WAS WRONG ABOUT THAT, IT'S NEVER GOTTEN ANY EASIER, AND

9    YOUR CASE IN PARTICULAR HAS BEEN A DIFFICULT ONE FOR ME.

10   IT'S ONE I'VE LOST SLEEP OVER; BUT I'M GOING TO DO THE

11   VERY BEST I CAN BASED ON WHAT CONGRESS TOLD ME TO DO TO

12   IMPOSE A SENTENCE THAT IS SUFFICIENT HERE, BUT NOT ONE DAY

13   GREATER THAN NECESSARY, AND SO LET ME TALK A LITTLE BIT

14   ABOUT THOSE 3553(A) FACTORS.

15             THE BEGINNING POINT, INDEED THE ONE THAT THE

16   SIXTH CIRCUIT AND OTHER CIRCUITS HAVE TOLD ME TO START

17   WITH, IS THE ADVISORY GUIDELINE RANGE WHICH APPLIES TO THE

18   CASE.  HERE THAT HAS BEEN DETERMINED TO BE A RANGE OF 324

19   MONTHS TO 405 MONTHS, WHAT IN MY VIEW IS ESSENTIALLY A

20   LIFE SENTENCE FOR A DEFENDANT ALMOST 60 YEARS OF AGE.

21   THAT IS A VERY SIGNIFICANT SENTENCE IN A CRIMINAL CASE

22   BECAUSE, AS I'M SURE YOUR LAWYERS HAVE EXPLAINED TO YOU,

23   SENTENCES IN FEDERAL COURT ARE NONPAROLABLE; UNLIKE STATE

24   COURT WHERE DEFENDANTS ARE ELIGIBLE FOR PAROLE AFTER

25   SERVING A PORTION OF THE SENTENCE, THAT'S NOT TRUE IN THE

1    FEDERAL COURTS.

2              NOW, THE GOVERNMENT DOES NOT ADVOCATE HERE FOR

3    A SENTENCE WITHIN THAT ADVISORY, WITHIN THAT ADVISORY

4    RANGE, AND THESE GUIDELINES ARE TRULY ADVISORY, WHICH

5    MEANS I'M NOT REQUIRED TO SENTENCE YOU WITHIN THAT GUIDE-

6    LINE RANGE.  THE UNITED STATES ASKS ME TO VARY DOWNWARD TO

7    240 MONTHS, A 122 MONTH DOWNWARD VARIANCE FROM THE BOTTOM

8    OF THAT GUIDELINE RANGE.  MR. SHIPLEY, OF COURSE, ASKS ME

9    TO VARY EVEN FURTHER, DOWN TO A SENTENCE OF TIME SERVED IN

10   THE CASE; BUT THAT GUIDELINE RANGE IS IMPORTANT, AND IT'S

11   THE GENERAL STARTING POINT FOR A DISCUSSION OF AN APPRO-

12   PRIATE SENTENCE FOR A VERY SIMPLE REASON, THE UNITED

13   STATES SENTENCING COMMISSION WAS FORMED BY THE SENTENCING

14   REFORM ACT OF 1984.  IT WAS GIVEN THE RESPONSIBILITY OF

15   ESTABLISHING THESE GUIDELINES FOR USE BY DISTRICT JUDGES

16   IN SENTENCING IN CRIMINAL CASES.  ITS PRIMARY GOAL WAS TO

17   ESTABLISH A SENTENCE OF UNIFORM SENTENCING.  IN OTHER

18   WORDS, CONGRESS BELIEVED THAT ALL DEFENDANTS, NO MATTER

19   WHAT THEIR RACE OR GENDER OR ECONOMIC BACKGROUND OR

20   STANDING IN SOCIETY OR ANY OF THE OTHER THINGS THAT WE USE

21   TO DIVIDE PEOPLE IN OUR SOCIETY TODAY WOULD BE BASICALLY

22   IRRELEVANT, IT SHOULDN'T MATTER, THAT PEOPLE OUGHT TO BE

23   TREATED THE SAME, REGARDLESS OF THEIR WEALTH OR STANDING

24   OR EDUCATION OR RACE OR GENDER, AND THAT, I THINK, MOST

25   PEOPLE WOULD AGREE IS A PROPER GOAL OF SENTENCING; BUT THE

GUIDELINE RANGE COMES TO THIS COURT NOW UNDER AN ADVISORY
GUIDELINE RANGE SYSTEM AS BASICALLY A RECOMMENDATION FROM
THE UNITED STATES SENTENCING COMMISSION AS TO WHAT THE
SENTENCE OUGHT TO BE IN A CASE WHERE A DEFENDANT HAS A
TOTAL OFFENSE LEVEL OF 41 AND A CRIMINAL HISTORY CATEGORY
OF I.  BUT WHEN THE SENTENCING COMMISSION WAS CREATED,
CONGRESS GAVE THE COMMISSION A MANDATE, A MANDATE TO
ESTABLISH THESE RANGES, BUT TO DO SO ONLY AFTER CONSIDER-
ING ALL THE 3553(A) FACTORS LISTED IN THAT CODE SECTION,
AND JUST ABOUT EVERYTHING IN MY EXPERIENCE SUGGESTS TO ME
THAT THE SENTENCING COMMISSION HAS DONE EXACTLY THAT OVER
THE LAST 30 YEARS.

HAVING SAID THAT TO YOU, THE GUIDELINE RANGE IS
STILL ADVISORY, WHICH MEANS I'M NOT REQUIRED TO SENTENCE
WITHIN THAT RANGE.  BECAUSE IT'S ADVISORY THOUGH, I GO ON
TO LOOK AT THE OTHER 3553(A) FACTORS, ONE OF WHICH IS THE
ONE I JUST MENTIONED.  GUIDELINE RANGE SENTENCES PROMOTE
UNIFORMITY IN SENTENCING, THAT'S 3553(A)(6).  CONGRESS
PHRASED IT A LITTLE BIT DIFFERENTLY, CONGRESS DIRECTED ME
TO TRY TO AVOID UNWARRANTED SENTENCE DISPARITIES AMONG
DEFENDANTS WHO HAVE BEEN CONVICTED OF SIMILAR CONDUCT AND
WHO HAVE A SIMILAR CRIMINAL HISTORY.

AS I SAID, I THINK THAT IS A FAIR AND APPRO-
PRIATE GOAL OF SENTENCING, AND THE SIXTH CIRCUIT AND OTHER
CIRCUITS, AS THE GOVERNMENT ARGUES HERE, HAVE INDICATED

