UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

UNITED STATES OF AMERICA     )
     )
     )
v.     )     No.  2:19-CR-14
     )
XIAORONG YOU     )

<u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on Defendant's Motion to Authorize Issuance of Subpoenas Duces Tecum. [Doc. 457]. The Government has responded in opposition. [Doc. 462]. For the following reasons, Defendant is **ORDERED** to submit to the clerk of Court revised copies of the subpoenas in Exhibit C [Doc. 457-2] indicating a future date for production, and the clerk of Court is **ORDERED** to issue the revised subpoenas upon receipt. Defendant is **ORDERED** to serve upon each witness, in accordance with Federal Rule of Criminal Procedure 17, a copy of the pertinent revised subpoena as well as a copy of this Order within **seven (7) days** of the entry of this Order and must file a proof of service on the docket as soon as is practicable. Each witness will have **fourteen (14) days** from the date of service to file a motion to quash or other response in opposition. Defendant's Motion to Authorize [Doc. 457] is therefore **GRANTED IN PART** to the extent that her subpoenas, once revised, will be issued by the clerk of Court, but the Court **RESERVES RULING** on the scope and enforceability of the subpoenas.

I.     **BACKGROUND**

On July 11, 2023, the Sixth Circuit vacated Defendant's sentence and remanded to this Court for resentencing. [Doc. 442]. The Court has ordered the parties to file briefs stating their positions with respect to the intended loss to be attributed to Defendant in light of the Sixth

1

Circuit's opinion in this case. On March 13, 2024, Defendant filed the instant Motion asking the Court to authorize the issuance of subpoenas duces tecum to three of the victim companies in this case, namely AkzoNobel, N.V., PPG Industries, and The Sherwin-Williams Company (collectively, the "Victim Companies"). The subpoenas seek the production of documents related to: (1) the identification of business units within each Victim Company that produce, purchase, or sell BPA-free can coatings; (2) detailed annual income statements for the Victim Companies; (3) the identification of manufacturing facilities in China that supply BPA-free coatings to each Victim Company; (4) sales of products from manufacturing facilities owned by the Victim Companies that supply BPA-free can coatings; (5) the volume of BPA-free coating products shipped and/or sold in China for the Victim Companies; and (6) the volume of total goods shipped to and/or sold in China for each Victim Company. [Doc. 457-2 at 5, 10, 15]. Defendant seeks these documents "to provide the Court with further evidence and clarity on the primary issues that the Court must address on remand, *i.e.*, the appropriate value of the overall Chinese beverage can coating market *and* the approximate profit margin to apply as an additional variable to the Court's calculations." [*Id.* at 9].

The Court ordered an expedited response from the Government, and it filed a response in opposition on March 20, 2024. [Doc. 462]. The Government makes three main arguments as to why the subpoenas should not be issued: (1) the subpoenas are overbroad and constitute an impermissible "fishing expedition" in scope; (2) the information Defendant requests is irrelevant to her subjective intent to cause loss; and (3) the victim companies must be given a chance to respond. The matter is now ripe for review.

2

## II.    LEGAL STANDARD

Rule 17(c) of the Federal Rules of Criminal Procedure provides that a subpoena may order a witness to produce books, papers, documents, data or other objects the subpoena designates before they are to be offered in evidence. Fed. R. Crim. P. 17(c)(1). The Court may quash or modify a subpoena if compliance would be unreasonable or oppressive. Fed. R. Crim. P. 17(c)(2). A subpoena issued under Rule 17(c) may not be issued for discovery purposes. *United States v. Nixon*, 418 U.S. 683, 698 (1973). Rule 17(c) subpoenas are available for use at sentencing. *See, e.g.*, *United States v. Cauthon*, No. 18-5613, 2020 U.S. App. LEXIS 393 at *10–*12 (6th Cir. Jan. 7, 2020); *United States v. Wheeler*, No. 06-09, 2007 U.S. Dist. LEXIS 119024 at *3 (E.D. Ky. June 5, 2007).

