UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | |
| v. ) | No. 2:19-CR-14 |
| ) | |
| XIAORONG YOU ) | |

MEMORANDUM OPINION AND ORDER

This matter is before the Court on third parties PPG Industries, Inc.'s ("PPG") Motion to Quash Defendant's Rule 17(c) Subpoena [Doc. 468], The Sherwin-Williams Company's ("Sherwin-Williams") Motion to Quash Subpoena Duces Tecum [Doc. 470], and Akzo-Nobel, Inc.'s ("Akzo-Nobel") Motion to Quash Defendant's Rule 17 Subpoena [Doc. 478]. Defendant responded in opposition [Doc. 487] to the Motions to Quash filed by PPG, Sherwin-Williams, and Akzo-Nobel (collectively, the "Victim Companies"). On May 20, 2024, the Court conducted a hearing on the Motions to Quash. [Doc. 498]. For the following reasons, the Victim Companies' Motions [Docs. 468, 470, 478] are **GRANTED**, and Defendant's subpoenas seeking production of documents from the Victim Companies [Docs. 465, 466, 467] are **QUASHED**.

I.  BACKGROUND

On July 11, 2023, the Sixth Circuit vacated Defendant's sentence and remanded to this Court for resentencing. [Doc. 442]. The Court has ordered the parties to file briefs stating their positions with respect to the intended loss to be attributed to Defendant in light of the Sixth Circuit's opinion [Doc. 442] in this case. To this end, Defendant filed the subpoenas at issue, seeking the production of documents related to:

1

1. Identification of the specific operating segment, business unit, or other organizational division that produces, manufactures, purchases, or sells BPA-free can coatings for [the Victim Companies].
2. All available detailed annual income statements, prepared in the ordinary course of business, from [the Victim Companies] which identify line-item details for Revenue, Costs of Good Sold, and all Selling, General, and Administrative expenses used to arrive at net income, for the period of fiscal years 2019 to 2023 for the operating segments previously identified;
3. Documents, prepared in the ordinary course of business, sufficient to identify manufacturing facilities owned or controlled by [the Victim Companies] located in China that supply BPA-free can coatings to [the Victim Companies] and the total cost of operations for those facilities for fiscal years 2019 to 2023;
4. Documents, prepared in the ordinary course of business, sufficient to identify sales of products from manufacturing facilities owned or controlled by [the Victim Companies] located in China that supply BPA-free can coatings to [the Victim Companies] and the cost of goods sold and operating costs for those facilities for fiscal years 2019 to 2023;
5. Documents, prepared in the ordinary course of business, sufficient to show the volume of BPA-free coating products shipped to and/or sold in China for [the Victim Companies] for fiscal years 2019 to 2023; and
6. Documents, prepared in the ordinary course of business, sufficient to show the volume of total goods or products shipped to and/or sold in China for [the Victim Companies] for fiscal years 2019 to 2023.

[Docs. 468-1 at 19; 471-1 at 7; 478-1 at 7]. Defendant argues the subpoenas are "sufficiently tailored to seek the information necessary to Defendant's briefing on the sole issue before the Court: intended loss." [Doc. 487, at 1].

All three Victim Companies moved to quash their respective subpoenas. [Docs. 468, 470, 478]. PPG moves to quash on the grounds that: (1) Defendant's subpoena is improper under the factors articulated in *United States v. Nixon*, 418 U.S. 683 (1974), because the information sought is irrelevant, sensitive and proprietary, and constitutes an improper fishing expedition; and (2) compliance with the subpoena would be unreasonable and oppressive, requiring approximately 1,000 total hours of work which would cost approximately $170,000. [Doc. 468, at 1–2]. Sherwin-Williams also opposes its subpoena on the basis that the requested documents are irrelevant to Defendant's resentencing and that the requests are unreasonable and oppressive. [Doc. 470, at 1].

2

Akzo-Nobel similarly opposes its subpoena on the basis of relevance and unreasonableness.[1] [Doc. 478, at 1]. Defendant responded in opposition [Doc. 487], and the Court conducted a hearing on the Motions to Quash on May 20, 2024. This matter is now ripe for review.