1   THAT SENTENCING A DEFENDANT WITHIN A PROPERLY CALCULATED

2   ADVISORY GUIDELINE RANGE DOES IN FACT PROMOTE UNIFORMITY

3   IN SENTENCING, THAT'S BECAUSE OF ALL THE WORK THE SENTENC-

4   ING COMMISSION HAS DONE OVER THE LAST 30 PLUS YEARS WITH

5   RESPECT TO THE 3553(A) FACTORS.  THEY HAVE SIMPLY GATHERED

6   REAMS AND REAMS AND REAMS OF STATISTICAL DATA AND DOCU-

7   MENTS.  THEY HAVE HEARD FROM EXPERTS, THEY HAVE EXAMINED

8   BOTH STATE AND FEDERAL SENTENCING RECORDS, AND I THINK THE

9   SENTENCING COMMISSION HAS DONE A GOOD FAITH EFFORT AT

10   DOING WHAT CONGRESS TOLD THEM TO DO.  SO THE GUIDELINE

11   RANGE IS IMPORTANT, IT HAS LESS IMPORTANCE IN THIS CASE

12   SIMPLY BECAUSE THE GOVERNMENT ASKS ME TO IMPOSE A SENTENCE

13   BELOW THAT ADVISORY GUIDELINE RANGE, BUT THAT IS THE

14   STARTING POINT.

15           BEYOND THAT THOUGH, THERE ARE SOME FACTORS IN

16   THIS CASE, AND SOMETIMES IN OTHERS, THAT ARE VERY IMPOR-

17   TANT.  I BEGIN GENERALLY BY LOOKING TO THE SERIOUSNESS OF

18   THE OFFENSE.  DESPITE WHAT YOU HAVE SAID THIS MORNING,

19   DR. YOU, THE PROOF IN THIS CASE ESTABLISHED AND THE JURY

20   FOUND THAT YOU HAD IN YOUR POSSESSION STOLEN TRADE

21   SECRETS, AND I WOULD GO FURTHER AND SAY THAT THE PROOF IN

22   THE CASE ESTABLISHED THAT YOU STOLE THEM, AND THAT YOU

23   INTENDED TO PROVIDE THOSE TO A FOREIGN GOVERNMENT.

24           I THINK IT IS WELL KNOWN, AND IT WAS ESTAB-

25   LISHED ALSO BY THE TRIAL TESTIMONY IN THE CASE, THAT THE

1    CHINESE COMMUNISTS HAVE ENGAGED OVER THE LAST SEVERAL

2    YEARS IN A SUSTAINED, INTENTIONAL EFFORT TO STEAL TRADE

3    SECRETS FROM AMERICA.  I DESCRIBED THE PEOPLE'S REPUBLIC

4    OF CHINA EARLIER AS THE ENEMY, THE ECONOMIC ENEMY OF THE

5    UNITED STATES.  IT IS.  IT IS THE NUMBER ONE THREAT IN THE

6    WORLD TODAY TO THE ECONOMIC WELL-BEING OF THE UNITED

7    STATES.  IT ALSO CAN BE CATEGORIZED AS A POLITICAL,

8    POTENTIAL MILITARY ENEMY OF THE UNITED STATES AS WELL;

9    AND SO THE PROOF ESTABLISHED, AND I DON'T THINK THIS IS

10   TOO HARSH A THING TO SAY, THAT IT WAS YOUR INTENT BECAUSE

11   YOU POSSESSED THESE TRADE SECRETS TO PROVIDE THEM TO A

12   FOREIGN ENTITY THAT IS AT ECONOMIC WAR WITH THE UNITED

13   STATES.  I AGREE WITH THE GOVERNMENT THAT THAT REPRESENTS

14   A BETRAYAL NOT ONLY OF YOUR EMPLOYER, BUT A BETRAYAL OF

15   THE UNITED STATES.

16           YOU KNOW, I TOLD YOU JUST A FEW MINUTES AGO

17   THAT ONE OF THE MOST UNPLEASANT THINGS I DO, IN FACT THE

18   MOST UNPLEASANT THING I DO AS A JUDGE IS IMPOSE SENTENCE

19   IN A CRIMINAL CASE.  THE THING I LIKE MOST ABOUT MY JOB

20   AND THE THING I TAKE THE GREATEST PLEASURE FROM, ON THE

21   OTHER HAND, ARE NATURALIZATION CEREMONIES.

22           I REACHED OVER A FEW MINUTES AGO WHEN YOU WERE

23   MAKING REFERENCE TO YOUR OWN NATURALIZATION AND GOT THE

24   OATH THAT I ADMINISTER WHEN NON-CITIZENS TAKE THE OATH OF

25   CITIZENSHIP.  THE VERY FIRST LINE OF THAT OATH REQUIRES

THE DECLARANT TO DECLARE UNDER OATH THAT HE OR SHE

ABSOLUTELY AND ENTIRELY RENOUNCES ALL ALLEGIANCE AND

FIDELITY TO ANY FOREIGN PRINCE, POTENTATE, STATE OR

SOVEREIGNTY. THAT MEANS WHEN YOU TOOK THE OATH OF CITI-

ZENSHIP, YOU COMPLETELY RENOUNCED ANY LOYALTY, ANY

FIDELITY, ANY ALLEGIANCE TO THE COUNTRY OF YOUR BIRTH, AND

YOU CHOSE TO TRANSFER THAT ABSOLUTE ALLEGIANCE AND LOYALTY

TO THE UNITED STATES OF AMERICA.