Production pursuant to Rule 17(c) is appropriate where it is shown that: (1) the documents are evidentiary and relevant; (2) the documents are not otherwise procurable reasonably in advance of sentencing by exercise of due diligence; (3) the requesting party cannot properly prepare for sentencing without such production and inspection in advance of sentencing and that the failure to obtain such inspection may tend unreasonably to delay the sentencing; and (4) that the application is made in good faith and is not intended as a general "fishing expedition." *See Nixon*, 418 U.S. at 699. Further, "a subpoena duces tecum has additional requirements of 'relevance, admissibility[,] and specificity.'" *In re Sittenfeld*, 49 F.4th 1061, 1077 (6th Cir. 2022) (quoting *United States v. Hughes*, 895 F.2d 1135, 1145–46 (6th Cir. 1990)). The Sixth Circuit gives district judges discretion to decide whether the court must approve a Rule 17 subpoena prior to its issuance. *See United States v. Llanez-Garcia*, 735 F.3d 483, 500 (6th Cir. 2013) ("Rule 17(c) . . . commits the task of supervising subpoenas to the sound discretion of those courts, which can determine the appropriate mechanisms for exercising oversight as they see fit[.]").

3

### III.     ANALYSIS

#### a.   Rule 17(c)(3) is inapplicable to the Victim Companies.

As an initial matter, the Court does not agree with the Government that Rule 17(c)(3) requires that the Victim Companies must have an opportunity to respond prior to issuance of Defendant's subpoenas. [*See* Doc. 462, at 10]. Rule 17(c)(3) states that a "subpoena requiring the production of personal or confidential information *about a victim* may be *served on a third party* only by court order." Fed. R. Crim. P. 17(c)(3) (emphasis added). At least one other district court in this Circuit has agreed with the Government's position, *see United States v. Latimore*, No. 08-CR-20633, 2010 U.S. Dist. LEXIS 1874 at *10 (E.D. Mich. Jan. 11, 2010) ("[T]he Court is not convinced that the subpoena duces tecum directed to [a victim corporation] does not seek materials which may contain confidential information. Therefore, pursuant to Rule 17(c)(3), [the victim corporation] must be given notice of the motion before any order may issue."), but this Court declines to adopt the Government's proffered interpretation of the Rule.

The 2008 Advisory Committee Notes for Rule 17(c)(3) state that Rule 17(c)(3) "implements the Crime Victims' Rights Act[.]" The Crime Victims' Rights Act states that crime victims have "the right to be treated with fairness and respect for the victim's dignity and privacy," as implemented in part by Rule 17(c)(3). 18 U.S.C. § 3771(a)(1)(8); Fed. R. Crim. P. 17(c)(3) advisory committee's note to 2008 amendment. The 2008 Advisory Committee Notes go on to explain that "[t]hird party subpoenas raise special concerns because a third party may not assert the victim's interests, and the victim may be unaware of the subpoena. Accordingly, [Rule 17(c)(3)] requires judicial approval before service of a subpoena seeking personal or confidential information about a victim from a third party." Fed. R. Crim. P. 17(c)(3) advisory committee's note to 2008 amendment.

The Court, therefore, concludes that Rule 17(c)(3) should not be construed to read "victim" and "third party" as possible synonyms, which the Government's interpretation requires. Rule 17(c)(3) exists to protect victims who would not otherwise be made aware of a request for sensitive content such as their employment history, medical history, academic or truancy records, or other private, personal information. As explained persuasively by the Southern District of Florida in *United States v. Sandoval*, interpreting Rule 17(c)(3) to read "third party" as merely a third party to the litigation rather than a party other than the victim and the defendant is a misunderstanding of Rule 17(c). No. 10-20243-CR-ALTONGA/Brown, 2010 U.S. Dist. LEXIS 78726 at *5–*6 (S.D. Fla. July 13, 2010). The Victim Companies are not a "third party" as comprehended by Rule 17(c)(3); they are victim-witnesses who will be served directly and therefore will be afforded the opportunity to respond in opposition. *See id.* The Victim Companies, as the direct recipient of any issued subpoena, will have the opportunity to oppose Defendant's subpoenas that Rule 17(c)(3) was drafted to protect. In light of the foregoing, the Court declines to find that Rule 17(c)(3) is applicable to the Victim Companies.