## II. LEGAL STANDARD

Rule 17(c) of the Federal Rules of Criminal Procedure provides that a subpoena may order a witness to produce books, papers, documents, data or other objects the subpoena designates in court before they are to be offered in evidence. Fed. R. Crim. P. 17(c)(1). The Court may quash or modify a subpoena if compliance would be unreasonable or oppressive. Fed. R. Crim. P. 17(c)(2). A subpoena issued under Rule 17(c) may not be issued for discovery purposes. *United States v. Nixon*, 418 U.S. 683, 698 (1973). Rule 17(c) subpoenas are available for use at sentencing. *See, e.g.*, *United States v. Cauthon*, No. 18-5613, 2020 U.S. App. LEXIS 393, at *10–*12 (6th Cir. Jan. 7, 2020); *United States v. Wheeler*, No. 06-09, 2007 U.S. Dist. LEXIS 119024, at *3 (E.D. Ky. June 5, 2007).

Production pursuant to Rule 17(c) is appropriate where it is shown that: (1) the documents are evidentiary and relevant; (2) the documents are not otherwise procurable reasonably in advance of sentencing by exercise of due diligence; (3) the requesting party cannot properly prepare for sentencing without such production and inspection in advance of sentencing and that the failure to obtain such inspection may tend unreasonably to delay the sentencing; and (4) that the application is made in good faith and is not intended as a general "fishing expedition." *See Nixon*, 418 U.S. at 699–700. Further, "a subpoena duces tecum has additional requirements of 'relevance,

---

[1] Akzo-Nobel, Inc. represents that it is a United States subsidiary of Akzo-Nobel N.V. and "does not possess the worldwide financial and operational data that [Defendant] is seeking[.]" [Doc. 478, at 1]. Although this fact is not determinative in the Court's analysis, the Court wishes to note for the record that it does not appear Defendant has served the proper Akzo-Nobel entity in order to obtain the documents she seeks.

admissibility[,] and specificity.'" *In re Sittenfeld*, 49 F.4th 1061, 1077 (6th Cir. 2022) (quoting *United States v. Hughes*, 895 F.2d 1135, 1145–46 (6th Cir. 1990)).

**III. ANALYSIS**

    **a. The *Nixon* Factors**

The four-factor test set forth in *United States v. Nixon* offers weak support at best for the enforcement of Defendant's subpoenas. The second *Nixon* factor is satisfied, because it is undisputed that Defendant seeks confidential and proprietary business and financial information from the Victim Companies that is not otherwise reasonably procurable in advance of sentencing. However, a brief review of the remaining *Nixon* factors does not convince the Court to require the Victim Companies to produce the documents sought by Defendant.

For starters, Defendant's requested documents are, at most, tenuously relevant to the Court's determination of intended loss. Defendant provided the declaration of Scott E. Bushnell, a consultant certified in financial forensics, in support of her opposition to the Motions to Quash. [*See* Doc. 487-1]. Mr. Bushnell states that the "information requested through these subpoenas is vitally important to determining the intended harm to a reasonable degree of accounting certainty." [*Id.* at 4]. However, the Court has been tasked with providing only a "reasonable estimate" of Defendant's intended loss, not an estimate to a "reasonable degree of accounting certainty." [*See* Doc. 442 at 25 ("[D]istrict courts need not reach an exact figure for the loss that a victim suffered or the amount of harm a defendant caused or intended to cause; a 'reasonable estimate' will do.")]; *United States v. Howley*, 707 F.3d 575, 583 (6th Cir. 2013) ("The Guidelines require only a 'reasonable' estimate of actual or intended loss within broad ranges.").

In light of the Sixth Circuit precedent requiring this Court to find only a "reasonable estimate" of intended loss within a broad range, the Court finds that Defendant's requests for

4

documents seeking specific, actual financial information from the Victim Companies are not persuasively relevant to proving her intended loss. Defendant's subjective intent was formed as of the time she committed her offenses of conviction, which occurred in 2017 and 2018. [*See* Doc. 217]. Defendant's intended loss is defined as "the pecuniary harm that the defendant purposely sought to inflict," and "includes intended pecuniary harm that would have been impossible or unlikely to occur[.]" See U.S.S.G. § 2B1.1 cmt. n.3(A)(ii). "'Intended loss' means the loss the defendant *purposely* sought to inflict" and therefore "does not mean a loss that the defendant merely knew would result from [her] scheme or a loss [she] might have *possibly and potentially* contemplated." *United States v. Manatau*, 647 F.3d 1048, 1050 (10th Cir. 2011) (emphasis in original).

The Victim Companies' confidential financial data from 2019 to 2023 could assist the Court in obtaining an accurate picture of the amount of damage Defendant might have *actually* caused had her plan to steal trade secrets succeeded. But real-life sales, costs, and net profits information from the Victim Companies has little to no relevance to estimating the amount of loss Defendant *intended* at the time she committed her offenses of conviction, which as the Court has explained, may constitute a range or amount that does not or could not by way of impossibility reflect actual financial outcomes. The Court is hesitant to undertake an intended loss calculation in which Defendant is sentenced more harshly or more leniently based on proprietary financial information that was collected after Defendant's offenses were committed and therefore could not have informed her intended loss.