ONE OF THE REASONS I ENJOY THOSE NATURALIZATION

CEREMONIES IS BECAUSE I ENJOY SEEING THE EXCITEMENT ON THE

FACES OF THOSE NEW CITIZENS, I ENJOY HEARING THEIR STORIES

ABOUT WHY THEY HAVE CHOSEN TO BECOME CITIZENS OF THE

UNITED STATES; AND AT NATURALIZATION CEREMONIES I

TYPICALLY GO AROUND THE ROOM AND ASK EACH ONE OF THE NEW

CITIZENS IF THERE'S ANYTHING THEY'D LIKE TO SAY TO THE

COURT ABOUT WHY THEY WANT TO BECOME CITIZENS OR WHY THEY

HAVE WORKED HARD TO BECOME CITIZENS, AND THOSE STORIES ARE

INSPIRING TO ME. THEY MAKE ME PROUD. AND EVERY NOW AND

THEN I WILL BE AT SOME EVENT WHEN SOMEBODY WILL WALK UP TO

ME AND ASK IF I REMEMBER THEM, I HATE TO SAY THAT I OFTEN

DON'T, BUT THEY HAVE A PICTURE THAT WAS TAKEN WITH ME AT A

NATURALIZATION CEREMONY, AND THEY WANT TO TALK TO ME ABOUT

THAT CEREMONY AND ABOUT HOW INSPIRING IT WAS AND ABOUT HOW

WELL THEY HAVE DONE SINCE THEY BECAME A CITIZEN. THEY ALL

COME HERE FOR THE SAME REASON, I KNOW THERE ARE VARIATIONS

1    OF IT, SOME ARE ESCAPING POOR CONDITIONS WHERE THEY LIVED

2    BEFORE, BUT THEY ALL COME HERE BECAUSE OF THE PROMISE OF

3    THE AMERICAN DREAM.  THAT'S WHAT MOTIVATED YOU, ACCORDING

4    TO YOUR STATEMENT THIS MORNING, AND YOU IN LARGE PART HAVE

5    REALIZED THE AMERICAN DREAM.  YOU RECEIVED A GOOD

6    EDUCATION, YOU HAD THE OPPORTUNITY TO WORK AT GOOD JOBS,

7    YOU HAVE MADE A GOOD LIVING FROM THOSE JOBS DOWN THROUGH

8    THE YEARS, AND THAT STORY IN AND OF ITSELF INSPIRES ME,

9    AND IT MAKES ME PROUD OF THE FACT THAT THAT'S WHAT LEGAL

10   CITIZENSHIP FOR NON-CITIZENS IS SUPPOSED TO PRODUCE.

11          THIS CASE AT ITS BASIC IS A CASE ABOUT A PERSON

12   WHO CHOSE TO BECOME A CITIZEN OF THE UNITED STATES, BUT

13   WHO THEN TOOK ACTIONS FOR REASONS THAT I'M NOT CLEAR OF,

14   EXCEPT FOR THE POSSIBILITY OF GREED, TO DO HARM TO

15   AMERICAN COMPANIES AND TO THE COUNTRY ITSELF.  SETTING

16   ASIDE ALL THE DISCUSSION ABOUT THE POTENTIAL LOSS OR THE

17   INTENDED LOSS, THAT'S WHAT THIS CASE BOILS DOWN TO, AND

18   THAT IS VERY TROUBLING TO ME.  THAT INDICATES TO ME THAT

19   THIS IS A VERY SERIOUS OFFENSE.

20          NOW, I'LL ACKNOWLEDGE, AND I SHOULD HAVE TALKED

21   ABOUT THIS WHEN I TALKED ABOUT THE WEIGHT TO BE GIVEN TO

22   THE ADVISORY GUIDELINES RANGE, THAT I AM TROUBLED A BIT BY

23   THE CONSTRUCTION OF THE GUIDELINE THAT LEADS TO THIS

24   GUIDELINE RANGE SENTENCE.  I'M TROUBLED, FIRST OF ALL,

25   ABOUT THE WAY LOSS IS TREATED UNDER THE GUIDELINES.  THE

1   CATEGORIES THAT RESULT IN THE INCREASE IN THE OFFENSE

2   LEVEL DEPENDING UPON THE AMOUNT ARE SOMEWHAT ARBITRARY,

3   AND THEY RANGE FROM A DIFFERENCE OF $6,500 ALL THE WAY UP

4   TO $300 MILLION IN, IN ESTABLISHING HOW LEVELS ARE ADDED

5   WITH RESPECT TO THE GUIDELINES.

6           FOR INSTANCE, UNDER THE GUIDELINES A LOSS OF

7   $6,500 OR LESS RESULTS IN NO INCREASE IN THE OFFENSE

8   LEVEL.  IF IT'S MORE THAN $6,500, BUT LESS THAN 15,000,

9   TWO LEVELS ARE ADDED; BUT WHEN YOU GET UP INTO THE UPPER

10  PART OF THE GUIDELINE RANGE, IF THE LOSS IS MORE THAN 250

11  MILLION BUT LESS THAN 550 MILLION, THERE'S A TWO LEVEL

12  INCREASE.  I'M NOT SURE I CAN SAY ANYTHING ABOUT THOSE

13  BREAKS EXCEPT THAT THEY ARE SOMEWHAT ARBITRARY.  AND IN A

14  CASE LIKE THIS, WHERE WE ARE DEALING WITH INTENDED LOSS

15  UNDER THE GUIDELINES RATHER THAN ACTUAL LOSS, I'M TROUBLED

16  EVEN MORE, ALTHOUGH WE HAVE IN MY VIEW PROPERLY CALCULATED

17  THE LOSS ACCORDING TO THE GUIDELINES, WHICH TELLS US TO

18  MAKE ONLY A REASONABLE ESTIMATE OF THE LOSS.  I'M TROUBLED

19  BY ANYTHING THAT INCLUDES THE WORD "ESTIMATE".  THAT BY

20  DEFINITION MEANS THAT WE CANNOT BE CERTAIN.  ESTIMATE

21  BASICALLY MEANS A GUESS, ALTHOUGH THERE'S A LITTLE MORE TO

22  IT THAN THAT HERE BECAUSE IT HAS TO BE REASONABLE, THERE

23  HAVE TO BE SOME FACTORS THAT JUSTIFY IT; BUT AT THE END OF

24  THE DAY IT DRIVES THE LOSS ESTIMATION IN THE CASE, IT IS

25  AN ESTIMATE, ALBEIT A REASONABLE ONE.

1          FOR ALL THESE YEARS THAT GUIDELINE HAS BEEN
2   ROUGHLY THE SAME, AND I'VE ALWAYS BEEN TROUBLED ABOUT THE
3   WAY THAT GUIDELINE IS CONSTRUCTED BECAUSE OF THE VERY
4   SIGNIFICANT IMPACT IT HAS ON A DEFENDANT'S OFFENSE LEVEL
5   AS THE LOSS INCREASES.
6          NOW, I AGREE GENERALLY WITH WHAT THE GOVERNMENT
7   ARGUES; THAT IS, THAT THE GREATER THE AMOUNT OF THE THEFT,
8   THE GREATER THE SENTENCE OUGHT TO BE.  I THINK MOST PEOPLE
9   WOULD AGREE WITH THAT.  AND IT MAY BE THAT THERE IS NO
10  BETTER WAY FOR THE SENTENCING COMMISSION TO DO IT THAN
11  WHAT I'VE JUST DESCRIBED, BUT IT'S TROUBLING TO ME BECAUSE
12  IT IS AN ESTIMATE; AND SO THE GUIDELINE RANGE CLEARLY HAS
13  LESS FORCE IN MY MIND ON THIS CASE BECAUSE ABOUT 60
14  PERCENT OF THE OFFENSE LEVELS COME FROM THE LOSS ESTIMATE
15  IN THE CASE, 24 LEVELS OF THE TOTAL OF 41 COME FROM THE
16  REASONABLE ESTIMATE OF THE LOSS.
17         AND AS WE AT LEAST IMPLICITLY, AND I THINK
18  SOMEWHAT EXPLICITLY ACKNOWLEDGED IN THE MEMORANDUM OPINION
19  THAT WAS JUST FILED, THERE WERE A LOT OF PIECES THAT HAD
20  TO COME TOGETHER BEFORE THIS SCHEME COULD BE COMPLETE; NOT
21  JUST THE COOPERATION OF THE ITALIAN COMPANY, BUT A LOT OF
22  OTHER THINGS AS WELL.  AND WHETHER THE PROFITS STATED BY
23  THAT APPLICATION HAD A REASONABLE BASIS TO THEM OR WHETHER
24  THAT WAS JUST SOME NUMBER THAT WAS HOPED FOR IS HARD TO
25  DETERMINE, BUT AT ITS BASIC THIS IS A VERY SERIOUS OFFENSE