**b. The Court Exercises its Discretion and Declines to Evaluate the Merits of the Subpoenas Sought by Defendant Before the Victim Companies Have Responded.**

Defendant's Motion cites the proposition that "[s]ubpoenas duces tecum must be authorized in advance by the court and the materials sought must be returned in open court or produced to the Court in advance of a proceeding." *United States v. McCrainey*, No. 3:22-CR-20, 2023 U.S. Dist. LEXIS 137863 at *3 (E.D. Tenn. Aug. 8, 2023) (citing *United States v. Al-Amin*, No. 1:12-CR-50, 2013 U.S. Dist. LEXIS 104177 at *8 (E.D. Tenn. July 25, 2013)). Both parties have briefed the Court on the *Nixon* factors in support of their respective positions as to whether Defendant's subpoenas should be issued. While Defendant's citation to *Al-Amin* is technically

correct, and the Court agrees that any documents produced as a result of Defendant's subpoenas should be returned to the Court in advance of her sentencing proceeding, the Court declines to adopt the position that it must "authorize" the issuance of the three subpoenas presently sought by Defendant or evaluate the enforceability of her subpoenas under the *Nixon* factors as a prerequisite to issuance.

In *United States v. Al-Amin*, the district court was faced with a much different factual situation than this Court finds before it. There, counsel for the defense had issued numerous subpoenas to third parties seeking personal medical information about the customers of a fraudulent medical company, and counsel frankly admitted that the subpoenas were issued for impermissible "discovery or investigatory purposes." *Id.* at *5. The subpoenas also contained falsehoods on their face, such as representing that the requested documents would be produced at a hearing before the magistrate judge when no such hearing had been set. *Id.* at *4, *25. The district court noted that:

> [a]ttorneys for obvious reasons are desirous of obtaining information that might damage potential witnesses or cause a jury to question a potential witness's credibility and reliability. For this reason, they will seek medical, mental health, employment, criminal, or sexual records in the possession of third parties that they believe might have some information touching upon the witness's credibility. Since it is not the third parties to which the personal or private information pertains but rather to others, the third parties have no concern about their own personal or privacy rights and therefore little interest in resisting or litigating the subpoena.

*Id.* at *2–*3. Therefore, the factual situation in *Al-Amin* closely mirrored the concerns which led to the creation of Rule 17(c)(3) requiring notice when information about a crime victim is requested from a third party without the victim's knowledge.[1]

---

[1] As the Court has already explained, Rule 17(c)(3) is inapplicable from the matter at hand, wherein Defendant seeks information directly from the Victim Companies themselves.

The district court in *Al-Amin* drafted its opinion not just to resolve the factually specific concerns before it. The district court also attempted to broadly "clarify the meaning and limitations of Rule 17(c)." *Id.* at *1. In doing so, the district court identified within Rule 17(c) "four distinct requirements necessary to obtain documents, records, or other objects in advance" of a hearing or trial. *Id.* at *8. The first of these requirements was that "the Court must authorize the issuance of the subpoena prior to its issuance." *Id.* While the Court agrees that it was within the district court's discretion in *Al-Amin* to require such an authorization, the Court does not agree that authorization prior to issuance is required in all cases.

Rule 17(a) states that "[t]he clerk must issue a blank subpoena—signed and sealed—to the party requesting it, and that party must fill in the blanks before the subpoena is served." Fed. R. Crim. P. 17(a). Rule 17(c) adds no further clarification or instruction regarding the issuance of subpoenas duces tecum on behalf of parties with retained representation.[2] Instead, Rule 17(c) mentions that the district court "may direct [a] witness to produce the designated items . . . before they are to be offered into evidence," and "may permit the parties and their attorneys" to inspect documents once the district court receives them. Fed. R. Crim. P. 17(c)(1).

In deciding whether the text of Rule 17 requires this Court to authorize the issuance of a subpoena duces tecum, the Sixth Circuit's decision in *United States v. Llanez-Garcia,* 735 F.3d 483 (6th Cir. 2013), is particularly instructive. In *Llanez-Garcia*, the district court had previously sanctioned an attorney for violating Rule 17(c), which the district court interpreted to require judicial approval prior to the issuance of a subpoena duces tecum. *Id.* at 498. Although the Sixth Circuit did not rule on whether the district court's interpretation was correct, it did acknowledge

---

[2] This is distinguishable from Rule 17(b), which states that "if a defendant shows an inability to pay the witness's fees," the Court must order that a requested subpoena be issued. Defendant has retained counsel.

that Rule 17(c) is "susceptible to an altogether different rendering." *Id.* The Sixth Circuit found it plausible that "[r]eading the rule to require approval in all cases, as the district court did, violates the interpretive canon that cautions against construing statutory language in a way that renders any of [Rule 17(c)] superfluous." *Id.* Although the Sixth Circuit noted, and the Court agrees, that Rule 17(c)'s purpose *can* be frustrated without court involvement prior to a subpoena being issued, a significant number of courts have held that Rule 17 does not require that a court *must* authorize the issuance of subpoenas duces tecum, and the Sixth Circuit has declined to rule in either direction to date. *See id.* at 499–500 (collecting cases).