Additionally, Defendant has not shown that she cannot properly prepare for sentencing without the requested production, or that failure to obtain the documents sought will unreasonably delay her sentencing. The Government has provided, through the declaration of Dan Leschnik, the

5

Case 2:19-cr-00014-JRG-CRW    Document 499    Filed 05/28/24    Page 5 of 10    PageID #: 8720

Global Manager of Technical Services at Akzo-Nobel, a number of publicly available sources giving projections and estimates for the value of the global can coating market ranging from 2016 to 2028. [*See* Doc. 457-1]. Defendant has not demonstrated why publicly available information such as this is insufficient to form a basis for the Court's reasonable estimate of her intended loss. To be clear, the Court is not attempting to place a burden upon Defendant that is not hers to bear; at sentencing, it will be the Government's burden alone to prove an amount of intended loss. However, with respect to enforcement of Defendant's subpoenas, the Court must determine whether the information Defendant seeks is necessary for her to prepare for sentencing. While the Court acknowledges that the requested documents would allow Defendant to perhaps calculate alternative market size valuations based on actual, proprietary financial data, the Court cannot find based on the record before it that such calculations are necessary to her preparations for sentencing.

Finally, the Court cannot find that the document requests within Defendant's subpoena do not constitute a fishing expedition, because they are fatally overbroad. A subpoena issued under Rule 17(c) may not be issued for discovery purposes, *Nixon*, 418 U.S. at 698, but Defendant's document requests are drafted in the broad, sweeping style of requests for production served in the normal course of discovery. All of Defendant's requests seek proprietary business and financial information from 2019 to 2023, a period of years *after* Defendant formed an intended loss in this case. Further, Defendant's first two document requests are overbroad because they are not geographically limited in scope and they assume that the business units or operating segments for each Victim Company that produce, manufacture, purchase, or sell BPA-free can coatings *only* sell BPA-free coatings. These requests, as drafted, are very likely to sweep in financial information for products having nothing at all to do with BPA-free coatings.

6

Defendant's third request seeks the identification of manufacturing facilities in China that supply BPA-free coatings to each Victim Company and the total cost of operations for those facilities. Compliance with this request would be unduly burdensome in a situation where the manufacturing facility is not owned by the Victim Company, as the Victim Company would likely not have the control or authority necessary to obtain or produce costs of operation for those facilities. It also seems highly unlikely to the Court, given the facts established at trial that prove BPA-free can coatings comprise only a small percentage of the total can coating market, that *only* BPA-free coatings would be produced within a single manufacturing facility. As drafted, Defendant's third request is likely to sweep in costs of operation having nothing to do with the production or manufacture of BPA-free coatings. Defendant's fourth document request is overbroad for this same reason, as it seeks documents sufficient to identify sales of products from manufacturing facilities owned or controlled by the Victim Companies that supply BPA-free coatings, as well as the cost of goods sold and the operating costs for those facilities.

Defendant's sixth request is the broadest in scope and entirely irrelevant to the Court's evaluation of intended loss, as it seeks documents sufficient to show the volume of total goods or products shipped to or sold in China by the Victim Companies. This request is not limited to BPA-free can coatings or can coatings at all. Requiring the Victim Companies to produce documents responsive to this request would almost certainly sweep in vast amounts of proprietary financial information that is completely irrelevant to the BPA-free can coating market and the calculation of Defendant's subjective, intended loss. In light of the foregoing, the Court cannot find that the *Nixon* factors support enforcement of Defendant's subpoenas.

### b. **Defendant's Subpoenas are Unreasonable and Oppressive**

"A court may quash or modify a subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). "The Supreme Court clarified the meaning of this standard in *Nixon*, holding that a subpoena duces tecum is not 'unreasonable or oppressive' if the proponent establishes relevancy, admissibility, and specificity." *United States v. Pate*, No. 3:09-00106, 2024 U.S. Dist. LEXIS 74606 at *2 (M.D. Tenn. Apr. 24, 2024) (citations omitted). "In determining whether production is unreasonable or oppressive, the Court weighs whether 'the burden of producing subpoenaed records greatly outweighs any relevance they may have to the case.'" *United States v. Cauthon*, No. 15-cr-00172, 2018 U.S. Dist. LEXIS 84104, at *2 (M.D. Tenn. May 18, 2018), *aff'd* No. 18- 5613, 2020 U.S. App. LEXIS 393 (6th Cir. Jan. 7, 2020) (quoting *United States v. Hardy*, 224 F.3d 752, 756 (8th Cir. 2000)).