1    IN MY OPINION.

2         ONE OTHER THING ABOUT THE SERIOUSNESS OF THIS

3    OFFENSE AND THE GUIDELINE RANGE, ABOUT 60 PERCENT OF MY

4    DOCKET IS COMPOSED OF DRUG AND FIREARM CASES.  FOR 19

5    YEARS OF DOING THIS I HAVE SEEN THESE POOR, UNEDUCATED,

6    DRUG ADDICTED DEALERS COME INTO THIS COURTROOM FACING WHAT

7    I CONSIDER TO BE VERY HARSH MANDATORY MINIMUM SENTENCES

8    AND VERY HARSH GUIDELINE CALCULATIONS; AND IN MANY CASES I

9    WILL SENTENCE THEM WITHIN THOSE GUIDELINE RANGES BECAUSE

10   OF THE HARM THAT THE DRUG TRAFFICKING THEY'RE ENGAGING IN

11   HAS BROUGHT TO THIS PART OF THE COUNTRY AND INDEED THE

12   WHOLE COUNTRY; AND I THINK ONE THING THAT JUDGES HAVE TO

13   BE CAREFUL ABOUT IS NOT CREATING A DOUBLE STANDARD HERE,

14   NOT TREATING THOSE POOR, UNEDUCATED, DRUG ADDICTED

15   DEFENDANTS IN A WAY THAT IS MORE HARSH THAN WELL EDUCATED,

16   WEALTHY, SOCIALLY CONNECTED DEFENDANTS ARE TREATED IN THE

17   COURT.

18         FAIRNESS IN SENTENCING IN MY VIEW MEANS JUST

19   THAT, THERE SHOULD NOT BE A DOUBLE STANDARD.  IN ALMOST

20   EVERY WHITE COLLAR CASE THERE IS BEFORE THE COURT A

21   DEFENDANT WHO LIKE YOU HAVE WORKED HARD, LARGELY BEEN A

22   LAW ABIDING CITIZEN, WHO HAS REALIZED THE AMERICAN DREAM

23   TO ONE EXTENT OR ANOTHER, WHO HAS DONE GOOD WORKS AND

24   CHARITABLE DEEDS, THE COURT AND ALL COURTS INDEED HAVE TO

25   BE CAREFUL THAT WE DON'T CREATE A DOUBLE STANDARD WHEN

1   VIEWING THOSE CASES.

2         I'M ALSO REQUIRED TO CONSIDER THE NEED TO

3   PROMOTE RESPECT FOR THE LAW.  DR. YOU, ON PAPER YOU ARE

4   ONE OF THE MOST UNLIKELY PEOPLE TO COMMIT THIS OFFENSE.

5   YOU WORKED HARD TO BECOME A CITIZEN, YOU WORKED HARD TO

6   GET YOUR EDUCATION, YOU WORKED HARD TO EARN THE STANDARD

7   OF LIVING THAT YOU HAD REALIZED, YOU HELD POSITIONS OF

8   TRUST IN THESE COMPANIES.  THEY HAD ENTRUSTED YOU WITH

9   VERY IMPORTANT AND SECRET PROPRIETARY INFORMATION.  AS I

10   THINK ABOUT THE POSSIBLE REASONS WHY YOU DID WHAT YOU DID,

11   THE ONLY ONE THAT MAKES ANY SENSE TO ME, FRANKLY, IS

12   GREED; AND I'M AFRAID I REJECT HERE TODAY YOUR REPRESEN-

13   TATION TO THE COURT THAT THIS WAS JUST A SIMPLE MISTAKE, A

14   MISTAKE OF RETAINING SOMETHING THAT HAD BEEN LEGALLY

15   ENTRUSTED TO YOU BY THESE COMPANIES.  IT WAS NOT.  THERE

16   WAS AN INTENTIONAL EFFORT TO RETRIEVE AND RETAIN THESE

17   FILES; AND ALTHOUGH YOU HAVE DENIED IT TODAY, SOMEBODY

18   WENT INTO THOSE FILES AND REMOVED THE COMPANY NAMES AND

19   RENAMED THE FILES.  THE ONLY REASON I CAN THINK OF FOR

20   THAT IS TO CONCEAL WHAT'S BEEN DONE, AND THERE IS NO

21   PLAUSIBLE EXPLANATION OTHERWISE.

22         THERE WAS A SIGNIFICANT DEGREE OF DECEPTION ON

23   YOUR PART TO TRY TO AVOID DETECTION, AND IT MAY SIMPLY BE

24   A COINCIDENCE THAT AT THE SAME TIME YOU AND OTHERS ASSO-

25   CIATED WITH YOU WERE PURSUING AN EFFORT IN THE PEOPLE'S

1  REPUBLIC OF CHINA TO OBTAIN GOVERNMENT GRANTS TO START A

2  COMPANY MANUFACTURING BPA-FREE COATINGS, I DON'T THINK IT

3  WAS A COINCIDENCE.

4           WITH RESPECT TO THE FACTOR OF PROMOTING RESPECT

5  FOR THE LAW, I THINK AT LEAST ON PAPER I WOULD AGREE WITH

6  BOTH THE GOVERNMENT AND MR. SHIPLEY THAT YOU ARE UNLIKELY

7  TO COMMIT OTHER CRIMES.  I TEMPER THAT A BIT THOUGH BY

8  WHAT APPEARS TO ME TO BE A COMPLETE LACK OF ACCEPTANCE OF

9  RESPONSIBILITY AND ANY SHOWING OF REMORSE.  TO CHARAC-

10  TERIZE THIS AS A SIMPLE MISTAKE, TO ARGUE TO THIS COURT

11  TODAY THAT YOU WERE IN COMPLETE IGNORANCE ABOUT WHAT OTHER

12  PEOPLE WERE DOING DEFIES CREDIBILITY.

13          NOW, I REALIZE YOU DIDN'T TESTIFY AT TRIAL.  I

14  REALIZE YOU'VE TRIED TO TELL ME SOME THINGS TODAY THAT

15  MAYBE YOU WOULD HAVE TESTIFIED TO AT TRIAL, BUT THE SIMPLE

16  FACT OF THE MATTER IS THAT NONE OF THAT TESTIMONY WAS

17  BEFORE THIS JURY; AND SO ABSENT LACK OF REMORSE, ABSENT

18  ACCEPTANCE OF RESPONSIBILITY, IT'S DIFFICULT TO MAKE THE

19  DETERMINATION THAT THE GOVERNMENT AND THE DEFENSE HAS MADE

20  HERE ABOUT THE LACK OF -- THE POSSIBILITY OF RECIDIVISM,

21  THAT'S THE POSSIBILITY OF REOFFENDING.

22          I WOULD ALSO NOTE ONE OTHER THING THAT GOES TO

23  BOTH THE SERIOUSNESS OF THE OFFENSE AND THE NEED TO

24  PROMOTE RESPECT FOR THE LAW, AND THAT IS THIS 800 POUND

25  ELEPHANT IN THE ROOM THAT THERE WAS UNCONTRADICTED

1   TESTIMONY AT THE TRIAL OF THIS CASE THAT THESE TRADE

2   SECRETS WERE DOWNLOADED TO A DEVICE THAT HAS NEVER BEEN

3   RECOVERED BY THE AUTHORITIES.  WHEN I READ THE VICTIM

4   IMPACT STATEMENTS IN THIS CASE, AT LEAST ONE OF THOSE

5   COMPANIES EXPRESSED CONCERN THAT YOU MIGHT BE RELEASED

6   FROM PRISON SOON AND MIGHT TRANSFER THOSE SECRETS, IF

7   THEY'RE STILL IN YOUR POSSESSION, TO SOMEONE ELSE OR TO

8   SOME FOREIGN ENTITY.

9          I DON'T KNOW WHERE THE DEVICE IS.  THE PRE-

10  PONDERANCE OF THE EVIDENCE CERTAINLY SUGGESTS, IN FACT I'D

11  SUGGEST THAT PROOF BEYOND A REASONABLE DOUBT ESTABLISHES

12  THAT THERE IN FACT WAS ANOTHER DEVICE; BUT BEYOND THAT, WE

13  HAVE TO SPECULATE TO KNOW WHERE IT IS, WHOSE POSSESSION

14  IT'S IN OR WHAT THE INTENDED USE OF IT IS.  IF THIS WAS A

15  SIMPLE MISTAKE ON YOUR PART, I WOULD HAVE THOUGHT THAT

16  BETWEEN THE TIME OF THAT JURY VERDICT AND NOW YOU WOULD

17  HAVE MADE EVERY EFFORT TO EXPLAIN THAT PART OF THIS CASE.

18  YOU HAVEN'T.  THE DEVICE HASN'T BEEN PRODUCED.  IT'S STILL

19  OUT THERE.

20         I AM ALSO REQUIRED TO CONSIDER THE NEED TO

21  PROVIDE JUST PUNISHMENT FOR THE OFFENSE.  JUST PUNISHMENT

22  IS SOMEWHAT OF A SUBJECTIVE TERM.  PEOPLE COULD REASONABLY

23  DISAGREE ON WHAT A TERM OF JUST PUNISHMENT MIGHT BE.  A

24  LOT OF SOCIAL SCIENTISTS WILL ARGUE THAT PUNISHMENT SHOULD

25  NOT BE A GOAL OF SENTENCING, THAT REHABILITATION OUGHT TO

BE THE ONLY GOAL OF SENTENCING. I TEND TO DISAGREE WITH THAT BECAUSE I THINK ACTIONS HAVE CONSEQUENCES, AND THEY NEED TO HAVE CONSEQUENCES; BUT EVEN IF I DIDN'T THINK THAT, CONGRESS HAS DIRECTED ME TO CONSIDER THE NEED FOR A JUST PUNISHMENT IN THE CASE. IN OTHER WORDS, CONGRESS INJECTED INTO THIS AN ELEMENT OF RETRIBUTION, PUNISHMENT.