In sum, the Sixth Circuit found that "Rule 17(c) is capacious enough to accommodate differing levels of oversight that district courts deem desirable to impose. It commits the task of supervising subpoenas to the sound discretion of those courts, which can determine the appropriate mechanisms for exercising oversight as they see fit—by standing order, local rule, or no rule at all." *Id.* at 500. This District has no standing order or local rule related to the issuance of subpoenas duces tecum. In such a situation, the standard form for a Rule 17(c) subpoena, Form AO 89B, instructs the party seeking the subpoena to "ask the assigned judge *whether* the court . . . requires prior judicial approval for the issuance of a subpoena, either on notice or ex parte[.]" U.S. Courts Admin. Order Form No. 89B (2016) (emphasis added). When the parties inquire with the Court, the Court is able to fashion requirements for judicial approval best suited to the facts of the case.

The district court in *Al-Amin* would have been operating within its discretion to require judicial authorization as a prerequisite to the issuance of subpoenas duces tecum in that specific case. Similarly, where a subpoena is clearly unenforceable under the *Nixon* factors at the time it is presented to the district court, some courts have exercised their discretion to decline to issue such a subpoena altogether. *See, e.g., United States v. Mack*, No. 1:13-CR-278, 2013 U.S. Dist. LEXIS

8

199795 at *12 (N.D. Ohio. Sept. 10, 2013) (explaining that district courts in the Sixth Circuit have quashed or refused to issue subpoenas duces tecum requested by defendants for failure to adhere to the *Nixon* standards). But Sixth Circuit precedent stands contrary to the holding in *Al-Amin* that such judicial authorization or review is universally *required* prior to issuing a subpoena duces tecum pursuant to Rule 17(c). Accordingly, the Court declines to rule as to whether it "authorizes" the issuance of Defendant's subpoenas, but considering the facts of this case and for the sake of expediency, the Court will order the clerk of Court to issue the subpoenas as submitted by Defendant in Exhibit C *only after* Defendant has submitted to the clerk of Court a revised version of the subpoenas listing a future date for production.[3]

Further, the Court declines to evaluate the enforceability of Defendant's proposed subpoenas before the subpoenas are issued. The four factors established by *United States v. Nixon* must be met to enforce the subpoena and "require production" of subpoenaed documents. *Nixon*, 418 U.S. at 699. As mentioned previously, some courts have, within their discretion, applied the *Nixon* factors as a sort of screening test prior to issuing subpoenas when the facts of the case warrant it. This Court, in another case, would be free to exercise its discretion to do the same. But the *Nixon* factors are often better suited to deciding the enforceability of a subpoena once it has been issued, not whether the subpoena should be issued at all. More simply put, in this case, applying the *Nixon* factors at the issuance stage is putting the cart before the horse.

The Court is inclined to agree with the Government that Defendant's document requests, as drafted, are likely overbroad. But there is a lingering question within this Circuit as to whether the Government has standing to oppose subpoenas directed towards third parties. *See United States*

---

[3] Defendant's proposed subpoenas in Exhibit C required production by March 25, 2024. [*See* Doc. 457-2].

*v. D'Anna*, No. 13-20119, 2015 U.S. Dist. LEXIS 55903 at *21 (E.D. Mich. Apr. 29, 2015) ("Although the Sixth Circuit has only expressed doubt as to the Government's standing to challenge [a subpoena issued to a third party], other courts have held that the government lacks standing to challenge a subpoena to a third party if it lacks an injury in fact."). The Court also finds no compelling reason to order the Victim Companies be allowed to respond to Defendant's Motion instead of her issued subpoenas, thereby circumventing the normal recourse for a witness that opposes a subpoena—filing a motion to quash once the subpoena has been served. "The court may control the use of Rule 17(c) . . . by its power to rule on motions to quash or modify." *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951).