As the Court has previously explained, Defendant's document requests are fatally overbroad and non-specific because they are likely to sweep in a large number of documents, and the requests are not persuasively relevant to the issue of calculating Defendant's intended loss. Even so, any arguable relevance is convincingly outweighed by the burden that enforcing Defendant's subpoenas would inflict upon the Victim Companies. For instance, PPG stated in briefing that Defendant's subpoena implicates "tens of thousands of documents, which in addition to disrupting PPG's normal business operations, will require considerable time and expense—upwards of 1,000 hours and $170,000 dollars—to comply with." [Doc. 468, at 8]. PPG further clarified in the May 20, 2024, hearing that PPG does not track certain information associated with BPA-free can coatings in the ordinary course of business, meaning that approximately thirty-five employees would have to engage in a manual search for information related to the manufacture and sale of products with specific BPA-free chemistries.

8

Similarly, Sherwin-Williams states that "the burden of production that would result from enforcement" of Defendant's subpoena would be "significant," requiring "deployment of significant resources" that would "take far longer than the [approximately two weeks] provided in the subpoena." [Doc. 471, at 14–15]. Sherwin-Williams' "best estimate is that it would take several weeks to identify and collect documents responsive to the subpoena." [*Id.* at 15]. Sherwin-Williams also emphasizes that it would "suffer significant competitive harm" if the information Defendant seeks "was disclosed to the public and competitors." [*Id.* at 16].

Finally, Akzo-Nobel states that even if it were able to produce the information Defendant seeks, "it would be extremely burdensome to collect and produce" because "[i]nformation regarding the operating costs and profitability of particular product lines is not maintained within the Akzo Nobel organization in the manner requested by" Defendant. [Doc. 478-2, at 3]. Accordingly, production of the documents requested by Defendant's subpoena would "require access to and analysis of multiple databases, allocation of various cost factors that are not recorded on a product line basis, and essentially the creation of a unique P&L statement that Akzo Nobel does not currently produce," and Akzo-Nobel would "need to expend significant resources to derive the information requested" by Defendant. [Doc. 478-2, at 3].

The type of temporal and monetary concerns raised by the Victim Companies are sufficient for the Court to find that Defendant's subpoenas are unreasonable and oppressive. *See, e.g.*, *Cauthon*, 2018 U.S. Dist. LEXIS 84104 at *5 ("Based on the limited relevancy, asking the targets to spend 45-60 days producing these records at a cost of $13,000 is grossly disproportional for what [the defendant] intends to prove."); *United States v. Minton*, No. 5:17-CR-6-JMH, 2017 U.S. Dist. LEXIS 40071 at *9–*10 (E.D. Ky. Mar. 21, 2017), *aff'd in relevant part United States v. Warren*, 782 Fed. Appx. 466 (6th Cir. 2019) ("Moreover, the Court is mindful that the burden of

responding to Defendants' request to [the victim company] is quite significant . . . Nowhere do Defendants make any mention of who would be responsible for incurring the costs of such an effort. While it is not unusual for parties to undergo a similar effort in the context of civil litigation, this is not civil litigation and [the victim company] [is] not on trial. . . . Thus, imposing the burden of a document production that is akin to a civil discovery production seems particularly unfair."). Although Mr. Bushnell claims in his declaration that it "defies logic given [his] experience that the companies that have received subpoenas in this case would not be able to easily produce the reports being requested," as the Court expressed in open court, the Victim Companies in this case have already been victimized once by Defendant. After full consideration of the arguments made by all parties, the Court declines to injure the Victim Companies further by enforcing Defendant's overbroad and burdensome subpoenas.

IV. CONCLUSION

PPG Industries, Inc.'s Motion to Quash Defendant's Rule 17(c) Subpoena [Doc. 468], The Sherwin-Williams Company's Motion to Quash Subpoena Duces Tecum [Doc. 470], and Akzo-Nobel, Inc.'s Motion to Quash Defendant's Rule 17 Subpoena [Doc. 478] are **GRANTED**. Defendant's subpoenas seeking the production of documents from the Victim Companies [Docs. 465, 466, 467] are **QUASHED**. As set forth in the Court's April 26, 2024, Order [Doc. 486], Defendant's sentencing has been reset for **September 16, 2024, at 9:00 a.m.** Defendant and the Government shall submit their briefs on intended loss on or before **August 12, 2024.**

So ordered.

ENTER:

s/J. RONNIE GREER<br>
UNITED STATES DISTRICT JUDGE