I'M ALSO REQUIRED TO CONSIDER THE NEED TO AFFORD ADEQUATE DETERRENCE TO CRIMINAL CONDUCT. WHEN I CAME INTO THE COURTROOM TODAY, I PROBABLY WOULD HAVE CONCLUDED THAT THE MERE FACT OF BEING CHARGED WITH THESE FELONY OFFENSES, THE MERE POSSIBILITY OF STANDING BEFORE THIS COURT FACING A POTENTIAL LIFE SENTENCE, ALL OF THE ATTENDANT EMBARRASSMENT AND LIKELY LOSS OF PROFESSIONAL LICENSES AND THAT SORT OF THING, THAT THOSE CONSEQUENCES, THOSE COLLATERAL CONSEQUENCES MIGHT BE ENOUGH TO DETER YOU. I'M UNCERTAIN OF THAT AFTER LISTENING TO YOUR STATEMENT, BUT I'LL GIVE YOU THE BENEFIT OF THE DOUBT; AND I'LL AT LEAST SAY THIS, SPECIFIC DETERRENCE, THAT IS DETERRENCE DIRECTED TO YOU, IS A LESS SIGNIFICANT FACTOR IN THIS CASE THAN IS GENERAL DETERRENCE.

GENERAL DETERRENCE GOES, FRANKLY, TO THE MESSAGE THAT'S SENT BY THIS COURT TO OTHER PEOPLE WHO ARE IN SIMILAR POSITIONS OF TRUST WITH THEIR EMPLOYERS, WHO HAVE ACCESS TO THESE KINDS OF TRADE SECRETS, AND THE COURT CANNOT BE A PARTY, IN MY VIEW, TO SENDING ANY KIND OF A

MESSAGE THAT THAT'S NOT A SERIOUS OFFENSE IF YOU POSSESS
THOSE OR STEAL THEM; AND WHEN THOSE WERE INTENDED TO BE
PROVIDED TO AND SOME EFFORT WAS MADE TO PROVIDE THEM TO A
FOREIGN ENTITY, I THINK THE NEED FOR GENERAL DETERRENCE IS
EVEN GREATER IN THE CASE.  NOW, OF COURSE, DETERMINING THE
AMOUNT OF IMPRISONMENT THAT'S REQUIRED TO PROVIDE A
DETERRENT EFFECT IS A MORE DIFFICULT QUESTION.

            TO PROVIDE YOU WITH NEEDED EDUCATIONAL OR
VOCATIONAL TRAINING, MEDICAL CARE OR OTHER CORRECTIONAL
TREATMENT IN THE MOST EFFECTIVE MANNER IS ANOTHER FACTOR
I'M TOLD TO CONSIDER.  NOBODY HAS ARGUED THAT THAT'S
REALLY A FACTOR IN THIS CASE.

            GOING BACK TO 3553(A)(6), AS I SAID TO YOU
EARLIER, I AM DIRECTED TO AVOID UNWARRANTED SENTENCE
DISPARITIES AMONG DEFENDANTS WITH SIMILAR RECORDS WHO HAVE
BEEN CONVICTED OF SIMILAR CONDUCT; IN OTHER WORDS,
UNIFORMITY IN SENTENCING.

            NOW, BOTH PARTIES HAVE CITED TO THE COURT
VARIOUS OTHER CASES IN OTHER JURISDICTIONS SO THAT THE
COURT CAN COMPARE, FRANKLY, THE POTENTIAL OUTCOME IN THIS
CASE WITH WHAT HAPPENED IN THOSE OTHER CASES.  THE SIXTH
CIRCUIT, OF COURSE, HAS MADE IT VERY CLEAR THAT THOSE ARE
NOT THE KIND OF DISPARITIES THAT THE COURT NEEDS TO
CONSIDER WITH RESPECT TO 3553(A)(6).

            THE ONLY DISPARITY THAT I AM TO CONSIDER IS

1   WHETHER THERE IS A NATIONWIDE DISPARITY OR NOT; AND, YET,

2   I'M FREE, IF I CHOOSE TO, AT LEAST IN THE SIXTH CIRCUIT,

3   TO CONSIDER YOUR CASE IN COMPARISON WITH ANOTHER SPECIFIC

4   CASE; BUT THE THING THAT MAKES THAT DIFFICULT IS THAT I

5   DON'T KNOW ALL THE CIRCUMSTANCES OF THOSE OTHER CASES.  I

6   DON'T KNOW WHAT THE LOSS AMOUNT WAS NECESSARILY, I DON'T

7   KNOW HOW IT WAS CALCULATED, I DON'T KNOW WHETHER THERE WAS

8   A REDUCTION IN OFFENSE LEVEL FOR ACCEPTANCE OF RESPONSI-

9   BILITY, I DON'T KNOW WHETHER THERE WAS A MOTION MADE BY

10  THE GOVERNMENT TO REDUCE THE OFFENSE LEVEL BASED ON

11  COOPERATION, I DON'T KNOW WHAT SPECIFIC OFFENSE CHARAC-

12  TERISTICS WERE APPLIED IN THE CASE; AND BECAUSE I DON'T

13  KNOW THAT INFORMATION, IT MAKES A COMPARISON OF INDIVIDUAL

14  CASES NOT VERY HELPFUL.  I WILL SAY THAT THE ONE CASE THAT

15  SEEMS TO BE MOST LIKE THIS ONE RESULTED IN A VERY

16  SIGNIFICANT SENTENCE, BUT THERE IS NOT ONE THAT'S EXACTLY

17  LIKE THIS.

18          I'M ALSO REQUIRED UNDER ADVISORY GUIDELINES TO

19  CONSIDER, FIRST OF ALL, THE NATURE AND CIRCUMSTANCES OF

20  THE OFFENSE AND YOUR HISTORY AND CHARACTERISTICS.  YOUR

21  INVOLVEMENT IN THIS OFFENSE IS BASED ON THE RECORD BEFORE

22  THE COURT, WHAT WAS FOUND BY THE JURY.  THAT'S UNFORTU-

23  NATE.  THINGS THAT YOU'VE TOLD ME TODAY ABOUT NOT WRITING

24  ANY OF THESE APPLICATIONS OR DOCUMENTS, ABOUT NOT SIGNING

25  THE APPLICATION, ABOUT IN FACT REJECTING OR DISAPPROVING

OF BUSINESS PLANS OR PROJECT PLANS OR THAT SORT OF THING,
NONE OF THAT IS IN THE RECORD.  EVEN IF IT HAD BEEN IN THE
RECORD BEFORE THE JURY, I'M NOT AT ALL CERTAIN THAT IT
WOULD HAVE MADE ANY DIFFERENCE IN LIGHT OF THE OTHER
PROOF.

YOU INDICATE TO ME THAT THERE SHOULD BE, I
CAN'T REMEMBER THE NAME, WAS IT WECHAT MESSAGES, SHOWING
YOUR DISAPPROVAL OR YOUR REJECTION OF THOSE PLANS, AND YET
NONE HAS EVER BEEN PRODUCED.  YOU'VE NOT POINTED TO ANY-
THING IN THE GOVERNMENT'S DISCOVERY THAT SUGGESTS THAT
THAT'S ACTUALLY WHAT HAPPENED IN THE CASE.

YOUR PERSONAL HISTORY AND CHARACTERISTICS MAY
BE THE THING THAT GIVES ME THE MOST PAUSE HERE.  IF YOUR
STORY UP TO THIS POINT SIMPLY ENDED WITH YOU LEAVING
COCA-COLA OR EASTMAN WITHOUT TAKING THOSE FILES, THEN I
WOULD SAY THAT YOU HAVE BEEN THE IDEAL PERSON FOR
NATURALIZED CITIZENSHIP IN THIS COUNTRY.  YOU TOOK ADVAN-
TAGE OF THE OPPORTUNITIES, YOU GOT AN EDUCATION, YOU
WORKED AT PRODUCTIVE JOBS, YOU MADE A CONTRIBUTION TO YOUR
EMPLOYERS, YOU MADE A CONTRIBUTION TO THE SCIENCE; AND IF
IT STOPPED RIGHT THERE, I'D BE PROUD TO SAY THAT I'M PROUD
OF YOU FOR ACCOMPLISHING THOSE THINGS, BUT IT DOESN'T STOP
THERE.  WHY SOMEBODY WHO HAS REALIZED THE AMERICAN DREAM,
SOMEBODY WHO HAS ACHIEVED THE KIND OF PROFESSIONAL
DISTINCTION YOU HAVE ACHIEVED, WOULD HAVE THESE STOLEN

TRADE SECRETS IS HARD TO EXPLAIN.

YOU'RE SOMEWHAT OF A SYMPATHETIC DEFENDANT. YOU'RE SLIGHT IN BUILD; JUST BY LOOKING AT YOU, YOU'RE A LITTLE BIT SYMPATHETIC.  ON THE OTHER HAND, YOU ARE A VERY INTELLIGENT PERSON.  AND I WOULD SUGGEST TO YOU, DR. YOU, THAT EITHER YOU'RE JUST INTENTIONALLY LYING TO THE COURT OR YOU HAVE DELUDED YOURSELF INTO BELIEVING ALL THAT YOU'VE TOLD ME THIS MORNING BECAUSE ALL OF THE EVIDENCE IN THE CASE INDICATES OTHERWISE.

I'M ALSO REQUIRED TO CONSIDER ONE LAST FACTOR, AND THAT IS THE NEED TO PROVIDE RESTITUTION TO ANY VICTIMS; AND THAT'S NOT REALLY A MAJOR CONSIDERATION HERE SIMPLY BECAUSE THERE IS A SMALL REQUEST FOR RESTITUTION FROM ONE OF THE AFFECTED COMPANIES HERE, A LITTLE BIT OVER $11,000, AND YOU DON'T OBJECT TO THAT, SO I'LL ORDER THAT AS PART OF THE FINAL JUDGMENT IN THE CASE.

DR. YOU, I WOULD ULTIMATELY LIKE TO IMPOSE A SENTENCE HERE THAT GIVES YOU SOME HOPE OF ULTIMATELY SERVING THE SENTENCE AND STILL HAVING SOME PRODUCTIVE LIFE TO LIVE.  THE IDEA OF IMPOSING WHAT MIGHT AMOUNT TO A LIFE SENTENCE IN THE CASE DOES NOT APPEAL TO ME, AT LEAST EMOTIONALLY.  ON THE OTHER HAND, THERE IS THAT UNEXPLAINED TRANSFER OF THESE TRADE SECRETS TO ANOTHER DEVICE THAT HAS NOT BEEN ACCOUNTED FOR.

I BELIEVE IT WAS THE EASTMAN VICTIM IMPACT

1    STATEMENT THAT EXPRESSED CONSIDERABLE CONCERN ABOUT THE

2    FACT THAT YOU MIGHT BE RELEASED FROM PRISON.  IT WAS

3    CERTAINLY ONE OF THEM.  I MAY HAVE MIXED IT UP WITH

4    ANOTHER ONE, BUT I BELIEVE IT WAS THE EASTMAN LETTER THAT

5    EXPRESSED CONCERN ABOUT YOU BEING ABLE TO BE RELEASED AND

6    THEN HAVE ACCESS TO THAT SOMEHOW.

7            SO I HAVE TO TAKE ALL OF THAT, DR. YOU, CON-

8    SIDER IT ALL TOGETHER, AND ULTIMATELY ARRIVE AT A SENTENCE

9    THAT IS SUFFICIENT BUT NOT GREATER THAN NECESSARY.  ONE

10   THING THAT IS CLEAR TO ME, A SENTENCE OF 36 MONTHS, THAT

11   IS TIME SERVED, IS NOT SUFFICIENT IN THIS CASE.  TO IMPOSE

12   SUCH A SENTENCE, AS YOU REQUEST, WOULD IN MY VIEW DIMINISH

13   THE SERIOUSNESS OF THIS OFFENSE IN THE PUBLIC'S MIND.  IT

14   WOULD, IN FACT, UNDERCUT THE NEED FOR DETERRENCE, THE NEED

15   FOR RESPECT FOR THE LAW, AND SO I CAN'T DO THAT.

16           THE THING THAT I'M DEBATING IS WHETHER OR NOT

17   IT'S NECESSARY TO IMPOSE THE 240 MONTH SENTENCE ADVOCATED

18   BY THE GOVERNMENT TO ACCOMPLISH THOSE PURPOSES.  I HAVE

19   CONCLUDED IT'S NOT, SO I'M GOING TO VARY FROM THE

20   GUIDELINE RANGE AND FROM THE REQUESTED SENTENCE BY THE

21   GOVERNMENT, BUT NOT IN A WAY THAT I SUSPECT WILL PLEASE

22   YOU BECAUSE I THINK THERE HAS TO BE, FOR THE REASONS I'VE

23   STATED, A VERY SIGNIFICANT SENTENCE IMPOSED IN THIS CASE.

24           HAVING CONSIDERED THE NATURE AND CIRCUMSTANCES

25   OF THE OFFENSE, YOUR HISTORY AND CHARACTERISTICS, THE

1   ADVISORY GUIDELINE RANGE WHICH APPLIES TO THIS CASE, AS

2   WELL AS ALL OF THE OTHER FACTORS LISTED IN TITLE 18,

3   UNITED STATES CODE, SECTION 3553(A), IT IS PURSUANT TO THE

4   SENTENCING REFORM ACT OF 1984 THE JUDGMENT OF THIS COURT

5   THAT THE DEFENDANT, XIAORONG YOU, IS HEREBY COMMITTED TO

6   THE CUSTODY OF THE BUREAU OF PRISONS TO BE IN PRISON FOR A

7   TERM OF 120 MONTHS AS TO EACH OF COUNTS 1 THROUGH 9 TO BE

8   SERVED CONCURRENTLY.

9           LET ME MAKE SURE I'VE GOT THE STATUTORY

10  MAXIMUMS IN FRONT OF ME.

11          I ACTUALLY SAID 1 THROUGH 9, I SHOULD HAVE SAID

12  1 THROUGH 8.  A SENTENCE OF 168 MONTHS AS TO COUNT 9 AND

13  10, AND A SENTENCE OF 160 MONTHS AS TO COUNT 11, TO BE

14  SERVED CONCURRENTLY TO EACH OTHER AND TO THE SENTENCES

15  IMPOSED IN COUNTS 1 THROUGH 8 -- DID I GET THAT RIGHT,

16  MS. JOSEPH -- FOR A NET EFFECTIVE SENTENCE OF 166 MONTHS.

17          PROBATION OFFICER JOSEPH:  DID YOU SAY 120 FOR

18  COUNTS 1 THROUGH 8, AND THEN -- I THOUGHT YOU SAID 168,

19  DID YOU SAY 166?

20          THE COURT:  I SAID 168.  I MEANT TO SAY 168.

21          THE CLERK:  YES, THAT'S WHAT YOU SAID, YOUR

22  HONOR.

23          THE COURT:  WHICH IS, JUST SO THE RECORD IS

24  CLEAR, 14 YEARS.

25          PROBATION OFFICER JOSEPH:  FOR COUNTS 9 AND 10?

1          THE COURT:  FOR COUNTS 9, 10 AND 11.

2          PROBATION OFFICER JOSEPH:  AND 11, OKAY.

3          THE COURT:  ALL RIGHT, NET EFFECTIVE SENTENCE

4    OF 168 MONTHS.

5          IT IS FURTHER ORDERED THAT YOU SHALL PAY A FINE

6    IN THE AMOUNT OF $200,000, AND INTEREST IS WAIVED ON THAT

7    FINE.

8          THE COURT MAY ENFORCE THE FULL AMOUNT OF THE

9    FINE ORDERED AT ANY TIME PURSUANT TO TITLE 18, UNITED

10   STATES CODE, SECTIONS 3612 AND 3613.

11         I WILL RECOMMEND THAT YOU RECEIVE A COMPLETE

12   PHYSICAL HEALTH EVALUATION AS WELL AS A MENTAL HEALTH

13   EVALUATION AND ANY NEEDED TREATMENT WHILE IN THE CUSTODY

14   OF THE BUREAU OF PRISONS.

15         UPON RELEASE FROM IMPRISONMENT, YOU SHALL BE

16   PLACED ON SUPERVISED RELEASE FOR A TERM OF 3 YEARS AS TO

17   EACH COUNT TO RUN CONCURRENTLY FOR A NET EFFECTIVE TERM OF

18   3 YEARS.

19         WHILE ON SUPERVISED RELEASE YOU SHALL NOT

20   COMMIT ANOTHER FEDERAL, STATE OR LOCAL CRIME.  YOU MUST

21   NOT UNLAWFULLY POSSESS AND YOU MUST REFRAIN FROM THE USE

22   OF ANY CONTROLLED SUBSTANCE.

23         YOU MUST COMPLY WITH THE STANDARD CONDITIONS

24   THAT HAVE BEEN ADOPTED BY THIS COURT IN LOCAL RULE 83.10.

25   IN PARTICULAR, YOU MUST NOT OWN, POSSESS OR HAVE ACCESS TO

A FIREARM, ANY AMMUNITION, A DESTRUCTIVE DEVICE OR ANY
DANGEROUS WEAPON.

A MANDATORY DRUG TESTING CONDITION IN THIS CASE
IS SUSPENDED BASED ON THE COURT'S DETERMINATION THAT YOU
POSE A LOW RISK OF FUTURE SUBSTANCE ABUSE.

YOU SHALL COOPERATE IN THE COLLECTION OF DNA AS
DIRECTED.

IN ADDITION, YOU SHALL COMPLY WITH THE FOLLOW-
ING SPECIAL CONDITIONS:  FIRST, YOU SHALL PARTICIPATE IN A
PROGRAM OF MENTAL HEALTH TREATMENT AS DIRECTED BY THE
PROBATION OFFICER UNTIL SUCH TIME AS YOU ARE RELEASED FROM
THE PROGRAM BY THE PROBATION OFFICER.  YOU MUST WAIVE ALL
RIGHTS TO CONFIDENTIALITY REGARDING MENTAL HEALTH
TREATMENT IN ORDER TO ALLOW RELEASE OF INFORMATION TO THE
SUPERVISING UNITED STATES PROBATION OFFICER AND TO
AUTHORIZE OPEN COMMUNICATION BETWEEN THE PROBATION OFFICER
AND THE MENTAL HEALTH TREATMENT PROVIDER.

SECOND, YOU SHALL SUBMIT YOUR PERSON, PROPERTY,
HOUSE, RESIDENCE, VEHICLE, PAPERS, OR OFFICE TO A SEARCH
CONDUCTED BY A UNITED STATES PROBATION OFFICER OR
DESIGNEE.  FAILURE TO SUBMIT TO A SEARCH MAY BE GROUNDS
FOR REVOCATION OF RELEASE.

YOU MUST WARN ANY OTHER OCCUPANTS THAT THE
PREMISES MAY BE SUBJECT TO SEARCH PURSUANT TO THIS
CONDITION.  AN OFFICER MAY CONDUCT A SEARCH PURSUANT TO

1    THIS CONDITION ONLY WHEN REASONABLE SUSPICION EXISTS THAT

2    YOU HAVE VIOLATED A CONDITION OF YOUR SUPERVISION AND THAT

3    THE AREAS TO BE SEARCHED CONTAIN EVIDENCE OF THE

4    VIOLATION.  ANY SEARCH MUST BE CONDUCTED AT A REASONABLE

5    TIME AND IN A REASONABLE MANNER.

6              THIRD, YOU SHALL PAY ANY FINANCIAL PENALTY THAT

7    IS IMPOSED BY THIS JUDGMENT AS A CONDITION OF SUPERVISED

8    RELEASE.  ANY AMOUNT THAT REMAINS UNPAID AT THE COMMENCE-

9    MENT OF THE TERM OF SUPERVISED RELEASE SHALL BE PAID ON A

10   MONTHLY BASIS AT THE AMOUNT OF AT LEAST 10 PERCENT OF YOUR

11   NET MONTHLY INCOME.

12             FOURTH, YOU SHALL PROVIDE THE PROBATION OFFICER

13   WITH ACCESS TO ANY REQUESTED FINANCIAL INFORMATION.

14             FIFTH, YOU SHALL NOT INCUR NEW CREDIT CHARGES

15   ON EXISTING ACCOUNTS OR APPLY FOR ADDITIONAL LINES OF

16   CREDIT WITHOUT PERMISSION FROM THE PROBATION OFFICER UNTIL

17   THE FINE HAS BEEN PAID IN FULL.  IN ADDITION, YOU SHALL

18   NOT ENTER INTO ANY CONTRACTUAL AGREEMENTS WHICH OBLIGATE

19   FUNDS WITHOUT THE PERMISSION OF THE PROBATION OFFICER.

20             AND AS A FINAL CONDITION, IF IT IS IN YOUR

21   POSSESSION, YOU MUST SURRENDER TO THE GOVERNMENT ANY

22   DEVICE TO WHICH THESE TRADE SECRETS HAVE BEEN TRANSFERRED.

23             IT IS FURTHER ORDERED THAT YOU SHALL PAY TO THE

24   UNITED STATES A SPECIAL ASSESSMENT OF $1,100, THAT'S $100

25   PER COUNT OF CONVICTION, WHICH IS MANDATORY PURSUANT TO

TITLE 18, UNITED STATES CODE, SECTION 3013, WHICH SHALL BE
DUE IMMEDIATELY.

TITLE 18, UNITED STATES CODE, SECTIONS 3565(B)
AND 3583(G) REQUIRE MANDATORY REVOCATION OF SUPERVISED
RELEASE FOR POSSESSION OF A CONTROLLED SUBSTANCE OR A
FIREARM OR FOR REFUSAL TO COMPLY WITH DRUG TESTING.

NOW, THERE IS, OF COURSE, BEFORE THE COURT A
REQUEST FOR RESTITUTION FROM -- I'M SORRY, LET ME GET BACK
TO THE RIGHT PLACE -- TOYOCHEM COMPANY LIMITED IN THE
AMOUNT OF $11,494. GIVEN THAT THERE IS NO OBJECTION TO
THAT, THE COURT WILL ORDER RESTITUTION TO THAT ENTITY IN
THAT AMOUNT.

THE CLERK: YOUR HONOR, IS INTEREST WAIVED ON
THE RESTITUTION AS WELL?

THE COURT: THAT'S A GOOD QUESTION. I'VE
WAIVED THE INTEREST ON THE FINE. GIVEN THE LENGTH OF THE
SENTENCE, I THINK IT APPROPRIATE TO WAIVE ANY INTEREST ON
THE RESTITUTION AS WELL.

THE CLERK: YES, YOUR HONOR.

THE COURT: PURSUANT TO RULE 32 OF THE FEDERAL
RULES OF CRIMINAL PROCEDURE, THE COURT ADVISES YOU THAT
YOU MAY HAVE THE RIGHT TO APPEAL YOUR CONVICTION OR THE
SENTENCE IMPOSED IN THE CASE. A NOTICE OF APPEAL MUST BE
FILED WITHIN 14 DAYS OF THE ENTRY OF THE JUDGMENT. IF YOU
REQUEST AND SO DESIRE, THE CLERK OF THE COURT CAN PREPARE

1   AND FILE THE NOTICE OF APPEAL FOR YOU.

2              I WILL RECOMMEND TO THE BUREAU OF PRISONS THAT

3   YOU RECEIVE CREDIT FOR ALL TIME SERVED SINCE YOUR ARREST;

4   AND I JOTTED THAT DATE DOWN, I CAN'T SPOT IT AT THE

5   MOMENT.  MS. JOSEPH, DO YOU HAVE THAT IN FRONT OF YOU?

6              PROBATION OFFICER JOSEPH:  YES, YOUR HONOR.

7              MR. SHIPLEY:  FEBRUARY 14TH, YOUR HONOR.

8              THE COURT:  FEBRUARY 14, 2000 -- WAS IT 19?

9              MR. SHIPLEY:  YES.

10             THE COURT:  2019, I'LL RECOMMEND CREDIT FOR

11   TIME SERVED SINCE THAT DATE.

12             I'LL ALSO RECOMMEND A FACILITY IF YOU WANT ME

13   TO DO THAT.

14             MR. SHIPLEY:  YES, YOUR HONOR.  IF WE COULD,

15   FCI ALICEVILLE OR IN THE ALTERNATIVE FCI MARIANNA.

16             THE COURT:  ALL RIGHT.  I'LL MAKE THOSE

17   RECOMMENDATIONS TO THE BUREAU OF PRISONS THAT YOU BE

18   DESIGNATED TO EITHER THE BOP FACILITY FCI ALICEVILLE OR TO

19   FCI MARIANNA.

20             DOES EITHER PARTY HAVE ANY OBJECTION TO THE

21   SENTENCE JUST PRONOUNCED BY THE COURT THAT HAS NOT BEEN

22   PREVIOUSLY RAISED?

23             MR. SHIPLEY:  NO, YOUR HONOR.

24             THE COURT:  MR. WALCZEWSKI?

25             MR. WALCZEWSKI:  NO OBJECTION, YOUR HONOR; BUT

1   I BELIEVE THAT PURSUANT TO RULE 32.2(B)(4)(B) THERE NEEDS
2   TO BE AN ORAL ANNOUNCEMENT OF FORFEITURE.
3              THE COURT:  YES, I MEANT TO DO THAT AS WELL.
4              YOU WILL FORFEIT AS PART OF THIS JUDGMENT THE
5   ITEMS SPECIFIED IN THE PRELIMINARY ORDER OF FORFEITURE
6   WHICH WAS ENTERED IN THIS COURT ON -- IF YOU ALL WILL
7   EXCUSE ME JUST A LITTLE BIT.  I WAS OUT SICK LAST WEEK AND
8   I HAVE A LOT OF NOTES ON THIS CASE, WHAT WAS THE DATE OF
9   THAT ORDER?
10             MR. WALCZEWSKI:  NOVEMBER 30, 2021, DOCUMENT
11  389.
12             THE COURT:  ALL RIGHT.  THAT WILL BE INCLUDED
13  AS PART OF THE JUDGMENT AS WELL; AND WHEN A FINAL ORDER OF
14  FORFEITURE IS SUBMITTED, I WILL SIGN THAT FINAL FORFEITURE
15  ORDER AS WELL.
16             ANY OBJECTIONS, MR. SHIPLEY, FROM THE
17  DEFENDANT?
18             MR. SHIPLEY:  NO OBJECTIONS, YOUR HONOR.
19             THE COURT:  ALL RIGHT.  DR. YOU, I WAS SINCERE
20  WHEN I TOLD YOU THAT SENTENCING IN A CRIMINAL CASE IS THE
21  MOST UNPLEASANT THING I DO, IT'S THE MOST DIFFICULT THING
22  I DO, AND YOURS WAS NO DIFFERENT.  I WISH NEITHER YOU NOR
23  I WERE IN A POSITION OF HAVING TO HAVE THAT SENTENCE
24  IMPOSED, BUT I DO WISH YOU THE BEST.  GOOD LUCK TO YOU.
25             THE DEFENDANT:  THANK YOU.

1          THE COURT:  MR. SHIPLEY, ARE YOU GOING TO FILE

2     A NOTICE OF APPEAL?

3          MR. SHIPLEY:  YES, YOUR HONOR.

4          THE COURT:  ALL RIGHT.

5          ALL RIGHT.  ANYTHING ELSE BEFORE WE ADJOURN?

6          ALL RIGHT.  THANK YOU ALL VERY MUCH.  THIS HAS

7     BEEN A LONG CASE, BUT I APPRECIATE THE EFFORT ALL OF YOU

8     HAVE MADE.  THANK YOU VERY MUCH.

9          LET'S TAKE A SHORT RECESS, AND I'LL GET

10    MS. BOLTON'S PLEA.

11        (PROCEEDINGS ARE CONCLUDED AT 11:50 A.M.)

12    I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM

13    THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

14

15    KAREN J. BRADLEY/S                    07/13/2022

16    SIGNATURE OF COURT REPORTER          DATE

17

18

19

20

21

22

23

24

25