In this case, ruling on the *Nixon* factors as a prerequisite to issuing Defendant's subpoenas would require the Court to evaluate the subpoenas' enforceability based only on the response of the Government and without any input from the Victim Companies, the witnesses who will be impacted by the temporal and monetary costs of complying with production. The Court believes giving the Victim Companies a chance to move to quash is not only necessary to properly evaluate the scope and the enforceability of Defendant's subpoenas under *Nixon* but is also the most procedurally proper way to proceed in this case. Within the ample caselaw cited to support the district court's interpretation of Rule 17(c) in *Al-Amin* and otherwise reviewed by this Court, the *Nixon* factors were most commonly applied to determine enforceability of a subpoena *after* a motion to quash had been filed.[4]

---

[4] *See, e.g., United States v. Nixon*, 418 U.S. 683, 699 (1974) ("On May 1, 1975, the President's special counsel filed . . . a motion to quash the subpoena under Rule 17(c). . . . On May 20, 1974, the District Court denied the motion to quash[.]"); *United States v. Theunick*, 651 F.3d 578, 591 (6th Cir. 2011) (explaining that the defendant is appealing *inter alia* the district court's decision to grant the Government's motion to quash a set of subpoenas); *United States v. Vassar*, 346 Fed. App'x 17, 24 (6th Cir. 2009) ("[The defendant] faults the district court for quashing a host of subpoenas he issued under the ostensible authority of Federal Rule of Criminal Procedure 17(c).");

10

"It is only required that a good-faith effort be made to obtain evidence. The court may control the use of Rule 17(c) to that end by its power to rule on motions to quash or modify." *Bowman Dairy Co.*, 341 U.S. at 220. Defendant's Motion does not appear to be made in bad faith and does not offer only "conclusory allegations, devoid of support." *See United States v. Jenks*, 517 F. Supp. 305, 307 (S.D. Ohio 1981); [Doc. 462 at 8 ("The government does not doubt that defendant is applying for these subpoenas in good faith.")]. In consideration of the circumstances the Court finds itself in with respect to the Victim Companies, and due to Defendant's good faith in seeking the subpoenas, the *Nixon* factors should not be ruled upon before the Victim Companies have been given the opportunity to move to quash.

In conclusion, this Court may, within its discretion, order that judicial authorization of a subpoena duces tecum is required prior to issuance or decide, when factually appropriate, that the merits of a subpoena duces tecum under the *Nixon* factors preclude issuing that subpoena. Neither approach, however, is required. Such requirements would have the practical effect of stripping this Court of its discretion, and they are not supported by Sixth Circuit precedent, nor are they supported by the local rules or standing orders of this Court. As the Supreme Court has recognized, "the necessity for [a] subpoena most often turns on a determination of factual issues." *Nixon¸* 418 U.S. at 702. After consideration of the facts of this case, the Court does not need to authorize the issuance of Defendant's subpoenas prior to their issuance, and it should not and will not rule on the *Nixon* factors at this time. The Court therefore **GRANTS IN PART** Defendant's Motion to

---

*United States v. Hughes*, 895 F.2d 1135, 1145–56 (6th Cir. 1990) ("The government moved to quash the subpoena . . . [the defendant] contends that the subpoena should not have been quashed[.]"); *United States v. Jenks*, 517 F. Supp. 305, 306 (S.D. Ohio June 12, 1981) ("The government has moved that the subpoenas be quashed.").

the extent it will order her subpoenas be issued once revised, but it will **RESERVE RULING** on the scope and enforceability of Defendant's subpoenas.

**IV.    CONCLUSION**

For the following reasons, Defendant is **ORDERED** to submit to the clerk of Court revised copies of subpoenas in Exhibit C indicating a future date for production, and the clerk of Court is **ORDERED** to issue the revised subpoenas. Defendant is **ORDERED** to serve upon each Victim Company, in accordance with Federal Rule of Criminal Procedure 17, a copy of the subpoena directed towards the Victim Company as well as a copy of this Order within **seven (7) days** of the entry of this Order. Defendant is **ORDERED** to file proof of service on the docket as soon as is practicable thereafter. Each Victim Company will have **fourteen (14) days** from the date of service to file a motion to quash or otherwise respond in opposition. Defendant's Motion to Authorize [Doc. 457] is therefore **GRANTED IN PART** to the extent that Defendant's subpoenas, once revised, will be issued by the clerk of Court, but the Court **RESERVES RULING** on the scope and enforceability of the subpoenas.

So ordered.

ENTER:

                           s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE